IN THE COURT OF COMMON PLEAS
SUMMERS COUNTY, OHIO

| | | |
|---|---|---|
| JACK DIAMOND<br>181 Ely Road<br>Akron, OH 44333 | ) ) ) | Case No.: |
| | ) ) | Judge |
| Plaintiff | ) ) ) | |
| vs. | ) ) ) | |
| G. EDWARD ALEXANDER, JR.<br>2403B Elliot Ave.<br>Nashville, TN 37204 | ) ) ) ) | **COMPLAINT: An Action for** |
| JOHN T. PRATER<br>6354 Shadow Ridge Court<br>Brentwood, TN 37027 | ) ) ) ) | • **Conversion,**<br>• **Breach of Contract**<br>• **Breach of Fiduciary Duty**<br>• **Tortious Interference**<br>• **Injunctive Relief, and**<br>• **Compensatory and Punitive Damages** |
| FRANK SOSSI<br>10113 Glen Eagle Lane<br>Twinsburg, OH 44087 | ) ) ) ) | |
| and | ) ) | |
| HCFP LEGACY HOLDINGS, LLC<br>7110 Crossroads Blvd. Suite 200<br>Brentwood, TN 37027 | ) ) ) ) | **JURY DEMAND ENDORSED HEREON** |
| Defendants | ) ) ) ) ) | |

For his Complaint, Plaintiff Jack Diamond states as follows:

1.  Plaintiff Jack Diamond is a minority member of the various Ohio limited liability companies that are managed by Defendants G. Edward Alexander, Jr, John T. Prater and Frank Sossi, and which companies include entities that are members of Defendant HCFP Legacy Holdings, LLC. Jack Diamond brings this Action to preserve his interest and investment in certain



limited liability companies, to prevent Defendants from diluting or otherwise diminishing his interests and investments in certain limited liability companies, to prevent Defendants from destroying his rights as a minority member, to seek compensatory and punitive damages for breaches of fiduciary duties owed to him and for tortious interference, and for injunctive and other relief to prevent a present effort by Defendants to forfeit his interest and investment in entities he, the Defendants, and others own and otherwise to freeze him out from information and or control as to certain entities.

### The Parties

2.   Jack Diamond ("Diamond") is a resident of Akron, Summit County, Ohio. He was and is a member of a variety of Ohio limited liability companies in which the individual Defendants serve as managers including, HCFP of Celebration Enterprises, LLC; HCFP of Celebration Investments, LLC; HCFP of Norwalk Enterprises, LLC; HCFP of Norwalk Investments, LLC; HCFP of Sandusky Enterprises, LLC; HCFP of Sandusky Investments, LLC; HCFP of Sidney Enterprises, LLC; HCFP of Sidney Investments, LLC; HCFP of Dayton Enterprises, LLC; and Surgical Development Partners PA, LLC which are collectively referred to herein as the "HCFP Entities". Diamond is also a member of Defendant HCFP Legacy Holdings, LLC.

3.   G. Edward Alexander Jr. ("Alexander") is a resident of Tennessee. Alexander is member and manager of a variety of HCFP Entities and holds the title of President and CEO in a variety of HCFP Entities. Alexander is also a member and manager of Defendant HCFP Legacy Holdings, LLC.

4.   John T. Prater ("Prater") is a resident of Tennessee. Prater is member and manager of a variety of HCFP Entities and holds the title of Vice President in a variety of HCFP Entities. Prater is also a member and manager of Defendant HCFP Legacy Holdings, LLC.

2

5. Frank Sossi is, upon information and belief, a citizen of either Tennessee or Twinsburg, Ohio[1]. Sossi is member and manager of a variety of HCFP Entities. Sossi is also a member, manager and officer of Defendant HCFP Legacy Holdings, LLC.

6. Alexander, Prater, and Sossi are, upon information and belief, managers of HCFP Legacy Holdings, LLC. They are collectively referred to herein as "the Manager Defendants."

7. HCFP Legacy Holdings, LLC ("Legacy") is a limited liability company organized in Delaware in December, 2021. Upon information and belief, Legacy has its principal place of business in Tennessee. Legacy was specifically formed for the purpose of conducting business in Ohio by possessing rights, title and interest in Management Services Agreements ("MSA's) for a variety of Ohio medical facilities including in Cleveland (Brainard MSA), Dayton (SW Ohio MSA), Sidney (Wilson MSA), Sandusky (ESSC Management) and Norwalk (TSCNCO Management). Legacy's membership includes Diamond and a variety of Ohio limited liability companies in which Diamond is a member, including the HCFP Entities.

**Personal Jurisdiction and Venue**

8. Legacy is a Delaware limited liability company with a membership which includes a variety of separate limited liability companies formed and organized in Ohio, including the HCFP Entities, which companies manage or transact business in connection with the operation of medical facilities in Ohio (such as in Cleveland, Sandusky, Dayton, Norwalk and Sidney, Ohio). As Diamond is a member of most of the HCFP Entities that comprise Legacy, and is a member of Legacy, for diversity purposes, Legacy is a citizen of Ohio and Summit County. In addition, Legacy has an interest in, uses, or possesses real property in this state. Legacy has transacted

---

[1] The domicile for Frank Sossi is unclear. He was an attorney in the Akron firm of Brennan Manna Diamond until March 2020. While has an address in Tennessee, he also has an address in Twinsburg, Ohio. Sossi's company, TFS Corporate Services, Inc. is the registered agent in Ohio for various members of HCFP Legacy Holdings, LLC and certain Defendants herein with an address at Sossi's residence on Glen Eagle Drive in Twinsburg, Ohio.

3

business in Ohio and entered into contracts with the Ohio HCFP Entities for the purpose of the transfer of the assets of the HCFP Entities into Legacy and has breached a contract in Ohio relating to Diamond's membership interest. Thus, Legacy is subject to the personal jurisdiction of this Court.

9.    Alexander, Prater, and perhaps Sossi are citizens of other states but are subject to personal jurisdiction in Ohio because they have transacted significant business in Ohio, entered into contracts in Ohio which are the subject of this Complaint, and engaged in tortious conduct in Ohio or elsewhere that caused injury in Ohio. Specifically:

- Alexander, Prater and Sossi, are investors in the Ohio HCFP Entities which provide management and investment services for Ohio medical facilities in Norwalk, Ohio, Sandusky, Ohio, Sidney, Ohio, Dayton, Ohio, Medina, Ohio, Cleveland, Ohio and elsewhere.

- The Manager Defendants entered into contracts in Ohio with Diamond for the conduct of business with Diamond through entities formed under the laws of Ohio for the investment in and operation of the Ohio medical facilities, which contracts contain provisions that, "[t]he laws of the State of Ohio, excluding those relating to choice or conflict of laws, govern the validity of this Agreement, and the construction of its terms."

- The Manager Defendants are officers or managers of the Ohio HCFP Entities in which they have invested with Diamond and have travelled numerous times to Ohio for purposes of the business transacted in this state.

- The Manager Defendants transact business in Ohio by, among other things, acting as managers of Ohio limited liability companies that manage or operate Ohio medical

4

facilities in Cleveland, Dayton, Sidney, Sandusky and Norwalk and which have interests in real property in those locations.

- The Manager Defendants are managers of the HCFP Entities that are residents and citizens of Summit County, Ohio.

- Sossi operates an Ohio corporation known as TFS Consulting, Inc. based at a residential home located at 10113 Glen Eagle Lane, Twinsburg, Ohio which serves as registered agent for some of the members of Legacy.

- Alexander, Prater, and Sossi are managers of Legacy, a Delaware limited liability company with Ohio citizenship which is a resident of Summit County. The Manager Defendants have entered into contracts with the Ohio HCFP Entities for the transfer of their right, title and interests in their assets to Legacy.

- The Manager Defendants have caused tortious injury in this state by their acts or omissions in this state, including but not limited to interfering with Diamond's sale and transfer of his membership interests to a third- party buyer as set forth in Counts Four and Five in this Complaint.

- As set forth herein, the Manager Defendants have caused tortious injury in this state by their acts or omissions outside of this state while regularly soliciting business and otherwise engaging in persistent course of conduct in this state.

- As set forth herein, the Manager Defendants have caused tortious injury in this state to Diamond by their acts outside of this state committed with the purpose of injuring Diamond while the Manager Defendants might reasonably have expected that Diamond and others in this state would be injured.

5

- As set forth herein, the Manager Defendants have engaged in tortious activity in connection with their conduct associated with Legacy and the HCFP Entities towards Diamond in this state as set forth in this Complaint.

Accordingly, Alexander, Prater, and Sossi are subject to personal jurisdiction in Ohio under Ohio Revised Code §2307.382 and Rule 4.3 of the Ohio Rules of Civil Procedure.

10. Venue is appropriate in Summit County, Ohio for reasons including the following:

1) Legacy, Alexander, Prater, and Sossi (if he is not a resident of Twinsburg) are subject to jurisdiction in Ohio pursuant to Rule 4.3 of the Ohio Rules of Civil Procedure for transacting business in this state and causing tortious injury in this state as set forth in Paragraphs 8 and 9 above, thus, venue is appropriate in Summit County by virtue of Diamond's status as a Summit County resident pursuant to Rule 3(C)(7) of the Ohio Rules of Civil Procedure;

2) Sossi maintains a residence in Twinsburg, Summit County, Ohio and operates consulting services for HCFP entities from that location and thus venue is appropriate pursuant to Rule 3(C)(1) of the Ohio Rules of Civil Procedure.

**Transaction History and Background**

11. Over several years, Diamond, Alexander, Prater and Sossi have worked together to create health care facility businesses and ambulatory surgery centers in Ohio and elsewhere. Initially, they collaborated to form an Ohio limited liability company known as Surgical Development Partners, LLC ("SDP") as an investment and management vehicle for various health care facilities. SDP provided medical facilities management services. As the management business grew, Diamond, Alexander, Prater and Sossi determined that the structure for the provision of

6

management services and investment opportunities needed to be revised. Accordingly, the SDP organization was restructured beginning in 2014.

12. Diamond, Alexander, Prater, Sossi and others formed an Ohio entity known as Health Care Facilities Partners, LLC ("HCFP") in or around October 2014 and agreed by contract as to the terms of the operations of HCFP as set forth in the HCFP Operating Agreement. Diamond, Alexander, Prater and Sossi were managers of HCFP. Each manager was vested with the authority, set out in paragraph 4.3 of the 2014 HCFP Operating Agreement, including the authority to sell company property, lease property, borrow money, authorize a merger or acquisition, enter into contracts, among other things. From October 2014 through at least October 2020, the HCFP Operating Agreement identified Diamond as a manager with the authority as described in paragraph 4.3. The 2014 Operating Agreement of HCFP is attached hereto as Ex. A.

13. From its inception, HCFP continued to develop medical facilities and to provide management services and to serve as an investment vehicle for the members to invests in the new projects as they came on line.

14. By 2018, HCFP had developed multiple medical facilities that were being managed in Ohio and into which the members of HCFP had invested. In order to provide more structure for the business "empire", Alexander and Sossi, as initial members, formed an Ohio entity known as Health Care Facilities Partners Administration, LLC ("HCFPA") on December 17, 2018. Diamond was a member and was identified as a manager of HCFPA along with Alexander, Prater, and Sossi.

15. HCFPA was controlled by the terms of an Operating Agreement dated December 17, 2018. The 2018 Operating Agreement for HCFPA identified Diamond as a "manager" and "member".

7

The terms of the HCFPA Operating Agreement mirrored the terms of the HCFP Operating Agreement. The 2018 HCFPA Operating Agreement is attached hereto as Ex. B.

16. By late 2019, there were 10 members of HCFPA, which included Diamond, Alexander, Prater, and Sossi, among others. For each new project that was developed, the owners were permitted to invest their then current pro-rata share ownership interest into such project. These projects were then organized as Ohio limited liability companies and include the HCFP Entities named herein which were administratively managed by HCFPA.

17. HCFPA became the central administrative entity serving each of the enterprise projects. Each project was typically organized into an enterprise limited liability company and an investment limited liability company (for example, HCFP of Sandusky Enterprises, LLC and HCFP of Sandusky, LLC were two Ohio organized limited liability companies organized in connection with a surgery center in Sandusky, Ohio). Diamond and other members of HCFP and HCFPA made investments in the projects as they came on line.

18. By 2020, Diamond was a minority member and a manager of HCFP and HCFPA as well as some of the HCFP Entities. While he was a minority member, Diamond at one time held the single largest percentage share among the members with his overall percentage of ownership at around 26% as of October, 2020.

**Diamond Sells His Interests Pursuant to the
Operating Agreements but the Manager Defendants
Refused to Recognize the Sale and Acted to Interfere with the Sale**

19. In 2019, Diamond communicated to the other managers, principally Alexander and Prater, that he was interested in reducing his debt obligations in HCFP, HCFPA and the related project LLC's. Diamond was told that the other members expressed no interest in purchasing Diamond's

8

membership units. Instead, Alexander requested that Diamond remain long enough to deliver certain projects then being developed.

20. Diamond continued to work on the other projects but began to explore alternatives for the HCFP/HCFPA enterprise and specifically to bring in a partner to infuse the enterprise with capital and unburden the members from debt obligations that they had undertaken when the companies were being formed.

21. Diamond explored a relationship with a company known as Value Health, LLC (hereinafter, "Value Health"). Value Health had expressed an interest in purchasing some or all Diamond's interest in the HCFP/HCFPA enterprise. The Manager Defendants, however, were unwilling to develop a relationship with Value Health for that purpose. Instead, the Manager Defendants apparently were working with a different entity on a joint venture to secure capital for the enterprise and to restructure the HCFP/HCFPA enterprise into a new entity structure with this third party.

22. During the portion of 2020 when the discussions between the Manager Defendants were ongoing with the third party, the Manager Defendants shared no details of the joint venture being developed by them with Diamond. In fact, the Manager Defendants did not disclose to Diamond the details of the proposed transaction despite requests by Diamond.

23. In order to limit his own exposure on debt and to pull back from engagement with the HCFP/HCFPA enterprises, among other reasons, on October 29, 2020, Diamond sold his interests in the HCFP/HCFPA enterprise to Value Health.

24. Diamond's sale of his interest on October 29, 2020 was undertaken in accordance with the terms of the 2014 and 2018 Operating Agreements for the HCFP/HCFPA entities which he

9

managed or was a member. Specifically, paragraph 5.3 of those Operating Agreements provided that a member may transfer an interest with no restrictions, stating:

> Admission of a Transferee as Member. A Member may transfer an interest to another Person and the transferee will be admitted as a Member and the Managers will reflect the transfer on the Ownership schedule.

25. Despite Diamond's sale and transfer of his interest to Value Health, the Manager Defendants refused to admit Value Health as a Member in the entities, refused to reflect Value Health on the Ownership schedule of the entities, and refused to recognize Diamond's sale of his interest.

26. Instead, the Manager Defendants did two things in particular:

    a. On November 13, 2020, they purported to amend to the operating agreements of HCFP, HCFPA and the related HCFP Entities to prohibit the transfer of a membership interest and to remove Diamond as manager, among other things; and

    b. They authorized the filing of a suit against Diamond and Value Health in federal court in an action captioned *Health Care Facilities Partners, LLC, et al. v. Diamond*, Case No. 5:21-cv-01070-SL. This suit remains pending and involves claims of breach of fiduciary duty, trade secret misappropriation; breach of contract and legal malpractice, among other things. The Manager Defendants and Legacy are not parties to that suit.

27. The 2014 and 2018 Operating Agreements of HCFP, HCFPA (as well as similar provision in the operating agreements for the other HCFPA Entities) made no provision for amendments to the respective operating agreements. Consequently, in order to undertake any amendment to those operating agreements, all the members had to consent and approve any amendment.

28. The November 13, 2020 amendments to the Operating Agreements of HCFP, HCFPA and the HCFP Entities were not unanimously agreed to by the members. To this day, all the members of those entities have not consented to or approved the 2020 amendments to the Operating Agreements.

**Scheme to Dilute and Diminish Diamond's Interest and to Freeze Him Out**

29. In 2021, the Manager Defendants began to develop a plan with the unnamed third-party entity to restructure the HCFP, HCFPA and the HCFP Entities. This plan was coordinated with the third party with whom they were had entered a non-binding Letter of Intent ("LOI"). During negotiations for the LOI and a proposed joint business arrangement between the Manager Defendants and the third party, a plan developed for the creation of an HCFP Legacy Holding entity which would own less than a majority of the HCFP Entities going forward as well as a separate entity formed by the third party which would own more than 50% of the project entities.

30. Diamond was not advised about the creation of this proposed structure and had no input and his consent was not sought for it.

31. By December 31, 2021, the restructuring as discussed between the Manager Defendants and the third party had taken shape. On January 6, 2022, Diamond was advised for the first time that the Manager Defendants claimed to have formed a new entity known as HCFP Legacy Holdings, LLC (the "Legacy" defendant in this action). Diamond was advised that this new entity was formed for the purpose of placing Diamond's and other members' interests in HCFP Entities into this new entity.

32. On January 6 2022, Sossi sent Diamond a "Member Notice" relating to the subject of the HCFP Entities which announced to Diamond, for the first time, the creation of Legacy and its impact on the HCFP Entities. The Member Notice purported to list proportionate member interests

11

and showed that Diamond's interest in the HCFP Entities had been reduced from approximately 26% to 17%. The reduction in Diamond's interest was, upon information and belief, the result of Defendant Managers' wrongful and deceitful over-valuation of two projects in which Diamond had not invested.

33. On January 17, 2022, Diamond was provided an Agreement and Plan of Reorganization by which each of the HCFP Entities purported to, "irrevocably assign, transfer, and covey all of its right, title, and interest in and to its Contributed Interests or MSA, as applicable, to Legacy Holdings...". The Contributed Interests so assigned, transferred and conveyed is defined to include, collectively, all of each HCFP Entities' Enterprise and Investment Interests. Diamond was advised on January 17, 2022 that, even though he never signed any agreement as to the operations of Legacy or consented to the creation of Legacy, he was a member – indeed an "Initial Member" – of Legacy and that all of his interests in the HCFP Entities were folded into Legacy.

34. The creation and formation of Legacy was improper and a violation of existing contracts between Diamond and the Manager Defendants, which contracts operated the HCFP Entities. The improper Legacy entity has been utilized by the Managing Defendants to eliminate or reduce Diamond's membership interests in the HCFP Entities. The purpose of this new entity was to isolate Diamond's investment and membership interest and to dilute it. The ultimate goal is to eliminate Diamond's investment and interest in the HCFP/HCFPA enterprise entities altogether all to the benefit of Defendants and to the financial detriment of Diamond.

35. On January 17, 2022, Sossi sent a Notice with the subject line, "Member Notice – HCFP Legacy Update and Funding – Due Date January 31, 2022." In the email Notice Sossi also attached the following documents: 1) an Amended and Restated Limited Liability Company Agreement dated December 31, 2021 for Legacy; 2) a Written Consent Resolution of the Managers of Legacy

12

for a Funding Notice to the Legacy Members; 3) Offering and Subscription Agreement for members of Legacy due by January 31, 2022; and 4) a chart with a "Master Reorganization" plan. The Legacy Operating Agreement and the Subscription Agreement are not attached hereto as they are claimed to be confidential by Defendants.

36. Even though Diamond had never seen any operating agreement for Legacy before January 17, 2022 and had had no discussions with any manager or member of HCFP/HCFPA enterprise entities about Legacy, the "Amended and Restated Limited Liability Agreement" of Legacy (the "Legacy Operating Agreement") identifies Diamond as a Member of Legacy. Diamond has never signed any agreement as to Legacy and has agreed to none of the provisions of the Legacy Operating Agreement.

37. The Legacy Operating Agreement purports to set up a series of unilateral and unauthorized conditions which would cause Diamond's interest to be eliminated by edict from the Managing Defendants.

38. For example, Section 3.3 of the Legacy Operating Agreement purports to require an investor in the members of Legacy to contribute additional funds to the entity when requested as a "cash call". Legacy need not provide any information to impose a cash call, but if the request for addition funding is declined by a member, that member's interest will be declared in default by Defendants. Upon failure to pay a cash call, the Company, at the unfettered discretion of the Defendant Managers, "may cause the Defaulting Member to forfeit up to 100% of its Units in the Company without payment or other consideration therefor, in which case the Members (other than the Defaulting Member) and/or one or more third parties shall be entitled to acquire such forfeited portion of the Defaulting Member's Units."

39. Diamond has never agreed to the dilution of his membership interest in the entities which he has invested and has been a member. Diamond had never agreed to the creation of Legacy. Diamond has not agreed to have his investment and membership interests in the HCFP Entities folded into Legacy. Diamond has not agreed to the dilution of his membership interests.

40. The January 17, 2022 Notice in fact purported to make such a "cash call" on Diamond. The Funding Notice required Diamond to pay over $85,000 by January 31, 2022 or face a forfeiture of his interest in the HCFP Entities by up to 100%.

> In accordance with the Amended and Restated Limited Liability Company Agreement of Legacy (the "Legacy Operating Agreement"), any member of Legacy who fails to make full payment when due of any portion of the Cash Call shall be considered a "Defaulting Member" (as defined in the Legacy Operating Agreement), and the board of managers of Legacy may pursue and enforce any and all rights and remedies that Legacy may have against such Defaulting Member at law, in equity, or pursuant to any provision of the Legacy Operating Agreement, including, without limitation, causing the Defaulting Member to forfeit **up to** 100% of such Defaulting Member's units in Legacy without payment or other consideration, therefore. … The chart below indicates each member of Legacy's pro-rata portion of the Cash Call and the potential forfeiture associated with failing to make such payment in full at 50% forfeiture of interest level for any Defaulting Member. … (emphasis original).

41. Thus, Diamond was advised on January 17, 2022 that if his payment were not received in full by January 31, 2022, he would forfeit from 50% up to 100% of his interest.

42. In addition to paying the amounts demanded in the "cash call", demand on Diamond was made for him to sign the Subscription Agreement. The Subscription Agreement in essence would have Diamond acknowledge the legitimacy of the actions the Manager Defendants, his membership in Legacy, his agreement to indemnify the Defendant Managers, and that by making his payment he thereby agreed that he had been provided all the financial information he has requested to make the cash call payment, among other things.

14

43. On January 26, 2022, Diamond paid the amount under protest and corresponded with the Manager Defendants that he is in disagreement with the terms of the Legacy Operating Agreement and the prior amendments and restructuring of which he had no part and thus would not sign the Subscription Agreement because it required him to affirm a gross misrepresentation of fact.

44. On January 28, 2022, Sossi sent Diamond a "HCFP-Reply" indicating that Diamond's payment would not satisfy the "cash call" without Diamond's agreement to the terms of the Subscription Agreement. Sossi demanded a signed subscription agreement and provided that if not returned by February 15, 2022, the cash call would be considered unpaid and consequently Diamond would be declared in default with the consequential reduction in his interest in the HCFP Entities. In addition, Sossi refused to provide additional information claiming that "we are not comfortable providing more granular information…". On February 26, 2022, Sossi sent an email advising Diamond that, "we have diluted your interest…" but did not indicate by what amount the Defendant Managers had determined to strip Diamond's interest. In testimony provided by Prater on April 19, 2022 in the federal court action, Diamond learned for the first time that his interest was purportedly diluted by 50% by the sole action and discretion of the Manager Defendants. This purported dilution was arbitrary, unreasonable and based on no objective economic parameter.

45. This scheme of reducing a member's interest is designed to bring about the elimination of Diamond's interest in an enterprise in which, until this restructuring, he was the single largest investor. Notably, the other members who are subject to the cash call forfeiture at the discretion of the Board managers are all Board managers, relations of Board managers, or officers. The members include Eddie Alexander (CEO and a Manager); Rene Alexander (Manager Alexander's spouse), Andrew Heaner (a Manager); John Prater (CFO and a Manager); Frank Sossi (Secretary and a Manager); TFS Consulting (Manager Sossi's consulting business and registered agent for

15

Legacy); Elizabeth Prater (Manager Prater's spouse); William Gavigan (Chief Operating Officer of HCFPA). The interests of Diamond are being targeted for elimination in what is a transparent scheme to trample on the rights of a minority member and dilute and eliminate his interest.

46. The Manager Defendants have conspired and acted with the sole purpose and intent of perpetrating financial ruin upon Diamond after Diamond had agreed for years to be personally liable for the debts of the HCFP Entities. Diamond's obligation for the debt was undertaken at the same time the Manager Defendants themselves paid themselves significant salaries as officers and managers while operating the HCFP Entities in a manner that has been largely unprofitable for the other owners.

**COUNT ONE**
**CONVERSION**
**(Alexander, Prater, Sossi, and Legacy)**

47. Diamond restates the allegations of paragraphs 1 through 46 as if fully rewritten herein.

48. Diamond had and has a property interest in investments in the HCFP Entities. Over the years, Diamond has complied with requests for payments made by the HCFP entities to the members. As recently as the fall of 2020, Diamond responded to a cash call made the Managing Defendants to support HCFP/HCFPA. By their actions, Defendants have converted the property interests of Diamond to their own benefit. In addition to the cash calls, when made, Diamond has invested significant sums over the years in various entities operated by HCFP/HCFPA and the HCFP Entities.

49. On or about January 17, 2022, Diamond was sent a request for a cash call by Defendants. Defendants demanded that Diamond make payment as a member to Legacy to provide cash for a short fall announced by Defendants. Diamond was told that if he did not provide the cash contribution being requested, his membership interest would be diluted anywhere from 50% to

16

100%. Diamond made the payment requested under protest as he had just learned of Legacy, its creation and the terms of the operating agreement, and the fact that the HCFP Entities into which he had invested had conveyed, transferred and assigned all their assets and ownership interests to Legacy.

50. Defendants refused to accept Diamond's cash call payment even though it was timely submitted. Instead, Defendants created unlawful conditions for the acceptance of Diamond's payment and threatened to dilute his interest if he did not accept additional terms in the Subscription Agreement he was sent. Among other things, the Subscription Agreement required Diamond to acknowledge the legitimacy of Legacy, consent to the Legacy Operating Agreement and acknowledge its application, and to assent to matters to which he has not agreed and otherwise make warranties and representations as to facts that are neither accurate nor true.

51. Defendants set up unlawful conditions for the acceptance of Diamond's payment with the sole purpose to convert Diamond's property interests. The conduct of the Manager Defendants and Legacy, by and through its managers, officers and agents, has been designed to convert Diamond's property and investment in the HCFP/HCFPA entities to their own purpose and for their own use.

52. The conduct by Defendants to convert the property and ownership interests of Diamond include Defendants' illegitimate "cash call" which purports to and compels Diamond to turn money over to Defendants at their whim and under the terms they specify or have his interest be declared defaulted and his membership units forfeited. Effectively, Defendants have created a scheme to take Diamond's money through coercion and threat of unilateral declaration of default – all without the consent or input of Diamond and without any means of compensation or consideration to Diamond.

*Sandra Kurt, Summit County Clerk of Courts*

53.   As a result of the conduct of Defendants Diamond has been damaged in an amount to be proven at trial to compensate Diamond for the conversion scheme implemented against him, and is entitled to an award of punitive damages for such conduct.

## COUNT TWO
## BREACH OF CONTRACT
### (Legacy)

54. Diamond restates the allegations set forth in paragraphs 1 through 53 as if fully rewritten herein.

55. Legacy purports to have an Operating Agreement and has informed Diamond that he is an initial member of Legacy and is subject to the terms of the Legacy Operating Agreement to which he has not consented.  Legacy also has informed Diamond that his interests in the HCFP Entities have, without prior notice to Diamond, been assigned and transferred to Legacy.

56. The terms of the Legacy Operating Agreement were unauthorized and eliminate key vested contractual rights of Diamond.  The unauthorized Operating Agreement, among other things, eliminates Diamond's, 1) right to sell his membership interest without prior approval, 2) ability to compete, and 3) ability to withhold a cash call and determine not to invest in certain projects without threat of losing the entirety of his investment and membership interests.

57. The adoption of the Legacy Operating Agreement with these restrictions without Diamond's consent constitutes a breach of contract.

58. In the alternative, Legacy's conduct in diluting Diamond's interest when he made a cash call payment in 2022 under protest also amounts to a breach of contract.  Even under the Legacy Operating Agreement, the dilution of Diamond's interest amounts to a breach of contract because Diamond responded to the cash call demanded which Legacy refused to accept.  By placing

18

additional conditions on Diamond for his cash call and in effect refusing to accept Diamond's cash call payment when made and thus diluting Diamond's interest, Legacy has breached the applicable contract in existence.

59. As a result of the Legacy's conduct in breaching the terms of the operating agreement contract, Diamond has been damaged and continues to be damaged in an amount to be proven at trial to compensate him for his loss.

**COUNT THREE**
**BREACH OF FIDUCIARY DUTY**
**(Alexander, Prater, and Sossi)**

60.  Diamond restates the allegations of paragraphs 1 through 59 as if fully rewritten herein.

61. The Manager Defendants are managers of Legacy and other HCFP Entities in which Diamond has a membership interest. In addition, at least Alexander, Prater and Sossi were and are officers of those entities.  As such, the Manager Defendants each owe a fiduciary duty to Diamond and every other member of those entities.

62. Alexander, Prater, and Sossi have breached their respective fiduciary duties owed to Diamond.  They have engaged in conduct specifically designed to harm and impair the minority members rights possessed by Diamond in violation of the applicable Operating Agreements as well as the provisions of Chapter 1706 of the Ohio Revised Code.  This conduct includes, without limitation:

> a.  The unlawful and illegitimate attempt to amend the Operating Agreements of HCFP, HCFPA and the related entities organized as part of the HCFP/HCFPA enterprise so as to remove Jack Diamond as a Manager and isolate him in the operation of the entities to his detriment;

19

b.  The unlawful and illegitimate attempt to restructure the HCFP/HCFPA enterprise into Legacy so as to diminish Diamond's investment in those entities in which he has invested;

c.  The formation of Legacy so as to effectively amend the operating agreements of the HCFP/HCFPA enterprise entities without agreement of all members in clear violation of Ohio Revised Code §1706.082;

d.  Structure the Legacy entity in such a way that Diamond's investment has been reduced, without explanation, since December, 2021;

e.  Establish an operating agreement for Legacy pursuant to which the Manager Defendants can at their discretion make cash calls without limitation on Diamond and further enabling the Managing Members to, at their sole discretion, forfeit Diamond's ownership interest upon failure to pay the demanded amounts;

f.  Failing to advise Diamond of any restructuring until shortly before demanding a cash call of $85,000, upon unlawful conditions made upon Diamond, including acknowledging that he agrees with the changes the Managing Defendants have undertaken and that he states that he was provided with information when in fact that information was purposely withheld from him by Managing Defendants, as well as in fact failing to provide the financial information he requested as to the reasons for the cash call or an accounting of amounts expended by the entities;

g.  Interfering with Diamond's clear right under the HCFP/HCFPA Operating Agreements in effect in October, 2020 to transfer his ownership interest in the various entities and refusing to acknowledge the transfer of his interest and failing

20

to reflect Value Health on the Ownership schedule in violation of the applicable operating agreements;

h.  Failing and refusing to provide information to Diamond as to the discussions they were having with a third-party joint venture prospect and to advise Diamond of discussions and plans to restructure the HCFP/HCFPA enterprises when that plan was being developed in early 2021;

i.  The efforts of the Manager Defendants to impose illegal restrictions upon Diamond's right to sell and assign his interest in Legacy as well as HCFP/HCFPA entities as well as imposing a duty on Diamond to continue to provide cash funding with no ability to transfer his shares or limit his liability as guarantor on Legacy and HCFP/HCFPA debt without risk of being declared in default constitutes a breach of fiduciary duties owed toward, and the unlawful oppression of, a minority member.

63. As a result of the breach of fiduciary duties owed by Alexander, Prater, Sossi and Legacy to Diamond, Diamond has been damaged in the amount to be proven at trial to compensate Diamond for the fiduciary duties owed to him.  The conduct of Defendants was willful, malicious, and intended to cause harm to Diamond and entitles Diamond to an award of punitive damages.

## COUNT FOUR
## TORTIOUS INTERFERENCE WITH CONTRACT
### (Alexander, Prater, and Sossi)

64.  Diamond restates the allegations of paragraphs 1 through 63 as if fully rewritten herein.

65. A contract for the sale of Diamond's interest in HCFP/HCFPA enterprise to ValueHealth existed as of October 29, 2020.  The contract in existence on that date and as amended is not attached to hereto in light of its designation as confidential but is in the possession of Defendants.

21

By virtue of this contract, Diamond sold his interest in HCFP/HCFPA and related entities and transferred personal responsibility as guarantor for the debts and obligations of those entities to ValueHealth.

66. Prior to purporting to amend its Operating Agreement in November 2020, the Manager Defendants were aware of the contract between Diamond and ValueHealth and otherwise were aware that Diamond had sold his interests to ValueHealth.

67. The Manager Defendants purported to amend the applicable Operating Agreements in HCFP, HCFPA and related entities following Diamond's sale to ValueHealth and threatened legal action against ValueHealth – and ultimately authorized the filing of the lawsuit brought by the HCFP Entities - so as to knowingly and intentionally procure and induce the breach of the Value Health's purchase contract with Diamond.  As a result of the conduct of Alexander, Prater, and Sossi, ValueHealth did in fact breach its contract with Diamond and purported to rescind its contract with Diamond.

68.  The conduct of Alexander, Prater, and Sossi was without justification, undertaken in bad faith, and was malicious and a willful violation of the terms of the applicable operating agreements of HCFP and HCFPA and related entities as they existed at the time Diamond sold his interest to ValueHealth and which operating agreements are legally still in force and effect.

69.  As a result of the conduct of Alexander, Prater, and Sossi, Diamond has been damaged in the amount of the value of the purchase price agreed to by ValueHealth for Diamond's interest in Health Care Facilities Partners and in the amount that would compensate Diamond for having been denied the right to transfer his personal responsibility for the debts and obligations of HCFP and HCFPA and related entities in which Diamond had an interest and entitles Diamond to an award of punitive damages.

Sandra Kurt, Summit County Clerk of Courts

## COUNT FIVE
## TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS
### (Alexander, Prater, and Sossi)

70.   Diamond restates the allegations of paragraphs 1 through 69 as if fully rewritten herein.

71.   Diamond had a business relationship with Value Health in which Diamond was transferring his ownership in and liabilities for the HCFP/HCFPA entities in which he had an ownership interest.

72.   Prior to purporting to amend the HCFP/HCFPA Operating Agreements in November 2020, Alexander, Prater, and Sossi were aware of the business relationship existing between Diamond and ValueHealth and otherwise were aware that Diamond was selling his interests to Value Health.

73.   Alexander, Prater, and Sossi purported to amend the applicable Operating Agreements of HCFP/HCFPA and related entities following Diamond's sale to ValueHealth so as to knowingly and intentionally interfere with the business relationship between Diamond and ValueHealth.  The interference included authorizing the HCFP Entities to file suit against Value Health for its relationship with Diamond and otherwise attempting to intimidate Value Health into terminating its relationship with Diamond. As a result of the conduct of Alexander, Prater, and Sossi, ValueHealth subsequently unilaterally claimed to terminate its business relationship with Diamond and disavowed the Purchase and Sale Agreement entered into with Diamond.

74.   The conduct of Alexander, Prater, and Sossi was without justification and was undertaken in bad faith and in violation of the terms of the applicable operating agreements of HCFP and HCFPA and related entities as it existed at the time Diamond sold his interest to ValueHealth and which operating agreements are legally still in force and effect.

*Sandra Kurt, Summit County Clerk of Courts*

75.   As a result of the conduct of Alexander, Prater, and Sossi, Diamond has been damaged in an amount to be proven at trial to compensate him for the loss of the business relationship he had developed with ValueHealth for the transfer of his interest in HCFP, HCFPA and related entities. The conduct of Defendants was willful, malicious, and intended to cause harm to Diamond and entitles Diamond to an award of punitive damages.

## COUNT SIX
## CIVIL CONSPIRACY
### (Alexander, Prater, and Sossi)

76.   Diamond restates the allegations of paragraphs 1 through 75 as if fully rewritten herein.

77.   The Managing Defendants have acted in concert by entering into various agreements among themselves and in cooperation with one another to cause injury to Diamond by: a) interfering with Diamond's sale of his interest to Value Health; b) interfering with Diamond's business relationship with Value Health; c) forming Legacy and two other entities to attempt to change the contractual terms under which Diamond had agreed to invest and participate in the Ohio Entities and, d) in other ways not currently known to Diamond.

78. As a result of the conspiracy between the Managing Defendants, each of the Managing Defendants is jointly and severally liable for the damages proven by Diamond at the trial on Counts One, Three, Four and Five.

## COUNT SEVEN
## INJUNCTION
### (All Defendants)

79.   Diamond restates the allegations of paragraphs 1 through 78 as if fully rewritten herein.

80.   The tortious and unlawful conduct of Defendants is causing immediate irreparable harm to Diamond.  Specifically, the conduct of these defendants has been to erode, dilute and set up a

24

scheme to eventually eliminate Diamond's ownership interest in HCFP, HCFPA and the related entities. The scheme under which Diamond's significant ownership interest has been funneled into Legacy is illegal and improper under the applicable operating agreements and Ohio law.

81. Diamond has been confronted with the immediate potential for the dilution of his interest in the form of a "cash call" sent on January 17, 2022 requiring the payment of more than $85,000 or to have 50% of his ownership interest forfeited creates an immediate and irreparable harm. Even though Diamond in fact made the cash call payment when demanded, the unlawful demands and conditions placed on Diamond before his payment would be accepted and his interests diluted constitute a present and continuing threat of forfeiture of his long-held membership interests. Defendants' conduct has resulted in a purported dilution of interest and if it continues will result in the elimination of his status even as minority shareholder and thereby placing him in a position where his ability to defend his interest is impaired and even eliminated.

82. The unreasonable and illegal scheme is even more corrupt when it is clear that the cash call sought by these defendants is for the purpose of funding the lawsuit authorized by the Manager Defendants against Diamond. Diamond has requested financial information and expenditures to determine the need for a cash infusion but his request has been ignored. Effectively, Diamond is being coerced to provide funding for lawyers who are working at the behest of Defendants to pursue litigation against Diamond – or to risk loss of his interest and investment.

83. Diamond has a likelihood of success on the merits of his claim. As a result, Diamond requests this court for an injunction to enjoin Defendants from utilizing Legacy to for any purpose including but not limited to coercing Diamond to make payments to Legacy to avoid the elimination of his interest and from diluting Diamond's interest in HCFP/HCFPA and related entities.

Sandra Kurt, Summit County Clerk of Courts

WHEREFORE, as to Count One, Two, Three, Four and Five, Plaintiff Jack Diamond prays for judgment against Defendants herein in an amount in excess of $25,000 and requests punitive damages against Defendants, together with costs, interest, attorneys' fees and other relief as deemed fair and equitable by this Court.

WHEREFORE, as to Count Six, Plaintiff Jack Diamond requests this Court to issue an order enjoining the conduct of Defendants in undertaking an improper reorganization into a new "Legacy" entity without Diamond's consent and to enjoin Defendants from dilution of Diamond's interests.

WHEREFORE, Plaintiff Jack Diamond requests this Court to hold Defendants Alexander, Prater and Sossi, jointly and severally liable as co-conspirators in the various schemes to damage Diamond.

IN ADDITION TO THE FORGOING, Plaintiff Jack Diamond requests the following:

1. An accounting of all financial transactions of Legacy and its member entities and subsidiary companies due to the conduct of in the operating of Legacy and the HCFP Entities; and

2. The appointment of a Receiver pursuant to Ohio Revised Code §2735.01(A)(1) (6) and (7) to manage the affairs of the Legacy and the HCFP Entities which have been reorganized into Legacy by virtue of the Agreement and Plan of Reorganization, purportedly entered into on December 31, 2021, such a receiver being necessary in light of imminent danger of insolvency which the Manager Defendants themselves have announced as to the financial condition of Legacy and for which they have refused to provide full financial information as requested.

CV-2022-07-2215     CROCE, CHRISTINE     06/30/2022 08:57:28 AM     CMCO     Page 27 of 63

*/s/Orville L. Reed, III*
Orville L. Reed, III (#0023522)
David W. Hilkert (#0023486)
Hamilton DeSaussure, Jr. (#0023516)
Stark & Knoll Co., L.P.A.
3475 Ridgewood Rd.
Akron, OH  44333
Telephone:     (330) 572-0328
Telefax:     (330) 572-0329
Email:     oreed@stark-knoll.com
           dhilkert@stark-knoll.com
           hdesaussure@stark-knoll.com

Attorneys for Plaintiff

## **JURY DEMAND**

Plaintiff Jack Diamond hereby requests a trial by jury on all issues so triable in this action.

*/s/Orville L. Reed, III*
Orville L. Reed, III (#0023522)

839079v7

27

# HEALTH CARE FACILITIES PARTNERS, LLC

## OPERATING AGREEMENT

### October 1, 2014



EXHIBIT
A

# HEALTH CARE FACILITIES PARTNERS, LLC

## Declaration of
## Operating Agreement

Dated as of October 1, 2014

### Table of Contents

|  |  | Page |
|---|---|---|
| Section 1 | Definitions | 1 |
| Section 2 | Formation | 1 |
| 2.1 | Organization | 1 |
| 2.2 | Agent | 1 |
| 2.3 | Principal office | 1 |
| 2.4 | Purposes | 1 |
| 2.5 | Title to Property | 1 |
| 2.6 | Term | 2 |
| Section 3 | Financial and Tax Matters | 2 |
| 3.1 | Records to be Maintained | 2 |
| 3.2 | Tax Returns | 2 |
| 3.3 | Tax Matters Member | 2 |
| Section 4 | Management | 2 |
| 4.1 | Appointment of Managers | 2 |
| 4.2 | Management | 2 |
| 4.3 | Managers Authority | 3 |
| 4.4 | Compensation and Expense Reimbursement | 3 |
| 4.5 | Time Commitment | 3 |
| 4.6 | Officers | 3 |
| 4.7 | Liability of the Managers | 4 |
| Section 5 | Membership | 4 |
| 5.1 | Liability of the Members | 4 |
| 5.2 | Ownership Schedule | 5 |
| 5.3 | Admission of a Transferee as a Member | 5 |
| 5.4 | Issuance of Interests | 5 |
| 5.5 | Related Party Transactions | 5 |
| 5.6 | Minute Book | 5 |
| Section 6 | Contributions, Allocations and Distributions | 5 |
| 6.1 | Capital Contributions | 5 |

**Sandra Kurt, Summit County Clerk of Courts**

6.2    Allocations ...........................................................................5
6.3    Distributions ..........................................................................5
6.4    Interest Transfers ....................................................................6

Section 7    Indemnification ...........................................................................6
7.1    Authorization .........................................................................6
7.2    Prescribed Standard of Conduct ...............................................6
7.3    Determinations as to Prescribed Standard of Conduct ...............6
7.4    Advancement of Expenses .......................................................7

Section 8    Miscellaneous Provisions...........................................................7
8.1    Rights of Creditors and Third Parties .......................................7
8.2    Number and Gender.................................................................7
8.3    Binding Effect.........................................................................7
8.4    Ohio Law ................................................................................7

Appendix                    Definitions

Ownership Schedule         Members' Names, Capital Contributions and Interest Ownership

**Sandra Kurt, Summit County Clerk of Courts**

Case: 5:22-cv-01689-CAB   Doc #: 1-1   Filed: 09/20/22   31 of 143.   PageID #: 54

# HEALTH CARE FACILITIES PARTNERS, LLC
## Declaration of
## Operating Agreement

This Declaration of Operating Agreement is made effective as of October 1, 2014, by and between the Members as listed on the Membership Schedule, and G. Edward Alexander, John Prater, Andrew Heaner, Jack Diamond and Frank Sossi as the Managers ("Managers") of Health Care Facilities Partners, LLC, an Ohio limited liability company ("Company").

### Section 1
### Definitions

Unless the context indicates otherwise, (i) all of the capitalized words in this Agreement have the meanings set forth in the Appendix or other provision of this Agreement and (ii) all noncapitalized words that appear in this Agreement and are defined in the Act and used herein have the meanings set forth in the Act.

### Section 2
### Formation

**2.1     Organization.**  The Members have caused the Company to be formed as an Ohio Limited Liability Company and have caused to be filed Articles and a certificate of acceptance of appointment by the resident agent of the Company with the Ohio Secretary of State.

**2.2     Agent.**  The agent ("Agent") for service of process upon the Company is Frank T. Sossi, whose address in the State of Ohio is 10113 Glen Eagle Lane, Twinsburg, Ohio 44087. The Manager may, from time to time, change the agent, and if the agent ceases to act as such for any reason or moves from Ohio, the Manager must forthwith designate a replacement agent for this purpose. The Manager must forthwith file with the Ohio Secretary of State the documents required by the Act with respect to any change of the agent or the agent's address.  If the Manager fails to designate a replacement agent, or if the Manager or the agent fail to file the appropriate notice of a change of agent or the agent's address, any Member may designate a replacement agent or file a notice of change of agent or the agent's address.

**2.3     Principal office.**  The principal office of the Company will be located at 201 Seaboard Lane, Suite 100, Franklin, Tennessee 37067, or at any other location as the Manager determines from time to time.

**2.4     Purposes.**  Except as provided by the Act, the Company may pursue any purpose or purposes for which individuals may lawfully associate themselves.

**2.5     Title to Property.**  Title to all property contributed to or otherwise acquired by the Company must be held in the name of the Company.

*Health Care Facilities Partners, LLC*
*Declaration of Operating Agreement*
*October 1, 2014*

2.6    Term.  The term of the Company will be perpetual or until its Charter is dissolved with the Ohio Secretary of State according to the Provisions of the Act.

### Section 3
### Financial and Tax Matters

3.1    Records to be Maintained.  The Company must maintain the following records at its registered office or at such other location in the State of Ohio as determined by the Manager:

    (a)    A current list of the full name and last known business address of the Members and the Manager;

    (b)    A copy of the filed Articles and all amendments thereto, if any, together with executed copies of any powers of attorney pursuant to which any documents have been executed; and

    (c)    A copy of this Agreement and any amendments thereto then in effect.

3.2    Tax Returns.  The Manager shall cause to be prepared and filed all necessary federal and state income tax returns of the Company.  Each Member shall furnish all pertinent information in its possession relating to the Company operations that is necessary to enable the Company's income tax returns to be prepared and filed.  Neither the Company nor any Member may make an election for the Company to be excluded from the application of the provisions of subchapter K of chapter I of subtitle A of the Code or any similar provisions of applicable state law, and no provision of this Agreement shall be construed to sanction or approve such an election.

3.3    Tax Matters Member.  As used herein, "Tax Matters Member" shall have the same meaning as "Tax Matters Partner" as used in the Code. Frank T. Sossi shall be the "Tax Matters Member" for the Company, as that term is defined in, and for all purposes of, Section 6231(a) of the Code and all applicable rules and regulations promulgated thereunder.

### Section 4
### Management

4.1    Appointment of Manager.  The Managers of the Company will be G. Edward Alexander, John Prater, Andrew Heaner, Jack Diamond and Frank Sossi.  A Manager will cease being a manager of the Company upon his resignation, death, dissolution, adjudication of incompetency, or removal by the Members.  The Members may appoint a new Person to succeed a Manager who ceases being a manager.

4.2    Management.  Control of the day-to-day management of the Company is vested in the Manager.  Except as otherwise provided in this Agreement or by the Act, Company business decisions may be made by the Manager acting on behalf of the Company.  The Manager may resign or be removed as Manager by the Members, and will be automatically removed if the

*Health Care Facilities Partners, LLC*
*Declaration of Operating Agreement*                    2
*September 3, 2014*

Manager dies, dissolves, or is adjudicated incompetent.  If the Manager resigns or is removed, the Members may appoint a successor Manager.

    **4.3**    <u>Manager Authority</u>.  Without limiting the foregoing, the Manager has the authority to do any of the following on behalf of the Company without the approval of the Members:

    (a)    make, execute, or deliver on behalf of the Company any guarantee, indemnity bond, surety bond, or accommodation paper or accommodation endorsement;

    (b)    sell all or substantially all of the Company's property;

    (c)    lease, as lessor or lessee, any property;

    (d)    borrow money and grant a lien upon any of the Company's property;

    (e)    make, execute, or deliver a general assignment for the benefit of creditors;

    (f)    authorize a merger or consolidation of the Company with or into another Entity;

    (g)    commence a bankruptcy or receivership proceeding with respect to the Company; or

    (h)    enter into contracts on behalf of the Company.

    **4.4**    <u>Compensation and Expense Reimbursement</u>.  The Manager is entitled to compensation for services rendered to the Company as approved by the Board of Mangers. Upon substantiation of the amount and purpose thereof, the Manager is entitled to reimbursement for expenses reasonably incurred in connection with the Company's activities.

    **4.5**    <u>Outside Activities</u>.  The Members may engage in business or investment activities outside of the Company, whether or not they are competitive with the Company.

    **4.6**    <u>Officers</u>.

    (a)    <u>Election.</u>  The Managers may from time to time designate officers for the Company, including, but not limited to a chairman, president, vice-president, secretary and treasurer.  The Managers may designate more than one of each type of officer other than chairman and president, and may appoint assistants to the officers other than chairman and president, who are to fulfill the duties of the officer when he is absent or disabled, and who will have such other duties and powers as the Managers may from time to time prescribe.  Any two or more offices, except the offices of president and vice president, may be held by the same person.

---

*Health Care Facilities Partners, LLC*
*Declaration of Operating Agreement*        3
*September 3, 2014*

(b)     <u>Removal.</u>  An officer may be removed, with or without cause, by the Managers without prejudice to the contract rights of such officer. The appointment of an officer for a given term does not create any contract rights. The Managers may fill a vacancy in any office occurring for any reason.

(c)     <u>Authority.</u>  The officers, as between themselves and the Company, have such authority and must perform such duties as is set forth below or otherwise specified from time to time by the Managers:

    (1)     <u>President.</u>  The president is the chief executive officer of the Company and has overall responsibility for the management of the business of the Company and the implementation of all instructions of the Managers. The president has the authority to execute any documents necessary for the day-to-day operations of the Company or approved by the Managers.

    (2)     <u>Secretary.</u>  The secretary is responsible for maintaining the records referred to in Section 3.1(a) - (c).

    (3)     <u>Treasurer.</u>  The treasurer is responsible for the preparation and maintenance of the financial records, the preparation and delivery of the tax returns and financial statements of the Company, the deposit of monies of the Company, and the payment of the Company's expenses.

(d)     <u>Initial Officers.</u> The Initial Officers of the Company shall be as follows until new Officers are designated by the Managers.

| | |
|---|---|
| G. Edward Alexander | President |
| John Prater | Treasurer |
| Frank Sossi | Secretary |

**4.7**     **<u>Liability of The Managers.</u>**  The Managers may be liable in damages to the Company or the Members for any action that the Manager takes or fails to take as a Manager only if it is proved, by clear and convincing evidence, in a court with jurisdiction, that his action or failure to act involved an act or omission undertaken with deliberate intent to cause injury to the Company or undertaken with reckless disregard for the best interests of the Company.

<u>Section 5</u><br><u>Membership</u>

**5.1**     **<u>Liability of the Members.</u>**  The Members are not (i) liable as such for the liabilities of the Company or (ii) obligated to restore losses of the Company. The failure of the Company to observe formalities or requirements relating to the exercise of its powers, or management of its business or affairs, under this Agreement or the Act is not grounds for imposing personal liability on the Members for liabilities of the Company.

---

**Sandra Kurt, Summit County Clerk of Courts**

**5.2     Ownership Schedule.**  The Managers must record on the Ownership Schedule attached all Capital Contributions, Interest transfers, admissions of new Members, and issuances and cancellations of Interests.  The Ownership Schedule must describe any services or property other than cash received as a Capital Contribution and state the agreed value thereof.

**5.3     Admission of a Transferee as a Member.**  A Member may transfer an Interest to another Person and the transferee will be admitted as a Member and the Managers will reflect the transfer on the Ownership Schedule.

**5.4     Issuance of Interests.**  The Company may issue an Interest to a Person who makes a Capital Contribution to the Company, and admit the Person as an additional Member by (i) specifying the amount of consideration to be paid by such Person and the number of Interests to be issued in exchange therefor, (ii) obtaining from such Person an executed subscription agreement, and (iii) recording on the Ownership Schedule the issuance of additional Interests.  The new Member will be admitted as of the date the Company accepts in writing the subscription agreement signed by the new Member or, if later, the date the Person pays the Company in full the amount of consideration specified in the subscription agreement.

**5.5     Related Party Transactions.**  No contract, action, or transaction is void or voidable because it is between or affects the Company and one or more of its officers, or because it is between or affects the Company, the Managers, or any other Person in which one or more of its officers are members, managers, directors, trustees, or officers or have a financial or personal interest, or because one or more of its interested officers participate in or vote at the meeting that authorized the contract, action, or transaction, if the material facts as to his or their relationship or interest as to the contract, action, or transaction are disclosed or are known to the Members, and the Members, in good faith reasonably justified by those facts, authorize the contract, action or transaction.

**5.6     Minute Book.**  The Managers may maintain a minute book recording the Managers' and the Members' actions.

**Section 6**
**Contributions, Allocations and Distributions**

**6.1     Capital Contributions.**  The Members must make an initial Capital Contribution in cash or property having a fair market value in the amount set forth on the Ownership Schedule.  The Members are not obligated to make additional Capital Contributions to the Company.

**6.2     Allocations.**  Profits and losses of the Company must be allocated to the Members and other Interest Holders in proportion to Interest allocation.

**6.3     Distributions.**  Distributions of cash or property by the Company may be made from time to time upon approval by the Members.  Any taxes paid by the Company on behalf of an Interest Holder will be treated as a distribution to the Interest Holder.

---

*Health Care Facilities Partners, LLC*
*Declaration of Operating Agreement*                    5
*September 3, 2014*

    **6.4**     <u>Interest Transfers.</u> If an Interest is transferred or issued to a new Member during a Fiscal Year, all allocations or distributions with respect to the transferred Interest on or before the date of transfer must be made to the transferor, and all allocations and distributions after the date of a transfer must be made to the transferee.

**<u>Section 7</u>**
**<u>Indemnification</u>**

    **7.1**     <u>Authorization.</u> The Company must indemnify a Person who has met the Prescribed Standard of Conduct and who was or is a party, or threatened to be made a party, to any Proceeding by reason of the fact that the Person is or was a Member, Manager, or officer of the Company, or who, while a Member, Manager, or officer of the Company, is or was serving at the request of the Company as a member, manager, officer, director, employee or agent of another Entity, against expenses (including attorneys' fees), judgments, settlements, penalties and fines (including excise taxes assessed with respect to employee benefit plans) actually and reasonably incurred in connection with such Proceeding.

    **7.2**     <u>Prescribed Standard of Conduct.</u> A Person seeking indemnification under this <u>Section 7</u> satisfies the Prescribed Standard of Conduct:

        (a)     If the Person acted in good faith and in a manner reasonably believed by the Person to have been in or not opposed to the best interests of the Company, and, with respect to any criminal Proceeding, the Person had no reasonable cause to believe such conduct was unlawful; or

        (b)     To the extent that the Person has been successful in the defense of any Proceeding on the merits or otherwise, or in the defense of any claim, issue or other matter therein.

    **7.3**     <u>Determinations as to Prescribed Standard of Conduct.</u> The determination of any Proceeding by judgment, order, settlement or conviction, or upon a plea of <u>nolo contendere</u> or its equivalent, will not, of itself, create a presumption that the Person seeking indemnification did not meet the Prescribed Standard of Conduct specified in <u>Section 7.2(a).</u> A determination as to whether the Prescribed Standard of Conduct has been met must be made by:

        (a)     The Members;

        (b)     A written opinion by independent legal counsel other than an attorney, or a firm having associated with it an attorney, who has performed services for the Company or the Person seeking indemnification in the past five (5) years, if so directed by the Members; or

        (c)     By the court in which the Proceeding referred to above is brought.

---

*Health Care Facilities Partners, LLC*
*Declaration of Operating Agreement*            6
*September 3, 2014*

7.4     <u>Advancement of Expenses.</u>  If approved by the Members, expenses incurred in connection with any Proceeding may be paid for or reimbursed by the Company in advance of the final disposition thereof upon receipt from the Person seeking indemnification of a written affirmation that he has met the Prescribed Standard of Conduct and will repay such amount if it is ultimately determined that the Person did not meet the Prescribed Standard of Conduct.

**Section 8**
**Miscellaneous Provisions**

8.1     <u>Rights of Creditors and Third Parties.</u>  This Agreement is not intended for the benefit of any creditor of the Company or any other Person.  Except and only to the extent provided by applicable statute, no creditor or third party has any rights under this Agreement or any agreement between the Company, the Managers and the Members with respect to any Capital Contribution or otherwise.

8.2     <u>Number and Gender.</u>  All provisions and references to gender and number is deemed to refer to masculine, feminine or neuter, singular or plural, as the identity of the Person or Persons may require.

8.3     <u>Binding Effect.</u>  Except as otherwise provided in this Agreement, every provision of this Agreement is binding upon and inures to the benefit of the Members, the Managers, and their respective heirs, legatees, legal representatives, successors and assigns.

8.4     <u>Ohio Law.</u>  The laws of the State of Ohio, excluding those relating to choice or conflicts of laws, govern the validity of this Agreement, and the construction of its terms.

**IN WITNESS WHEREOF,** this Agreement was executed as of the date first above written.

*[SIGNATURES APPEAR ON THE FOLLOWING PAGE]*

*Health Care Facilities Partners, LLC*
*Declaration of Operating Agreement*                    7
*September 3, 2014*

**MEMBERS AND MANAGERS:**

G. Edward Alexander (MGR)          Andrew C. Heaner (MGR)

John T. Prater (MGR)               Lanson J. Hyde III

John N. Childs                     Jack T. Diamond (MGR)

Heidi Heinle                       Frank T. Sossi (MGR)

Edward E. Bivins                   Jami Jackson

Lisa Hoffpauir

*Health Care Facilities Partners, LLC*
*Declaration of Operating Agreement*          8
*September 3, 2014*

*Sandra Kurt, Summit County Clerk of Courts*

MEMBERS AND MANAGERS:

_____          _____
G. Edward Alexander (MGR)          Andrew C. Heaner (MGR)


_____          _____
John T. Prater (MGR)               Lanson J. Hyde III


_____          _____
John N. Childs                     Jack T. Diamond (MGR)


_____          _____
Heidi Heinle                       Frank T. Sossi (MGR)


_____          _____
Edward E. Bivins                   Jami Jackson


_____
Lisa Hoffpauir

*Health Care Facilities Partners, LLC*
*Declaration of Operating Agreement*          8
*September 3, 2014*

Sandra Kurt, Summit County Clerk of Courts

MEMBERS AND MANAGERS:

_____
G. Edward Alexander (MGR)

_____
John T. Prater (MGR)

_____
John N. Childs

_____
Heidi Heinle

_____
Edward E. Bivins

_____
Lisa Hoffpauir

_____
Andrew C. Heaner (MGR)

_____
Lanson J. Hyde III

_____
Jack T. Diamond (MGR)

_____
Frank T. Sossi (MGR)

_____
Jami Jackson

*Health Care Facilities Partners, LLC*
*Declaration of Operating Agreement*
*September 3, 2014*

8

MEMBERS AND MANAGERS:

_____          _____
G. Edward Alexander (MGR)          Andrew C. Heaner (MGR)


_____          _____
John T. Prater (MGR)               Lanson J. Hyde III


_____          _____
John N. Childs                     Jack T. Diamond (MGR)


_____          _____
Heidi Heinle                       Frank T. Sossi (MGR)


_____          _____
Edward E. Bivins                   Jami Jackson


_____
Lisa Hoffpauir

_____
*Health Care Facilities Partners, LLC*              8
*Declaration of Operating Agreement*
*September 3, 2014*

*Sandra Kurt, Summit County Clerk of Courts*

MEMBERS AND MANAGERS:

_____          _____
G. Edward Alexander (MGR)                Andrew C. Heaner (MGR)


_____          _____
John T. Prater (MGR)                     Lanson J. Hyde III


_____          _____
John N. Childs                           Jack T. Diamond (MGR)


_____          _____
Heidi Heinle                             Frank T. Sossi (MGR)


_____          _____
Edward E. Bivins                         Jami Jackson


_____
Lisa Hoffpauir

_____
*Health Care Facilities Partners, LLC*
*Declaration of Operating Agreement*                    8
*September 3, 2014*

MEMBERS AND MANAGERS:


_____          _____
G. Edward Alexander (MGR)                 Andrew C. Heaner (MGR)



_____          _____
John T. Prater (MGR)                      Lanson J. Hyde III


_____          _____
John N. Childs                            Jack T. Diamond (MGR)



_____          _____
Heidi Heinle                              Frank T. Sossi (MGR)



_____          _____
Edward E. Bivins                          Jami Jackson



_____
Lisa Hoffpauir


_____
*Health Care Facilities Partners, LLC*
*Declaration of Operating Agreement*          8
*September 3, 2014*

SURGICAL DEVELOPMENT PARTNERS
OCTOBER 1, 2014
RESOLUTION BY WRITTEM CONSENT

MEMBERS:

_____          _____
G. Edward Alexander                       Andrew C. Heaner


_____          _____
John T. Prater                            Lanson J. Hyde III


_____          _____
John N. Childs                            Jack T. Diamond


_____          _____
Heidi Heinle                              Frank T. Sossi


_____          _____
Edward E. Bivins                          Jami Jackson


_____
Lisa Hoffpauir

*Surgical Development Partners, LLC*
*Member Resolution*
*October 1, 2014*

4

MEMBERS AND MANAGERS:

_____        _____
G. Edward Alexander (MGR)             Andrew C. Heaner (MGR)

_____        _____
John T. Prater (MGR)                  Lanson J. Hyde III

_____        _____
John N. Childs                        Jack T. Diamond (MGR)

_____        _____
Heidi Heinle                          Frank T. Sossi (MGR)

_____        _____
Edward E. Bivins                      Jami Jackson

_____
Lisa Hoffpauir

_____
*Health Care Facilities Partners, LLC*
*Declaration of Operating Agreement*          8
*September 3, 2014*

MEMBERS AND MANAGERS:

_____           _____
G. Edward Alexander (MGR)                  Andrew C. Heaner (MGR)


_____           _____
John T. Prater (MGR)                       Lanson J. Hyde III


_____           _____
John N. Childs                             Jack T. Diamond (MGR)


_____           _____
Heidi Heinle                               Frank T. Sossi (MGR)


_____           _____
Edward E. Bivins                           Jami Jackson


_____
Lisa Hoffpauir

_____
*Health Care Facilities Partners, LLC*
*Declaration of Operating Agreement*                8
*September 3, 2014*

MEMBERS AND MANAGERS:

_____
G. Edward Alexander (MGR)

_____
Andrew C. Heaner (MGR)

_____
John T. Prater (MGR)

_____
Lanson J. Hyde III

_____
John N. Childs

_____
Jack T. Diamond (MGR)

_____
Heidi Heinle

_____
Frank T. Sossi (MGR)

_____
Edward E. Bivins

_____
Jami Jackson

_____
Lisa Hoffpauir

_____

*Health Care Facilities Partners, LLC*
*Declaration of Operating Agreement*          8
*September 3, 2014*

### Appendix

The following capitalized words used in this Agreement, and the singular, plural, and other derivatives thereof have the meanings set forth below:

"Act" means Chapter 1705 of the Ohio Revised Code, as amended from time to time.

"Agreement" means this Declaration of Operating Agreement as amended from time to time.

"Articles" means the Articles of Organization of the Company as properly adopted and amended from time to time by the Members and filed with the Ohio Secretary of State pursuant to the Act.

"Capital Contribution" means any contribution of cash, property or services to the Company made by or on behalf of the Members pursuant to Section 6.

"Code" means the Internal Revenue Code of 1986, as amended from time to time, and any corresponding provisions of any succeeding law.

"Entity" means a limited liability company, corporation, business association, partnership, joint venture, trust, estate, employee benefit plan, or enterprise whether or not for profit.

"Interest" means a membership interest in the Company.

"Interest Holder" means a Person who owns an Interest in the Company.

"Member" means the Person who signed this Agreement as a member, or who is hereafter admitted as a member of the Company pursuant to this Agreement, for so long as the Person continues as a member in accordance with this Agreement.

"Ownership Schedule" means the schedule attached reflecting the Members' addresses, Capital Contributions, and Interest allocation.

"Person" means a natural person or an Entity.

"Prescribed Standard of Conduct" means the standard of conduct described in Section 7.2.

"Proceeding" means a threatened, pending, or completed action, suit or proceeding whether civil, criminal, administrative or investigative (excluding actions by or in the right of the Company).

"Section" all underlined references to a Section means a section of the Agreement.

---

*Health Care Facilities Partners, LLC*
*Declaration of Operating Agreement*          A-1
*September 3, 2014*

CV-2022-07-2215    CROCE, CHRISTINE    06/30/2022 08:57:28 AM    CMCO    Page 49 of 63

## Ownership Schedule

| MEMBER | Percentage Interest |
|---|---|
| G. Edward Alexander | 14.90% |
| John T. Prater | 12.07% |
| Lanson J. Hyde | 7.50% |
| Andrew C. Heaner | 17.08% |
| Edward Bivins | 3.63% |
| Jack T. Diamond | 21.94% |
| John C. Childs | 5.47% |
| Frank T. Sossi | 11.00% |
| Heidi Heinle | 3.91% |
| Jami Jackson | 1.25% |
| Lisa Hoffpauir | 1.25% |

---

*    All of the Capital Contribution consists of cash.

*Health care Facilities Partners, LLC*
*Declaration of Operating Agreement*
*September 3, 2014*

# HEALTH CARE FACILITIES PARTNERS
# ADMINISTRATION, LLC

## OPERATING AGREEMENT

### December 17, 2018



EXHIBIT

B

# HEALTH CARE FACILITIES PARTNERS ADMINSTRATION, LLC
## Operating Agreement

Dated as of December 17, 2018

### Table of Contents

Page

Section 1   Definitions..................................................................................................1

Section 2   Formation..................................................................................................1
   2.1   Organization ...........................................................................................1
   2.2   Agent ......................................................................................................1
   2.3   Principal office.........................................................................................1
   2.4   Purposes..................................................................................................2
   2.5   Title to Property ......................................................................................2
   2.6   Term .......................................................................................................2

Section 3   Financial and Tax Matters .........................................................................2
   3.1   Records to be Maintained........................................................................2
   3.2   Tax Returns.............................................................................................2
   3.3   Tax Matters Member...............................................................................2

Section 4   Management...............................................................................................3
   4.1   Appointment of Managers.......................................................................3
   4.2   Management ............................................................................................3
   4.3   Managers Authority.................................................................................3
   4.4   Compensation and Expense Reimbursement............................................3
   4.5   Time Commitment...................................................................................4
   4.6   Officers...................................................................................................4
   4.7   Liability of the Managers.........................................................................5

Section 5   Membership...............................................................................................5
   5.1   Liability of the Members..........................................................................5
   5.2   Ownership Schedule ................................................................................5
   5.3   Admission of a Transferee as a Member ..................................................5
   5.4   Issuance of Interests................................................................................5
   5.5   Related Party Transactions ......................................................................6
   5.6   Minute Book............................................................................................6

Section 6   Contributions, Allocations and Distributions ............................................6
   6.1   Capital Contributions ..............................................................................6

*Health Care Facilities Partners Administration, LLC*
*Operating Agreement*
*December 17, 2018*

**Sandra Kurt, Summit County Clerk of Courts**

6.2    Allocations .................................................................... 6
6.3    Distributions .................................................................. 6
6.4    Interest Transfers ........................................................... 6

Section 7    Indemnification ............................................................ 7
7.1    Authorization ................................................................. 7
7.2    Prescribed Standard of Conduct ....................................... 7
7.3    Determinations as to Prescribed Standard of Conduct ......... 7
7.4    Advancement of Expenses ............................................... 7

Section 8    Miscellaneous Provisions ............................................... 8
8.1    Rights of Creditors and Third Parties ................................. 8
8.2    Number and Gender ....................................................... 8
8.3    Binding Effect ............................................................... 8
8.4    Ohio Law ..................................................................... 8


Appendix                        Definitions

Ownership Schedule              Members' Names, Capital Contributions and Interest Ownership

Sandra Kurt, Summit County Clerk of Courts

## HEALTH CARE FACILITIES PARTNERS ADMINSTRATION, LLC

### Operating Agreement

This Operating Agreement is made effective as of December 17, 2018, by and between the Initial Members, the Members as listed on the Membership Schedule, and G. Edward Alexander, John Prater, Andrew Heaner, Jack Diamond and Frank Sossi as the Managers ("Managers") of Health Care Facilities Partners Administration, LLC, an Ohio limited liability company ("Company").

### Section 1
### Definitions

Unless the context indicates otherwise, (i) all of the capitalized words in this Agreement have the meanings set forth in the Appendix or other provision of this Agreement and (ii) all noncapitalized words that appear in this Agreement and are defined in the Act and used herein have the meanings set forth in the Act.

### Section 2
### Formation

**2.1   Organization.** The Members have caused the Company to be formed as an Ohio Limited Liability Company and have caused to be filed Articles and a certificate of acceptance of appointment by the resident agent of the Company with the Ohio Secretary of State.

**2.2   Agent.** The agent ("Agent") for service of process upon the Company is Frank T. Sossi, whose address in the State of Ohio is 10113 Glen Eagle Lane, Twinsburg, Ohio 44087. The Manager may, from time to time, change the agent, and if the agent ceases to act as such for any reason or moves from Ohio, the Managers must forthwith designate a replacement agent for this purpose. The Manager must forthwith file with the Ohio Secretary of State the documents required by the Act with respect to any change of the agent or the agent's address. If the Managers fail to designate a replacement agent, or if the Managers or the agent fail to file the appropriate notice of a change of agent or the agent's address, any Member may designate a replacement agent or file a notice of change of agent or the agent's address.

**2.3   Principal office.** The principal office of the Company will be located at 201 Seaboard Lane, Suite 125, Franklin, Tennessee 37067, or at any other location as the Managers determine from time to time.

*Health Care Facilities Partners Administration, LLC*
*Operating Agreement*
*December 17, 2018*

*Sandra Kurt, Summit County Clerk of Courts*

    **2.4**    **Purposes**. Except as provided by the Act, the Company may pursue any purpose or purposes for which individuals may lawfully associate themselves.

    **2.5**    **Title to Property**. Title to all property contributed to or otherwise acquired by the Company must be held in the name of the Company.

    **2.6**    **Term**. The term of the Company will be perpetual or until its Charter is dissolved with the Ohio Secretary of State according to the Provisions of the Act.

**Section 3**
**Financial and Tax Matters**

    **3.1**    **Records to be Maintained**. The Company must maintain the following records at its registered office or at such other location in the State of Ohio as determined by the Managers:

    (a)    A current list of the full name and last known business address of the Members and the Managers;

    (b)    A copy of the filed Articles and all amendments thereto, if any, together with executed copies of any powers of attorney pursuant to which any documents have been executed; and

    (c)    A copy of this Agreement and any amendments thereto then in effect.

    **3.2**    **Tax Returns**. The Managers shall cause to be prepared and filed all necessary federal and state income tax returns of the Company. Each Member shall furnish all pertinent information in its possession relating to the Company operations that is necessary to enable the Company's income tax returns to be prepared and filed. Neither the Company nor any Member may make an election for the Company to be excluded from the application of the provisions of subchapter K of chapter I of subtitle A of the Code or any similar provisions of applicable state law, and no provision of this Agreement shall be construed to sanction or approve such an election.

    **3.3**    **Tax Representative.** As used herein, "Tax Representative" shall have the same meaning as "Tax Representative" as used in the Code. Frank T. Sossi shall be the "Tax Representative" for the Company, as that term is defined in, and for all purposes of, Section 6231(a) of the Code and all applicable rules and regulations promulgated thereunder.

_Health Care Facilities Partners Administration, LLC_
_Operating Agreement_
_December 17, 2018_

**Sandra Kurt, Summit County Clerk of Courts**

## Section 4
## Management

**4.1    Appointment of Managers.** The Managers of the Company will be G. Edward Alexander, John Prater, Andrew Heaner, Jack Diamond and Frank Sossi. A Manager will cease being a manager of the Company upon his resignation, death, dissolution, adjudication of incompetency, or removal by the Members. The Members may appoint a new Person to succeed a Manager who ceases being a manager.

**4.2    Management.** Control of the day-to-day management of the Company is vested in the Managers. Except as otherwise provided in this Agreement or by the Act, Company business decisions may be made by the Manager acting on behalf of the Company. The Managers may resign or be removed as Manager by the Members, and will be automatically removed if the Manager dies, dissolves, or is adjudicated incompetent. If the Manager resigns or is removed, the Members may appoint a successor Manager.

**4.3    Manager Authority.** Without limiting the foregoing, the Managers have the authority to do any of the following on behalf of the Company without the approval of the Members:

(a)    make, execute, or deliver on behalf of the Company any guarantee, indemnity bond, surety bond, or accommodation paper or accommodation endorsement;

(b)    sell all or substantially all of the Company's property;

(c)    lease, as lessor or lessee, any property;

(d)    borrow money and grant a lien upon any of the Company's property;

(e)    make, execute, or deliver a general assignment for the benefit of creditors;

(f)    authorize a merger or consolidation of the Company with or into another Entity;

(g)    commence a bankruptcy or receivership proceeding with respect to the Company; or

(h)    enter into contracts on behalf of the Company.

**4.4    Compensation and Expense Reimbursement.** The Managers are entitled to compensation for services rendered to the Company as approved by the Board of Managers.

**Sandra Kurt, Summit County Clerk of Courts**

Upon substantiation of the amount and purpose thereof, the Managers are entitled to reimbursement for expenses reasonably incurred in connection with the Company's activities.

    **4.5**    <u>**Outside Activities**</u>. The Members may engage in business or investment activities outside of the Company, whether or not they are competitive with the Company.

    **4.6**    <u>**Officers**</u>.

(a)    <u>Election</u>. The Managers may from time to time designate officers for the Company, including, but not limited to a chairman, president, vice-president, secretary and treasurer. The Managers may designate more than one of each type of officer other than chairman and president and may appoint assistants to the officers other than chairman and president, who are to fulfill the duties of the officer when he is absent or disabled, and who will have such other duties and powers as the Managers may from time to time prescribe. Any two or more offices, except the offices of president and vice president, may be held by the same person.

(b)    <u>Removal</u>. An officer may be removed, with or without cause, by the Managers without prejudice to the contract rights of such officer. The appointment of an officer for a given term does not create any contract rights. The Managers may fill a vacancy in any office occurring for any reason.

(c)    <u>Authority</u>. The officers, as between themselves and the Company, have such authority and must perform such duties as is set forth below or otherwise specified from time to time by the Managers:

    (1)    <u>President</u>. The president is the chief executive officer of the Company and has overall responsibility for the management of the business of the Company and the implementation of all instructions of the Managers. The president has the authority to execute any documents necessary for the day-to-day operations of the Company or approved by the Managers.

    (2)    <u>Secretary</u>. The secretary is responsible for maintaining the records referred to in <u>Section 3.1(a)</u> - <u>(c)</u>.

    (3)    <u>Treasurer</u>. The treasurer is responsible for the preparation and maintenance of the financial records, the preparation and delivery of the tax returns and financial statements of the Company, the deposit of monies of the Company, and the payment of the Company's expenses.

---

*Health Care Facilities Partners Administration, LLC*
*Operating Agreement*
*December 17, 2018*

**Sandra Kurt, Summit County Clerk of Courts**

(d)    <u>Initial Officers.</u> The Initial Officers of the Company shall be as follows until new Officers are designated by the Managers.

| | |
|---|---|
| G. Edward Alexander | President |
| John Prater | Treasurer |
| Frank Sossi | Secretary |

**4.7    <u>Liability of The Managers</u>.** The Managers may be liable in damages to the Company or the Members for any action that the Managers take or fail to take as Managers only if it is proved, by clear and convincing evidence, in a court with jurisdiction, that his action or failure to act involved an act or omission undertaken with deliberate intent to cause injury to the Company or undertaken with reckless disregard for the best interests of the Company.

**<u>Section 5</u>
<u>Membership</u>**

**5.1    <u>Liability of the Members</u>.** The Members are not (i) liable as such for the liabilities of the Company or (ii) obligated to restore losses of the Company. The failure of the Company to observe formalities or requirements relating to the exercise of its powers, or management of its business or affairs, under this Agreement or the Act is not grounds for imposing personal liability on the Members for liabilities of the Company.

**5.2    <u>Ownership Schedule</u>.** The Managers must record on the Ownership Schedule attached all Capital Contributions, Interest transfers, admissions of new Members, and issuances and cancellations of Interests. The Ownership Schedule must describe any services or property other than cash received as a Capital Contribution and state the agreed value thereof.

**5.3    <u>Admission of a Transferee as a Member</u>.** A Member may transfer an Interest to another Person and the transferee will be admitted as a Member and the Managers will reflect the transfer on the Ownership Schedule.

**5.4    <u>Issuance of Interests</u>.** The Company may issue an Interest to a Person who makes a Capital Contribution to the Company, either in cash, as a Guaranty of Company obligations or as a Promissory Note to the Company as authorized by the Managers of the Company, and admit the Person as an additional Member by (i) specifying the amount of consideration to be paid by such Person and the number of Interests to be issued in exchange therefor, (ii) obtaining from such Person an executed subscription agreement, and (iii) recording on the Ownership Schedule the issuance of additional Interests. The Company shall have two (2) classes of Interests, (1) the Common Interests, which were the original 100 Interests of the Company issued at $10.00 per Interest and (2) the Preferred Interests of the Company which will have a 12% annual preference

**Sandra Kurt, Summit County Clerk of Courts**

return and a preference on redemption such that all Preferred Interests must be redeemed, with any accrued preference, on a last in - first out basis, before any Common Interests are redeemed, priced at $10.00 per Interest and treated pro-rata for purposes of any Company distributions. The Members will be admitted as of the date the Company accepts in writing the subscription agreement signed by the new Member or, if later, the date the Person pays the Company in full the amount of consideration specified in the subscription agreement.

     **5.5**    **Related Party Transactions**. No contract, action, or transaction is void or voidable because it is between or affects the Company and one or more of its officers, or because it is between or affects the Company, the Managers, or any other Person in which one or more of its officers are members, managers, directors, trustees, or officers or have a financial or personal interest, or because one or more of its interested officers participate in or vote at the meeting that authorized the contract, action, or transaction, if the material facts as to his or their relationship or interest as to the contract, action, or transaction are disclosed or are known to the Members, and the Members, in good faith reasonably justified by those facts, authorize the contract, action or transaction.

     **5.6**    **Minute Book**. The Managers may maintain a minute book recording the Managers' and the Members' actions.

## Section 6
## Contributions, Allocations and Distributions

     **6.1**    **Capital Contributions**. The Members must make an initial Capital Contribution in cash or property having a fair market value in the amount set forth on the Ownership Schedule. The Members are not obligated to make additional Capital Contributions to the Company.

     **6.2**    **Allocations**. Profits and losses of the Company must be allocated to the Members and other Interest Holders in proportion to their Interest allocation.

     **6.3**    **Distributions**. Distributions of cash or property by the Company may be made from time to time upon approval by the Members. Any taxes paid by the Company on behalf of an Interest Holder will be treated as a distribution to the Interest Holder.

     **6.4**    **Interest Transfers**. If an Interest is transferred or issued to a new Member during a Fiscal Year, all allocations or distributions with respect to the transferred Interest on or before the date of transfer must be made to the transferor, and all allocations and distributions after the date of a transfer must be made to the transferee.

*Health Care Facilities Partners Administration, LLC*
*Operating Agreement*
*December 17, 2018*

*Sandra Kurt, Summit County Clerk of Courts*

## Section 7
## Indemnification

**7.1    Authorization.** The Company must indemnify a Person who has met the Prescribed Standard of Conduct and who was or is a party, or threatened to be made a party, to any Proceeding by reason of the fact that the Person is or was a Member, Manager, or officer of the Company, or who, while a Member, Manager, or officer of the Company, is or was serving at the request of the Company as a member, manager, officer, director, employee or agent of another Entity, against expenses (including attorneys' fees), judgments, settlements, penalties and fines (including excise taxes assessed with respect to employee benefit plans) actually and reasonably incurred in connection with such Proceeding.

**7.2    Prescribed Standard of Conduct.** A Person seeking indemnification under this Section 7 satisfies the Prescribed Standard of Conduct:

(a)    If the Person acted in good faith and in a manner reasonably believed by the Person to have been in or not opposed to the best interests of the Company, and, with respect to any criminal Proceeding, the Person had no reasonable cause to believe such conduct was unlawful; or

(b)    To the extent that the Person has been successful in the defense of any Proceeding on the merits or otherwise, or in the defense of any claim, issue or other matter therein.

**7.3    Determinations as to Prescribed Standard of Conduct.** The determination of any Proceeding by judgment, order, settlement or conviction, or upon a plea of nolo contendere or its equivalent, will not, of itself, create a presumption that the Person seeking indemnification did not meet the Prescribed Standard of Conduct specified in Section 7.2(a). A determination as to whether the Prescribed Standard of Conduct has been met must be made by:

(a)    The Members;

(b)    A written opinion by independent legal counsel other than an attorney, or a firm having associated with it an attorney, who has performed services for the Company or the Person seeking indemnification in the past five (5) years, if so directed by the Members; or

(c)    By the court in which the Proceeding referred to above is brought.

**Sandra Kurt, Summit County Clerk of Courts**

**7.4** **Advancement of Expenses**. If approved by the Members, expenses incurred in connection with any Proceeding may be paid for or reimbursed by the Company in advance of the final disposition thereof upon receipt from the Person seeking indemnification of a written affirmation that he has met the Prescribed Standard of Conduct and will repay such amount if it is ultimately determined that the Person did not meet the Prescribed Standard of Conduct.

## Section 8
## Miscellaneous Provisions

**8.1** **Rights of Creditors and Third Parties**. This Agreement is not intended for the benefit of any creditor of the Company or any other Person. Except and only to the extent provided by applicable statute, no creditor or third party has any rights under this Agreement or any agreement between the Company, the Managers and the Members with respect to any Capital Contribution or otherwise.

**8.2** **Number and Gender**. All provisions and references to gender and number is deemed to refer to masculine, feminine or neuter, singular or plural, as the identity of the Person or Persons may require.

**8.3** **Binding Effect**. Except as otherwise provided in this Agreement, every provision of this Agreement is binding upon and inures to the benefit of the Members, the Managers, and their respective heirs, legatees, legal representatives, successors and assigns.

**8.4** **Ohio Law**. The laws of the State of Ohio, excluding those relating to, choice or conflicts of laws, govern the validity of this Agreement, and the construction of its terms.

**IN WITNESS WHEREOF,** this Agreement was executed as of the date first above written.

**INITIAL MEMBERS:**

_____
G. Edward Alexander, Initial Member

_____
Frank T. Sossi, Initial Member

*Health Care Facilities Partners Administration, LLC*
*Operating Agreement*
*December 17, 2018*

Page | 8

## <u>Appendix</u>

The following capitalized words used in this Agreement, and the singular, plural, and other derivatives thereof have the meanings set forth below:

"<u>Act</u>" means Chapter 1705 of the Ohio Revised Code, as amended from time to time.

"<u>Agreement</u>" means this Declaration of Operating Agreement as amended from time to time.

"<u>Articles</u>" means the Articles of Organization of the Company as properly adopted and amended from time to time by the Members and filed with the Ohio Secretary of State pursuant to the Act.

"<u>Capital Contribution</u>" means any contribution of cash, property or services to the Company made by or on behalf of the Members pursuant to <u>Section 6</u>.

"<u>Code</u>" means the Internal Revenue Code of 1986, as amended from time to time, and any corresponding provisions of any succeeding law.

"<u>Entity</u>" means a limited liability company, corporation, business association, partnership, joint venture, trust, estate, employee benefit plan, or enterprise whether or not for profit.

"<u>Initial Member</u>" means G. Edward Alexander and Frank T. Sossi.

"<u>Interest</u>" means a membership interest in the Company.

"<u>Interest Holder</u>" means a Person who owns an Interest in the Company.

"<u>Member</u>" means the Person who signed this Agreement as a member, or who is hereafter admitted as a member of the Company pursuant to this Agreement, for so long as the Person continues as a member in accordance with this Agreement.

"<u>Ownership Schedule</u>" means the schedule attached reflecting the Members' addresses, Capital Contributions, and Interest allocation.

"<u>Person</u>" means a natural person or an Entity.

"<u>Prescribed Standard of Conduct</u>" means the standard of conduct described in <u>Section 7.2</u>.

**Sandra Kurt, Summit County Clerk of Courts**

"Proceeding" means a threatened, pending, or completed action, suit or proceeding whether civil, criminal, administrative or investigative (excluding actions by or in the right of the Company).

"Section" all underlined references to a Section means a section of the Agreement.

**Sandra Kurt, Summit County Clerk of Courts**

## Ownership Schedule

| MEMBER | Allocation Percentage |
|---|---|
| | **100.00%** |
| Rene Alexander | 17.36% |
| G. Edward Alexander | 0.75% |
| John T. Prater | 14.67% |
| Andrew C. Heaner | 20.76% |
| Jack T. Diamond | 26.66% |
| John C. Childs | 2.46% |
| Frank T. Sossi | 13.37% |
| Heidi Heinle | 1.91% |
| Jami Jackson | 0.50% |
| Lisa Hoffpauir | 1.55% |

**Sandra Kurt, Summit County Clerk of Courts**

IN THE COURT OF COMMON PLEAS
SUMMIT COUNTY, OHIO

| | | |
|---|---|---|
| JACK DIAMOND | ) | Case No.: |
| | ) | |
| Plaintiff | ) | Judge |
| | ) | |
| vs. | ) | |
| | ) | |
| G. EDWARD ALEXANDER, JR., | ) | **INSTRUCTIONS FOR SERVICE** |
| et al. | ) | **UPON DEFENDANTS BY FEDERAL** |
| | ) | **EXPRESS** |
| Defendants | ) | |

TO THE CLERK:

Plaintiffs respectfully request the Court to make service of the Summons and Complaint

upon Defendant at the following address, by federal express:

G. Edward Alexander, Jr.            John T. Prater
2403B Elliot Ave.                   6354 Shadow Ridge Court
Nashville, TN 37204                 Brentwood, TN 37027

Frank Sossi                         HCFP Legacy Holdings, LLC
10113 Glen Eagle Lane               7110 Crossroads Blvd. Suite 200
Twinsburg, OH 44087                 Brentwood, TN 37027


                                    */s/Orville L. Reed, III*
                                    Orville L. Reed, III (#0023522)
                                    David W. Hilkert (#0023486)
                                    Hamilton DeSaussure, Jr. (#0023516)
                                    Stark & Knoll Co., L.P.A.
                                    3475 Ridgewood Rd.
                                    Akron, OH  44333
                                    Telephone:    (330) 572-0328
                                    Telefax:      (330) 572-0329
                                    Email:        oreed@stark-knoll.com
                                                  dhilkert@stark-knoll.com
                                                  hdesaussure@stark-knoll.com
                                    Attorneys for Plaintiff

844856v1



EXHIBIT
**1 - B**

# IN THE COURT OF COMMON PLEAS, SUMMIT COUNTY, OHIO

CASE NUMBER:   CV-2022-07-2215

JACK DIAMOND
181 Ely Road
Akron, OH, 44333

-VS-                                                                    **SUMMONS**

G. EDWARD ALEXANDER, JR
2403B Elliot Ave.
Nashville,   TN   37204

**TO the following:**

FRANK SOSSI
10113 Glen Eagle Lane
Twinsburg, OH   44087

You have been named as a defendant(s) in a complaint filed in the Summit County Court of Common Pleas, Summit County Courthouse, 205 S. High St., Akron, Ohio, 44308.

A copy of the COMPLAINT is attached hereto.   The name and address of the Plaintiff's attorney is:

ORVILLE L. REED, III
3475 Ridgewood Rd.
AKRON, OH   44333

**You are hereby summoned and required to serve upon the attorney listed above, or upon the party if they have no attorney of record, a copy of an answer to the COMPLAINT within twenty-eight (28) days after service of this summon on you, exclusive of the day of service.   Your answer must be filed with the Court within three days after the service of a copy of the answer on the attorney, or upon the party, if there is no attorney of record.**

**If you fail to appear and defend, judgment may be rendered against you for the relief demanded in the COMPLAINT.**

Sandra Kurt
Summit County Clerk of Courts

July 1, 2022



# IN THE COURT OF COMMON PLEAS, SUMMIT COUNTY, OHIO

CASE NUMBER:   CV-2022-07-2215

JACK DIAMOND
181 Ely Road
Akron, OH, 44333

-VS-                                                                                    **SUMMONS**

G. EDWARD ALEXANDER, JR
2403B Elliot Ave.
Nashville,  TN   37204


**TO the following:**

G. EDWARD ALEXANDER, JR
2403B Elliot Ave.
Nashville, TN   37204

You have been named as a defendant(s) in a complaint filed in the Summit County Court of Common
Pleas, Summit County Courthouse, 205 S. High St., Akron, Ohio, 44308.

A copy of the COMPLAINT is attached hereto.   The name and address of the Plaintiff's attorney is:

ORVILLE L. REED, III
3475 Ridgewood Rd.
AKRON, OH   44333


**You are hereby summoned and required to serve upon the attorney listed above, or upon the
party if they have no attorney of record, a copy of an answer to the COMPLAINT within
twenty-eight (28) days after service of this summon on you, exclusive of the day of service.   Your
answer must be filed with the Court within three days after the service of a copy of the answer on
the attorney, or upon the party, if there is no attorney of record.**

**If you fail to appear and defend, judgment may be rendered against you for the relief demanded in
the COMPLAINT.**


Sandra Kurt
Summit County Clerk of Courts


July 1, 2022



# IN THE COURT OF COMMON PLEAS, SUMMIT COUNTY, OHIO

CASE NUMBER:   CV-2022-07-2215

JACK DIAMOND
181 Ely Road
Akron, OH, 44333

-VS-                                                                          **SUMMONS**

G. EDWARD ALEXANDER, JR
2403B Elliot Ave.
Nashville,   TN   37204

**TO the following:**

HCFP LEGACY HOLDINGS, LLC
7110 Crossroads Blvd., Suite 200
Brentwood, TN   37027

You have been named as a defendant(s) in a complaint filed in the Summit County Court of Common Pleas, Summit County Courthouse, 205 S. High St., Akron, Ohio, 44308.

A copy of the COMPLAINT is attached hereto.   The name and address of the Plaintiff's attorney is:

ORVILLE L. REED, III
3475 Ridgewood Rd.
AKRON, OH   44333

**You are hereby summoned and required to serve upon the attorney listed above, or upon the party if they have no attorney of record, a copy of an answer to the COMPLAINT within twenty-eight (28) days after service of this summon on you, exclusive of the day of service.   Your answer must be filed with the Court within three days after the service of a copy of the answer on the attorney, or upon the party, if there is no attorney of record.**

**If you fail to appear and defend, judgment may be rendered against you for the relief demanded in the COMPLAINT.**

Sandra Kurt
Summit County Clerk of Courts

July 1, 2022



# IN THE COURT OF COMMON PLEAS, SUMMIT COUNTY, OHIO

CASE NUMBER:   CV-2022-07-2215

JACK DIAMOND
181 Ely Road
Akron, OH, 44333

-VS-                                                                **SUMMONS**

G. EDWARD ALEXANDER, JR
2403B Elliot Ave.
Nashville,   TN   37204

**TO the following:**

JOHN T. PRATER
6354 Shadow Ridge Court
Brentwood, TN   37027

You have been named as a defendant(s) in a complaint filed in the Summit County Court of Common Pleas, Summit County Courthouse, 205 S. High St., Akron, Ohio, 44308.

A copy of the COMPLAINT is attached hereto.   The name and address of the Plaintiff's attorney is:

ORVILLE L. REED, III
3475 Ridgewood Rd.
AKRON, OH   44333

**You are hereby summoned and required to serve upon the attorney listed above, or upon the party if they have no attorney of record, a copy of an answer to the COMPLAINT within twenty-eight (28) days after service of this summon on you, exclusive of the day of service.   Your answer must be filed with the Court within three days after the service of a copy of the answer on the attorney, or upon the party, if there is no attorney of record.**

**If you fail to appear and defend, judgment may be rendered against you for the relief demanded in the COMPLAINT.**

Sandra Kurt
Summit County Clerk of Courts

July 1, 2022



**FedEx**

July 08, 2022

Dear Customer,

The following is the proof-of-delivery for tracking number: 424087379609

---

**Delivery Information:**

| | | | |
|---|---|---|---|
| Status: | Delivered | Delivered To: | Receptionist/Front Desk |
| Signed for by: | J.JOY | Delivery Location: | 7110 CROSSROADS BLVD |
| Service type: | FedEx Express Saver | | |
| Special Handling: | Deliver Weekday;<br>Residential Delivery;<br>Direct Signature Required | | BRENTWOOD, TN, 37027 |
| | | Delivery date: | Jul 7, 2022 15:38 |

**Shipping Information:**

| | | | |
|---|---|---|---|
| Tracking number: | 424087379609 | Ship Date: | Jul 1, 2022 |
| | | Weight: | 1.0 LB/0.45 KG |

Recipient:
HCFP LEGACY HOLDINGS, LLC,
7110 CROSSROADS BLVD., SUITE 200
BRENTWOOD, TN, US, 37027

Shipper:
CIVIL DIVISION, SUMMIT COUNTY/COURT CLERK
205 S HIGH ST
AKRON, OH, US, 44308

| | |
|---|---|
| **Reference** | CV2022072215_3106390 |
| **Department Number** | Legal Division |





**EXHIBIT**

**1 - G**

Thank you for choosing FedEx

FedEx

July 08, 2022

Dear Customer,

The following is the proof-of-delivery for tracking number: 424087379610

---

**Delivery Information:**

| | | | |
|---|---|---|---|
| Status: | Delivered | Delivered To: | Residence |
| Signed for by: | J.PRATER | Delivery Location: | 6354 SHADOW RIDGE CT |
| Service type: | FedEx Express Saver | | |
| Special Handling: | Deliver Weekday;<br>Residential Delivery;<br>Direct Signature Required | | BRENTWOOD, TN, 37027 |
| | | Delivery date: | Jul 7, 2022 12:03 |

**Shipping Information:**

| | | | |
|---|---|---|---|
| Tracking number: | 424087379610 | Ship Date: | Jul 1, 2022 |
| | | Weight: | 1.0 LB/0.45 KG |

Recipient:
PRATER, JOHN T.,
6354 SHADOW RIDGE COURT
BRENTWOOD, TN, US, 37027

Shipper:
CIVIL DIVISION, SUMMIT COUNTY/COURT CLERK
205 S HIGH ST
AKRON, OH, US, 44308

| | |
|---|---|
| Reference | CV2022072215_3106391 |
| Department Number | Legal Division |





EXHIBIT
1 - H

Thank you for choosing FedEx

SANDRA KURT

2022 JUL 26  PM 3: 37

SUMMIT COUNTY
CLERK OF COURTS



EXHIBIT

1 - I

| 07/26/2022 | DIAMOND, JACK | NOTIFICATION OF FAILURE TO OBTAIN SERVICE FRANK SOSSI | No Image |





SANDRA KURT

2022 JUL 28 PM 1:49

SUMMIT COUNTY
CLERK OF COURTS

ORIGIN ID:CAKA
CIVIL DIVISION (330) 643-4107
SUMMIT COUNTY/COURT CLERK
205 S HIGH ST
AKRON, OH 44308
UNITED STATES US

SHIP DATE: 01JUL22
ACTWGT: 1.00 LB
CAD: 494282/FXRS

TO  ALEXANDER, JR, G. EDWARD

BILL SEND

2403B ELLIOT AVE.

NASHVILLE TN 37204

(330) 643-4107
INV:
PO                    REF: CV2022072215_3106369

DEPT: LEGAL DIVISION

TRK# 4240 8737 9594
0201

THU - 07 JU

EXPRESS

ST RNCA                                    D

TN-US

**FedEx**
Express

**EXCEPTION/S**
Customer's package/shipment

☐ Address is correct/recipient no longer at this a
☐ Inconsistent/incomplete recipient address.
☐ Need apartment or suite number.
☐ Recipient moved and left no forwarding address o
☐ Not in/business closed/not authorized to leave s
  ☐ Signature ☐ 1st Attempt ☐ 2nd Attempt
☐ Signature required; please contact sender for di
☐ Holiday  closed.
☐ Delivery not attempted (reason).
☐ Delivery refused (reason).
☐ Future delivery; reattempt on (date).
☐ Recipient requested hold for pickup.
☐ Collect on delivery; payment not available. Reatten
  (date).
☐ Bill recipient shipment; payment not available. Rea
  on (date).
☐ Other:
  Date:                    Employee #

**IN-STATION USE ONLY**
☐ Package Researched  Date                Initial:
Comments:                    No Recip

UPDATE ALL INFORMATION AND POD AT DEL
REMOVE LABEL BEFORE DELIVERY.

EXHIBIT
1 - K

| 07/28/2022 | DIAMOND, JACK | NOTIFICATION OF FAILURE TO OBTAIN SERVICE G. EDWARD ALEXANDER | No Image |



COURT OF COMMON PLEAS
SUMMIT COUNTY, OHIO

| | | |
|---|---|---|
| JACK DIAMOND, | ) | CASE NO. CV-2022-07-2215 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTINE CROCE |
| | ) | |
| v. | ) | |
| | ) | DEFENDANTS' STIPULATED |
| G. EDWARD ALEXANDER, JR., *et al.*, | ) | MOTION FOR EXTENSION OF TIME |
| | ) | TO RESPOND TO COMPLAINT |
| Defendants. | ) | |

Pursuant to Ohio Civil Procedure Rule 6(B) and Summit County Common Pleas Local

Rule 7, Defendants G. Edward Alexander, Jr., John T. Prater, Frank Sossi, and HCFP Legacy

Holdings, LLC (together, "Defendants") hereby move this Court, with the stipulated agreement of

Plaintiff's counsel, for a single uniform extension of time through September 30, 2022, for each

of Defendants to move, plead, or otherwise respond to the Complaint filed by Plaintiff Jack

Diamond in this action.

For grounds, Defendants state that two of Defendants have been served and two of

Defendants, both of whom are out of state, have not been served. Rather than await further service

efforts on the unserved out-of-state Defendants, Defendants counsel have proposed to Plaintiff's

counsel that Defendants' counsel would accept service on the unserved out-of-state Defendants as

part of an agreement to set a single uniform response date of September 30, 2022. That proposal

would eliminate the need for further service efforts and would preclude the outcome of various



staggered response dates for the various separate Defendants. Upon consultation, Plaintiff's counsel has agreed with that proposal.

This requested extension is Defendants' first extension request. The extension is not being sought for mere delay or any other improper purpose, and no prejudice will result to any party from the extension that Defendants hereby seek.

Plaintiff's counsel has indicated their stipulated agreement to this Motion and the extension that it requests.

For these reasons and on these bases, Defendants respectfully request that the Court enter an order extending through September 30, 2022, the time for each of Defendants to respond to the Complaint in this action.

Respectfully submitted,

/s/ Steven J. Miller
STEVEN J. MILLER (0014293)
SteveMiller@BuckleyKing.com
DAVID A. KUNSELMAN (0073980)
Kunselman@BuckleyKing.com
BUCKLEY KING LPA
600 Superior Avenue East
1400 Fifth Third Center
Cleveland, OH 44114
(216) 363-1400
(216) 579-1020 (fax)

JOHN F. HILL (0039675)
John.Hill@lewisbrisbois.com
LEWIS BRISBOIS BISGAARD & SMITH, LLP
1 GojoPlaza, Suite 310
Akron, OH  44311
(330) 272-0044
(330) 272-0019 (fax)

BARTON W. COX
Texas State Bar No. 24065087
(*pro hac vice* motion to be filed)

beau.cox@nortonrosefulbright.com
VERONICA PORTILLO KENDRICK
(*pro hac vice* motion to be filed)
Texas State Bar No. 24055609
veronica.kendrick@nortonrosefulbright.com
JACQUELINE G. BAKER
(*pro hac vice* motion to be filed)
Texas State Bar No. 24109609
jackie.baker@nortonrosefulbright.com
NORTON ROSE FULBRIGHT US LLP
2200 Ross Avenue, Suite 2800
Dallas, Texas  75201
Telephone:      (214) 855-8000
Facsimile:      (214) 855-8200

*Attorneys for Defendants*

Case: 5:22-cv-01689-CAB  Doc #: 1-1  Filed: 09/20/22  78 of 143.  PageID #: 101

<u>CERTIFICATE OF SERVICE</u>

    I hereby certify that the foregoing was filed electronically on August 4, 2022. Notice of this filing will be sent to all parties and their counsel by operation of the Court's electronic filing system.

                                     */s/ Steven J. M iller*
                                     STEVEN J. MILLER (0014293)

10042382.2

COURT OF COMMON PLEAS
SUMMIT COUNTY, OHIO

| | | |
|---|---|---|
| JACK DIAMOND, | ) | CASE NO. CV-2022-07-2215 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTINE CROCE |
| | ) | |
| v. | ) | |
| | ) | DEFENDANTS' NOTICE OF |
| G. EDWARD ALEXANDER, JR., *et al.*, | ) | APPEARANCE OF COUNSEL |
| | ) | |
| Defendants. | ) | |

Defendants G. Edward Alexander, Jr., John T. Prater, Frank Sossi, and HCFP Legacy Holdings, LLC hereby give notice to this Court and to Plaintiff's counsel that in this action each of them will be represented by the following counsel, who hereby request that they receive all correspondence and copies of all court filings, orders, and other entries:

Steven J. Miller
David A. Kunselman
BUCKLEY KING LPA
600 Superior Avenue East
1400 Fifth Third Center
Cleveland, OH 44114

John F. Hill
LEWIS BRISBOIS BISGAARD & SMITH, LLP
1 Gojo Plaza, Suite 310
Akron, OH 44311



EXHIBIT
1 - N

Barton W. Cox
Veronica Portillo Kendrick
Jacqueline G. Baker
NORTON ROSE FULBRIGHT US LLP
2200 Ross Avenue, Suite 2800
Dallas, Texas  75201

Respectfully submitted,

*/s/ Steven J. Miller*
STEVEN J. MILLER (0014293)
SteveMiller@BuckleyKing.com
DAVID A. KUNSELMAN (0073980)
Kunselman@BuckleyKing.com
BUCKLEY KING LPA
600 Superior Avenue East
1400 Fifth Third Center
Cleveland, OH 44114
(216) 363-1400
(216) 579-1020 (fax)

JOHN F. HILL (0039675)
John.Hill@lewisbrisbois.com
LEWIS BRISBOIS BISGAARD & SMITH, LLP
1 Gojo Plaza, Suite 310
Akron, OH  44311
(330) 272-0044
(330) 272-0019 (fax)

BARTON W. COX
Texas State Bar No. 24065087
(*pro hac vice* motion to be filed)
beau.cox@nortonrosefulbright.com
VERONICA PORTILLO KENDRICK
(*pro hac vice* motion to be filed)
Texas State Bar No. 24055609
veronica.kendrick@nortonrosefulbright.com
JACQUELINE G. BAKER
(*pro hac vice* motion to be filed)
Texas State Bar No. 24109609
jackie.baker@nortonrosefulbright.com
NORTON ROSE FULBRIGHT US LLP
2200 Ross Avenue, Suite 2800
Dallas, Texas  75201
Telephone:     (214) 855-8000
Facsimile:     (214) 855-8200
*Attorneys for Defendants*

<u>CERTIFICATE OF SERVICE</u>

     I hereby certify that the foregoing was filed electronically on August 4, 2022. Notice of this filing will be sent to all parties and their counsel by operation of the Court's electronic filing system.

                              */s/ Steven J. Miller*
                              STEVEN J. MILLER (0014293)

10042849.1

IN THE COURT OF COMMON PLEAS
SUMMIT COUNTY, OHIO

| | | |
|---|---|---|
| JACK DIAMOND, | ) | CASE NO. CV-2022-07-2215 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTINE CROCE |
| | ) | |
| v. | ) | |
| | ) | ORDER ON DEFENDANTS' |
| G. EDWARD ALEXANDER, JR., *et al.*, | ) | STIPULATED MOTION FOR |
| | ) | EXTENSION OF TIME TO RESPOND |
| Defendants. | ) | TO COMPLAINT |

This matter came before the Court on the stipulated Motion of Defendants G. Edward Alexander, Jr., John T. Prater, Frank Sossi, and HCFP Legacy Holdings, LLC (together, "Defendants") for an extension of time through September 30, 2022, for each of them to move, plead, or otherwise respond to the Complaint filed by Plaintiff Jack Diamond in this action.

Having considered the information set forth in Defendants' Motion, including the stipulated agreement of Plaintiff's counsel, the Court finds that the requested extension is warranted by good grounds.

Accordingly, Defendants' Motion is hereby granted. Each of Defendants shall have through September 30, 2022, to move, plead, or otherwise respond to the Complaint in this action.

IT IS SO ORDERED.

_____
JUDGE CHRISTINE CROCE

EXHIBIT
1 - O

IN THE COURT OF COMMON PLEAS
SUMMIT COUNTY, OHIO

JACK DIAMOND )  Case No.:  CV-2022-07-2215
181 Ely Road )
Akron, OH 44333 )  Judge CHRISTINE CROCE
 )
 )
          Plaintiff )
 )
 )
vs. )
 )
 )
G. EDWARD ALEXANDER, JR. )
2403B Elliot Ave. )
Nashville, TN 37204 )
 )  **AMENDED COMPLAINT: An Action**
 )  **for**
JOHN T. PRATER )      • **Conversion,**
6354 Shadow Ridge Court )      • **Breach of Fiduciary Duty**
Brentwood, TN 37027 )      • **Tortious Interference**
 )      • **Civil Theft and**
FRANK SOSSI )      • **Compensatory and Punitive**
10113 Glen Eagle Lane )        **Damages**
Twinsburg, OH 44087 )
 )
and )
 )
 )  **JURY DEMAND ENDORSED**
HCFP LEGACY HOLDINGS, LLC )  **HEREON**
7110 Crossroads Blvd. Suite 200 )
Brentwood, TN 37027 )
 )
 )
          Defendants )
 )
 )
 )

For his Amended Complaint, pursuant to Ohio Civil Rule 15 (A) and as of right, Plaintiff

Jack Diamond states as follows:

1.    Plaintiff Jack Diamond is a minority member of the various Ohio limited liability

companies that are managed by, among others, Defendants G. Edward Alexander, Jr, John T.

Prater and Frank Sossi, and which companies are purportedly members of Defendant HCFP



Legacy Holdings, LLC. Jack Diamond brings this Action to preserve his interest and investment in certain Ohio limited liability companies, to prevent Defendants from diluting or otherwise diminishing his interests and investments in certain Ohio limited liability companies, to prevent Defendants from destroying his rights as a minority member in Ohio limited liability companies, to seek compensatory and punitive damages for breaches of fiduciary duties owed to him and for tortious interference, and other relief.

### The Parties

2.    Jack Diamond ("Diamond") is a resident of Akron, Summit County, Ohio. He was and is a member of a variety of Ohio limited liability companies in which the individual Defendants serve as managers including, HCFP of Celebration Enterprises, LLC; HCFP of Celebration Investments, LLC; HCFP of Norwalk Enterprises, LLC; HCFP of Norwalk Investments, LLC; HCFP of Sandusky Enterprises, LLC; HCFP of Sandusky Investments, LLC; HCFP of Sidney Enterprises, LLC; HCFP of Sidney Investments, LLC; HCFP of Dayton Enterprises, LLC; and Surgical Development Partners PA, LLC which are collectively referred to herein as the "HCFP Entities".

3.    G. Edward Alexander Jr. ("Alexander") is a resident of Tennessee. Alexander is member and manager of a variety of HCFP Entities and holds the title of President and CEO in a variety of HCFP Entities.

4.    John T. Prater ("Prater") is a resident of Tennessee. Prater is member and manager of a variety of HCFP Entities and holds the title of Vice President in a variety of HCFP Entities.

5.    Frank Sossi is, upon information and belief, a citizen of either Tennessee or Twinsburg, Ohio[1]. Sossi is member and manager of a variety of HCFP Entities.

---

[1] The domicile for Frank Sossi is unclear. He was an attorney in the Akron firm of Brennan Manna Diamond until March 2020. While has an address in Tennessee, he also has an address in Twinsburg, Ohio. Sossi's company, TFS

2

6.      Alexander, Prater, and Sossi are managers of the HCFP Entities. They are collectively referred to herein as "the Manager Defendants."

7.      HCFP Legacy Holdings, LLC ("Legacy") is a limited liability company organized in Delaware in December, 2021. Upon information and belief, Legacy has its principal place of business in Tennessee. Legacy was purportedly formed for the purpose of conducting business in Ohio by possessing directly or indirectly through subsidiaries rights, title and interest in Management Services Agreements ("MSA's) for a variety of Ohio medical facilities including in Cleveland (Brainard MSA), Dayton (SW Ohio MSA), Sidney (Wilson MSA), Sandusky (ESSC Management) and Norwalk (TSCNCO Management).

### Personal Jurisdiction and Venue

8.      Legacy is a Delaware limited liability company with a membership which purportedly includes a variety of separate limited liability companies formed and organized in Ohio, including the HCFP Entities, which companies manage or transact business in connection with the operation of medical facilities in Ohio (such as in Cleveland, Sandusky, Dayton, Norwalk and Sidney, Ohio). Legacy purportedly has an interest in, uses, or possesses real property in this state. Legacy has purportedly transacted business in Ohio and entered into contracts with the Ohio HCFP Entities for the purpose of an assignment of assets and has tortiously interfered with Diamond's contracts with Ohio HCFP Entities doing business in Ohio. Thus, Legacy is subject to the personal jurisdiction of this Court.

9.      Alexander, Prater, and perhaps Sossi are citizens of other states but are subject to personal jurisdiction in Ohio because they have transacted significant business in Ohio, entered

---

Corporate Services, Inc. is the registered agent in Ohio for various members of HCFP Legacy Holdings, LLC and certain Defendants herein with an address at Sossi's residence on Glen Eagle Drive in Twinsburg, Ohio.

into contracts concerning the HCFP Entities and engaged in tortious conduct in Ohio or elsewhere that caused injury in Ohio. Specifically:

- Alexander, Prater and Sossi, are investors in the Ohio HCFP Entities which provide management and investment services for Ohio medical facilities in Norwalk, Ohio, Sandusky, Ohio, Sidney, Ohio, Dayton, Ohio, Medina, Ohio, Cleveland, Ohio and elsewhere.

- The Manager Defendants entered into contracts in Ohio including but not limited to the operating agreements for the HCFP Entities with Diamond for the conduct of business with Diamond through entities formed under the laws of Ohio for the investment in and operation of the Ohio medical facilities, which contracts contain provisions that, "[t]he laws of the State of Ohio, excluding those relating to choice or conflict of laws, govern the validity of this Agreement, and the construction of its terms."

- The Manager Defendants are officers or managers of the Ohio HCFP Entities in which they have invested with Diamond and have travelled numerous times to Ohio for purposes of the business transacted in this state.

- The Manager Defendants transact business in Ohio by, among other things, acting as managers of Ohio limited liability companies that manage or operate Ohio medical facilities in Cleveland, Dayton, Sidney, Sandusky and Norwalk and which have interests in real property in those locations.

- The Manager Defendants are managers of the HCFP Entities that are residents and citizens of Summit County, Ohio.

Sandra Kurt, Summit County Clerk of Courts

- Sossi operates an Ohio corporation known as TFS Consulting, Inc. based at a residential home located at 10113 Glen Eagle Lane, Twinsburg, Ohio which serves as registered agent for some of the members of Legacy.

- The Manager Defendants have caused tortious injury in this state by their acts or omissions in this state, including but not limited to interfering with Diamond's sale and transfer of his membership interests to a third- party buyer as set forth in Counts Three of this Amended Complaint.

- As set forth herein in Counts One, Two and Three, the Manager Defendants have caused tortious injury in this state by their acts or omissions outside of this state while regularly soliciting business and otherwise engaging in persistent course of conduct in this state.

- As set forth herein in Counts One, Two and Three, the Manager Defendants have caused tortious injury in this state to Diamond by their acts outside of this state committed with the purpose of injuring Diamond while the Manager Defendants might reasonably have expected that Diamond and others in this state would be injured.

Accordingly, Alexander, Prater, and Sossi are subject to personal jurisdiction in Ohio under Ohio Revised Code §2307.382 and Rule 4.3 of the Ohio Rules of Civil Procedure.

    10.    Venue is appropriate in Summit County, Ohio for reasons including the following:

        a)    Legacy, Alexander, Prater, and Sossi (if he is not a resident of Twinsburg) are subject to jurisdiction in Ohio pursuant to Rule 4.3 of the Ohio Rules of Civil Procedure for transacting business in this state and causing tortious injury in this state as set forth in Paragraphs 8 and 9 above, thus, venue is appropriate in Summit County by virtue of Diamond's status as a Summit

5

County resident pursuant to Rule 3(C)(7) of the Ohio Rules of Civil Procedure;

b)    Sossi maintains a residence in Twinsburg, Summit County, Ohio and operates consulting services for HCFP entities from that location and thus venue is appropriate pursuant to Rule 3(C)(1) of the Ohio Rules of Civil Procedure.

**Transaction History and Background**

11.    Over several years, Diamond, Alexander, Prater and Sossi have worked together to create health care facility businesses and ambulatory surgery centers in Ohio and elsewhere. Initially, they collaborated to form an Ohio limited liability company known as Surgical Development Partners, LLC ("SDP") as an investment and management vehicle for various health care facilities.  SDP provided medical facilities management services.  As the management business grew, Alexander, Prater and Sossi determined that the structure for the provision of management services and investment opportunities needed to be revised.

12.    Diamond, Alexander, Prater, Sossi and other investors formed an Ohio entity known as Health Care Facilities Partners, LLC ("HCFP") in or around October 2014 and agreed by contract as to the terms of the operations of HCFP as set forth in the HCFP Operating Agreement.  Diamond, Alexander, Prater and Sossi were designated managers of HCFP.    The 2014 Operating Agreement of HCFP is attached hereto as Ex. A.

13.    From its inception, HCFP continued to develop medical facilities and to provide management services and to serve as an investment vehicle for the members to invest in the new projects as they came on line.

6

14.     By 2018, HCFP had developed multiple medical facilities that were being managed in Ohio and into which the members of HCFP had invested. In order to provide more structure for the business "empire", the Managers of HCFP formed an Ohio entity known as Health Care Facilities Partners Administration, LLC ("HCFPA") on December 17, 2018. Diamond was a member and a manager of HCFPA along with Alexander, Prater, and Sossi.

15.     HCFPA was controlled by the terms of an Operating Agreement dated December 17, 2018. The 2018 Operating Agreement for HCFPA identified Diamond as a "manager" and "member". The terms of the HCFPA Operating Agreement mirrored the terms of the HCFP Operating Agreement. The 2018 HCFPA Operating Agreement is attached hereto as Ex. B.

16.     By late 2019, there were 10 members of HCFPA, which included Diamond, Alexander, Prater, and Sossi, among others. For each new project that was developed, the members were permitted but not required to invest their then current pro-rata share ownership interest into such project.

17.     HCFPA became the central administrative entity serving each of the enterprise projects. Each project was typically organized into an enterprise limited liability company and an investment limited liability company (for example, HCFP of Sandusky Enterprises, LLC and HCFP of Sandusky, LLC were two Ohio organized limited liability companies organized in connection with a surgery center in Sandusky, Ohio). Diamond and other members of HCFP and HCFPA made investments in the projects as they came on line.

18.     By 2020, Diamond was a minority member and a manager of HCFP and HCFPA as well as some of the HCFP Entities. Diamond held the single largest percentage share among the members with his overall percentage of ownership at around 26% as of October, 2020.

7

**Diamond Sells His Interests Pursuant to the
Operating Agreements but the Manager Defendants
Refused to Recognize the Sale and Acted to Interfere with the Sale**

19.    In 2019, Diamond communicated to the other managers, principally Alexander and Prater, that he was interested in reducing his debt obligations in HCFP, HCFPA and the related project LLC's.  Diamond was told that the other members expressed no interest in purchasing Diamond's membership units.

20.    In 2020, Diamond began to explore alternatives for the HCFP/HCFPA enterprise and specifically to bring in a partner to infuse new capital and to unburden the members from debt obligations that they had undertaken.

21.    Diamond explored a relationship with a company known as Value Health, LLC (hereinafter, "Value Health").  Value Health had expressed an interest in purchasing some or all Diamond's interest in the HCFP/HCFPA enterprise.  However, the Manager Defendants apparently were working with a different entity which proposed to maintain the Manager Defendants as paid officers or employees in a joint venture in connection with a restructuring of the HCFP/HCFPA enterprise.

22.    During the portion of 2020 when the discussions between the Manager Defendants were ongoing with the third party, the Manager Defendants shared no details with Diamond of the joint venture being developed by them.

23.    On October 29, 2020, and as amended on November 4, 2020, Diamond sold his interests in the HCFP/HCFPA enterprise to Value Health.

24.    Diamond's sale of his interest to Value Health was undertaken in accordance with the terms of the 2014 and 2018 Operating Agreements for the HCFP/HCFPA entities which he

managed or was a member.  Specifically, paragraph 5.3 of those Operating Agreements provided

that a member may transfer an interest with no restrictions, stating:

> Admission of a Transferee as Member.  A Member may transfer an interest to
> another Person and the transferee will be admitted as a Member and the Managers
> will reflect the transfer on the Ownership schedule.

25.    Despite Diamond's sale and transfer of his interest to Value Health, the Manager

Defendants refused to admit Value Health as a Member in the entities, refused to reflect Value

Health on the Ownership schedule of the entities, and refused to recognize Diamond's sale of his

interest.

26.    Instead, the Manager Defendants did two things in particular:

   a. On November 13, 2020, they purported to amend to the operating agreements
      of HCFP, HCFPA and the related HCFP Entities to prohibit the transfer of a
      membership interest without prior approval and to remove Diamond as
      manager, among other things; and

   b. In May, 2021, they authorized the filing of a suit against Diamond and Value
      Health in federal court in an action captioned *Health Care Facilities Partners,
      LLC, et al. v. Diamond*, Case No. 5:21-cv-01070-SL.  This suit remains
      pending and involves claims of breach of fiduciary duty, trade secret
      misappropriation; breach of contract and legal malpractice, among other
      things.  The Manager Defendants and Legacy are not parties to that suit.

27.    The 2014 and 2018 Operating Agreements of HCFP, HCFPA (as well as similar

provision in the operating agreements for the other HCFP Entities) did not provide for amendments

to the respective operating agreements.  Consequently, in order to undertake any amendment to

those operating agreements, all the members had to consent and approve any amendment.

9

28.    The November 13, 2020 amendments to the Operating Agreements of HCFP, HCFPA and the HCFP Entities were not unanimously agreed to by the members.  To this day, all the members of those entities have not consented to or approved the 2020 amendments to the Operating Agreements.

### Scheme of Purported Transfer and Diminution of Diamond's Interest

29.    By December 31, 2021, without the knowledge and input of Diamond, the Manager Defendants formed Legacy as a new entity. On January 6, 2022, Diamond was advised for the first time that the Manager Defendants claimed to have undertaken a restructuring of the HCFP Entities.

30.    On January 6 2022, Sossi sent Diamond a "Member Notice" relating to the subject of the HCFP Entities which announced to Diamond, for the first time, the creation of Legacy and its purported impact on the HCFP Entities.  The Member Notice purported to list proportionate and now "indirect" member interests and showed that Diamond's interest had been reduced from approximately 26% to 16.225%.   The purported change and reduction in Diamond's interest was the result of Defendant Managers' wrongful and deceitful conduct including but not limited to the fraudulent assertion that they could require Diamond, involuntarily, to become a member or owner of Legacy.

31.    On January 17, 2022, Diamond was provided an "Agreement and Plan of Reorganization" by which each of the HCFP Entities purported to, "irrevocably assign, transfer, and convey all of its right, title, and interest in and to its Contributed Interests or MSA, as applicable, to Legacy Holdings...."  The "Contributed Interests" so assigned, transferred and conveyed is defined to include, collectively, each HCFP Entities' Enterprise and Investment Interests.  Diamond was advised on January 17, 2022 that, even though he never signed any

10

agreement as to the operations of Legacy or consented to the creation of Legacy, he was a member – indeed an "Initial Member" – of Legacy and that all of his interests in the HCFP Entities were purportedly folded into Legacy.

32.    The "Agreement and Plan of Reorganization" was improper and a violation of existing operating agreements of the HCFP Entities as well as fiduciary duties of the Manager Defendants

33.    On January 17, 2022, Sossi sent a Notice with the subject line, "Member Notice – HCFP Legacy Update and Funding."   In the email Notice Sossi also attached the following documents: 1) an Amended and Restated Limited Liability Company Agreement dated December 31, 2021 for Legacy; 2) a Written Consent Resolution of the Managers of Legacy for a Funding Notice to the Legacy Members; 3) Offering and Subscription Agreement for members of Legacy due by January 31, 2022; and 4) a chart with a "Master Reorganization" plan.

34.    Sossi's January 17, 2022 email in essence announced an unlawful cash call made on Diamond not permitted under the HCFP Entities' operating agreements.  Further it purported to reflect Diamond's ownership interest as changed from 16.255% as indicated in the January 6, 2022 email to 17.1404% with no explanation.

35.    Even though Diamond had never seen any operating agreement for Legacy before January 17, 2022 and had had no discussions with any manager or member of HCFP/HCFPA enterprise entities about Legacy, the "Amended and Restated Limited Liability Agreement" of Legacy (the "Legacy Operating Agreement") identifies Diamond as a member or owner of Legacy, yet Diamond has never signed any agreement as to Legacy and has agreed to none of the provisions of the Legacy Operating Agreement.  In fact, Diamond is not a member of Legacy and has refused

11

to sign an "Offering and Subscription" agreement (the "Subscription Agreement") sent to him by the Manager Defendants on January 17, 2022 suggesting that he is.

36.     Diamond has never agreed to purported restructuring of the HCFP Entities and the creation of Legacy let alone the terms of any operating agreement for Legacy.

37.     In addition to paying the amounts demanded in the "cash call", demand on Diamond was also made for him to sign the Subscription Agreement.  The Subscription Agreement in essence would have Diamond acknowledge the legitimacy of the so-called "restructuring" of the HCFP Entities and his purported membership in Legacy.

38.     On January 26, 2022, Diamond proffered the amount under protest and refused to sign the Subscription Agreement.

39.     On January 28, 2022, Sossi sent Diamond an "HCFP-Reply" indicating that Diamond's payment would not satisfy the "cash call" without Diamond's agreement to the terms of the Subscription Agreement. Sossi demanded a signed subscription agreement and provided that if not returned by February 15, 2022, the cash call would be considered unpaid and consequently Diamond would be declared in default.  Diamond refused to sign as he was not a member of Legacy and would take no action to imply such a membership. On February 26, 2022, Sossi sent an email advising Diamond that, "we have diluted your interest…."

40.     On August 8, 2022, Defendant Sossi sent a second cash call email to Diamond with the subject, "HCFP LEGACY Update and Funding" (the "Second Cash Call").  In this update notice, Diamond was informed that Legacy was making demand for the Second Cash Call.  Once again, Diamond was advised that he had to sign a subscription agreement which would accept and ratify Defendants' conduct and accept his membership in Legacy and that failing to do so will result in a further dilution of his interest.

12

41.    In the notice of the Second Cash Call, Sossi advised Diamond that the purpose of the Second Cash Call was specifically to pay for attorneys hired by Defendants to litigate against Diamond:

> In addition, the Company will also incur significant legal fees in defending against a lawsuit brought by Jack Diamond.  In order to help us through the continued costs of keeping our projects on-line, litigating with Jack Diamond, and working on new potential revenue opportunities, Legacy is requesting an additional capital contribution in the amount of $500,000 (the "Cash Call").

42.    The scheme of the "Agreement and Plan of Reorganization" concocted by the Manager Defendants is designed to bring about the elimination of Diamond's interest in the HCFP Entities in which he was the single largest investor.  The value of Diamond's interests in the HCFP Entities is being targeted for elimination in what is a transparent scheme to oppress the rights of a minority member of the HCFP Entities by transferring their key assets into an entity in which Diamond is not a member and governed by rules to which he never agreed and to which Diamond did not and would not agree.

## COUNT ONE
## CONVERSION
### (Alexander, Prater, and Sossi)

43.    Diamond restates the allegations of paragraphs 1 through 42 as if fully rewritten herein.

44.    Diamond had and has a property interest in investments in the HCFP Entities.  Over the years, Diamond has voluntarily complied with certain requests for payments made by the HCFP Entities to the members.  As recently as the fall of 2020, Diamond responded to a cash call made the Managing Defendants to support HCFP/HCFPA.

45.    Defendant Managers have acted tortiously to convert and misappropriate Diamond's property interest in the HCFP Entities by, among other things, 1) purporting to amend

13

the operating agreements of the HCFP Entities in November 2020 in an effort to derail Diamond's sale of his interest in the HCFP Entities to Value Health, and 2) subsequently purporting to transfer the key assets of the same HCFP Entities into Legacy to eliminate the value of Diamond's interest.

46.    The scheme devised by the Manager Defendants to convert the property and ownership interests of Diamond included the Manager Defendants' illegitimate "cash calls" which purport to compel Diamond to declare and acknowledge membership in Legacy and to turn money over to Defendants at their whim. Acting as managers of the HCFP Entities, the Manager Defendants restructured and effectively raided and converted the value of the HCFP Entities by transferring their valuable assets and unlawfully declaring that Diamond was a member of Legacy.

47.    As a result of this conduct, Diamond has been damaged in an amount to be proven at trial to compensate Diamond for the conversion scheme implemented against him. The conduct of the Manager Defendants was deliberate, malicious, and intended to cause harm to Diamond and entitles Diamond to an award of punitive damages.

### COUNT TWO
### BREACH OF FIDUCIARY DUTY
### (Alexander, Prater, and Sossi)

48.    Diamond restates the allegations of paragraphs 1 through 47 as if fully rewritten herein.

49.    The Manager Defendants are managers of the HCFP Entities in which Diamond has a membership interest. In addition, at least Alexander, Prater and Sossi were and are officers of those entities.  The Manager Defendants, moreover, have functional control of the HCFP Entities and exercise that control.  As such, the Manager Defendants each owe a fiduciary duty to Diamond and every other member of those entities.

14

50.      Alexander, Prater, and Sossi have breached their respective fiduciary duties owed to Diamond.  They have engaged in conduct specifically designed to harm, oppress, and impair the minority members rights possessed by Diamond in violation of the applicable operating agreements of the HCFP Entities as well as the provisions of then applicable Chapter 1705 of the Ohio Revised Code.  In addition, the Manager Defendants have utilized their majority control of the HCFP Entities to their advantage without providing Diamond, a minority member, to benefit without any legitimate business purpose.  This conduct includes, without limitation:

a.  The unlawful and illegitimate attempt to amend the Operating Agreements of HCFP, HCFPA and other HCFP Entities to change the terms of the contracts as to member and manager rights;

b.  The unlawful and illegitimate attempt to restructure the HCFP/HCFPA enterprise into Legacy so as to diminish Diamond's investment in those entities in which he has invested;

c.  Transferring and depleting the assets of the HCFP Entities so as to eliminate the economic value of the HCFP Entities;

d.  Interfering with Diamond's clear right under the Operating Agreements of the HCFP Entities in effect in October, 2020 to transfer his ownership interest in the various entities and refusing to acknowledge the transfer of his interest and failing to reflect Value Health on the Ownership schedule in violation of the applicable operating agreements;

e.  Failing and refusing to provide information to Diamond as to the discussions they were having with a third-party joint venture prospect and to advise

15

Diamond of discussions and plans to restructure the HCFP/HCFPA enterprises when that plan was being developed in early 2021;

f.  Acting and making decisions as to the structure of the HCFP Entities for their own personal financial interests which acts and decisions are not in the best interest of the HCFP Entities; and

g.  Undertaking conduct related to the HCFP Entities which are motivated by their own personal agenda of spite and ill will directed to Diamond to cause Diamond harm in a manner which is not in the best interests of the HCFP Entities.

51.      As a result of the breach of fiduciary duties owed by the Manager Defendants to Diamond, Diamond has been damaged in the amount to be proven at trial to compensate Diamond for the fiduciary duties owed to him.  The conduct of the Manager Defendants was deliberate, malicious, and intended to cause harm to Diamond and entitles Diamond to an award of punitive damages.

## COUNT THREE
## TORTIOUS INTERFERENCE WITH CONTRACT
### (Alexander, Prater, and Sossi)

52.      Diamond restates the allegations of paragraphs 1 through 51 as if fully rewritten herein.

53.      A contract for the sale of Diamond's interest in HCFP/HCFPA enterprise to ValueHealth existed as of October 29, 2020, and by amendment on November 4, 2020.  The contract in existence on that date and as amended is not attached to hereto in light of its designation as confidential but is in the possession of Defendants.  By virtue of this contract, Diamond sold his interest in HCFP Entities and was indemnified as to certain debts obligations.

16

54.    Prior to purporting to amend its Operating Agreement in November 2020, the Manager Defendants were aware of the contract between Diamond and ValueHealth and otherwise were aware that Diamond had sold his interests to ValueHealth.

55.    The Manager Defendants purported to amend the applicable Operating Agreements in HCFP, HCFPA and related entities following Diamond's sale to ValueHealth and threatened legal action against ValueHealth – and ultimately authorized the filing of the lawsuit brought by the HCFP Entities - so as to knowingly and intentionally procure and induce the breach of the Value Health's purchase contract with Diamond.  As a result of the conduct of the Manager Defendants, ValueHealth did in fact breach its contract with Diamond and purported to rescind its contract with Diamond.

56.    The conduct of Alexander, Prater, and Sossi was without justification, undertaken in bad faith, and was malicious and a willful violation of the terms of the applicable operating agreements of HCFP and HCFPA and related entities as they existed at the time Diamond sold his interest to ValueHealth and which operating agreements are legally still in force and effect.

57.    As a result of the conduct of Alexander, Prater, and Sossi, Diamond has been damaged in the amount of the value of the purchase price agreed to by ValueHealth for Diamond's interest in Health Care Facilities Partners and the HCFP Entities and in the amount that would compensate Diamond for the value of the contractual indemnification by Value Health of his personal responsibility for the debts and obligations of HCFP and HCFPA and related entities. The conduct of the Manager Defendants was deliberate, malicious, and intended to cause harm to Diamond and entitles Diamond to an award of punitive damages.

Sandra Kurt, Summit County Clerk of Courts

## COUNT FOUR
## CIVIL CONSPIRACY
### (Alexander, Prater, and Sossi)

58.     Diamond restates the allegations of paragraphs 1 through 57 as if fully rewritten herein.

59.     The Managing Defendants among and between themselves and in concert with Legacy have caused tortious injury to Diamond as described in Counts One through Three by, and among other things, interfering with Diamond's sale of his interest to Value Health; and authorizing the transfer of the HCFP Entities in an attempt to change the contractual terms under which Diamond had agreed to invest and participate in the Ohio HCFP Entities.

60.     Each of the Managing Defendants is jointly and severally liable for the damages proven by Diamond at the trial on Counts One, Two and Three.

## COUNT FIVE
## CONVERSION
### (Legacy)

61.     Diamond restates the allegations set forth in paragraphs 1 through 60 as if fully rewritten herein.

62.     Legacy has informed Diamond that his interests in assets of the HCFP Entities have, without prior notice to Diamond, been assigned and transferred to Legacy. Diamond has objected to the purported restructuring of the HCFP Entities into Legacy and the terms of the Legacy operating agreement.

63.     Legacy's conduct in conspiring with the Manager Defendants knowingly to receive assets of the HCFP Entities so as to eliminate the economic value of Diamond's interest in the HCFP Entities without his consent and in violation of the contractual rights he has as a member of

18

certain HCFP Entities constitutes a conversion of the value of Diamond's ownership interest in the HCFP Entities.

64.    As a result of the Legacy's conduct, Diamond has been damaged and continues to be damaged in an amount to be proven at trial to compensate him for his loss.

## COUNT SIX
## CIVIL THEFT
## OHIO REVISED CODE §2307.60
### (All Defendants)

65.    Diamond restates the allegations set forth in paragraphs 1 through 64 as if fully rewritten herein.

66.    Pursuant to §2307.60, Diamond is entitled to recover full damages in a civil action as a result of a criminal act.  Ohio Revised Code §2307.61 establishes liability for any person who willfully damages the owner's property or who commits a theft offense as defined in §2913.01 of the Revised Code.

67.    Defendants' have engaged in a theft offense as defined on §2913.01 and constitutes a violation of §2307.61 of the Revised Code.

68.    As a direct and proximate result of Defendants' conduct, Diamond has been damaged.  Pursuant to §2307.61 of the Revised Code, Diamond is entitled to an amount of three times the value of the property that was taken from him.  The conduct of the Manager Defendants was deliberate, malicious, and intended to cause harm to Diamond and entitles Diamond to an award of punitive damages.

WHEREFORE, as to Count One, Two, and Three, Plaintiff Jack Diamond prays for judgment against G. Edward Alexander, John Prater and Frank Sossi jointly and severally in an amount in excess of $25,000 and requests punitive damages against them, together with costs, interest, attorneys' fees and other relief as deemed fair and equitable by this Court.

WHEREFORE, as to Count Five, Plaintiff Jack Diamond prays for judgment against HCFP Legacy Holdings, LCC in an amount in excess of $25,000.

WHEREFORE, as to Count Six, Plaintiff Jack Diamond prays for judgment against all Defendants in the amount of three times the value of his property, as to be proven at trial, and punitive damages and attorneys' fees and other relief as deemed fair and equitable by this Court.

/s/Orville L. Reed, III
Orville L. Reed, III (#0023522)
David W. Hilkert (#0023486)
Hamilton DeSaussure, Jr. (#0023516)
Stark & Knoll Co., L.P.A.
3475 Ridgewood Rd.
Akron, OH 44333
Telephone:      (330) 572-0328
Telefax:         (330) 572-0329
Email:           oreed@stark-knoll.com
                 dhilkert@stark-knoll.com
                 hdesaussure@stark-knoll.com

Attorneys for Plaintiff

## JURY DEMAND

Plaintiff Jack Diamond hereby requests a trial by jury on all issues so triable in this action.

/s/Orville L. Reed, III
Orville L. Reed, III (#0023522)

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was filed electronically on the 22nd day of August, 2022. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties. Parties may access this filing through the Court's system.

/s/Orville L. Reed, III
Orville L. Reed, III (#0023522)

847824v1

20

# HEALTH CARE FACILITIES PARTNERS, LLC

## OPERATING AGREEMENT

### October 1, 2014



# HEALTH CARE FACILITIES PARTNERS, LLC

### Declaration of
### Operating Agreement

Dated as of October 1, 2014

### Table of Contents

Page

Section 1    Definitions.................................................................................1

Section 2    Formation..................................................................................1
2.1    Organization.....................................................................1
2.2    Agent.................................................................................1
2.3    Principal office..................................................................1
2.4    Purposes............................................................................1
2.5    Title to Property...............................................................1
2.6    Term..................................................................................2

Section 3    Financial and Tax Matters ......................................................2
3.1    Records to be Maintained.................................................2
3.2    Tax Returns.......................................................................2
3.3    Tax Matters Member.........................................................2

Section 4    Management..............................................................................2
4.1    Appointment of Managers.................................................2
4.2    Management.......................................................................2
4.3    Managers Authority..........................................................3
4.4    Compensation and Expense Reimbursement.....................3
4.5    Time Commitment.............................................................3
4.6    Officers..............................................................................3
4.7    Liability of the Managers..................................................4

Section 5    Membership..............................................................................4
5.1    Liability of the Members...................................................4
5.2    Ownership Schedule..........................................................5
5.3    Admission of a Transferee as a Member ..........................5
5.4    Issuance of Interests.........................................................5
5.5    Related Party Transactions...............................................5
5.6    Minute Book......................................................................5

Section 6    Contributions, Allocations and Distributions .........................5
6.1    Capital Contributions........................................................5

6.2    Allocations ..................................................................5
6.3    Distributions ..............................................................5
6.4    Interest Transfers .......................................................6

Section 7    Indemnification ....................................................6
7.1    Authorization .............................................................6
7.2    Prescribed Standard of Conduct ...................................6
7.3    Determinations as to Prescribed Standard of Conduct ......6
7.4    Advancement of Expenses ...........................................7

Section 8    Miscellaneous Provisions........................................7
8.1    Rights of Creditors and Third Parties ...........................7
8.2    Number and Gender ...................................................7
8.3    Binding Effect............................................................7
8.4    Ohio Law ..................................................................7

Appendix                Definitions

Ownership Schedule     Members' Names, Capital Contributions and Interest Ownership

---

*Health Care Facilities Partners, LLC*
*Declaration of Operating Agreement*            iii
*September 3, 2014*

# HEALTH CARE FACILITIES PARTNERS, LLC
## Declaration of
## Operating Agreement

This Declaration of Operating Agreement is made effective as of October 1, 2014, by and between the Members as listed on the Membership Schedule, and G. Edward Alexander, John Prater, Andrew Heaner, Jack Diamond and Frank Sossi as the Managers  ("Managers") of Health Care Facilities Partners, LLC, an Ohio limited liability company ("Company").

### Section 1
### Definitions

Unless the context indicates otherwise, (i) all of the capitalized words in this Agreement have the meanings set forth in the Appendix or other provision of this Agreement and (ii) all noncapitalized words that appear in this Agreement and are defined in the Act and used herein have the meanings set forth in the Act.

### Section 2
### Formation

2.1    **Organization.**  The Members have caused the Company to be formed as an Ohio Limited Liability Company and have caused to be filed Articles and a certificate of acceptance of appointment by the resident agent of the Company with the Ohio Secretary of State.

2.2    **Agent.**  The agent ("Agent") for service of process upon the Company is Frank T. Sossi, whose address in the State of Ohio is 10113 Glen Eagle Lane, Twinsburg, Ohio 44087. The Manager may, from time to time, change the agent, and if the agent ceases to act as such for any reason or moves from Ohio, the Manager must forthwith designate a replacement agent for this purpose.  The Manager must forthwith file with the Ohio Secretary of State the documents required by the Act with respect to any change of the agent or the agent's address.  If the Manager fails to designate a replacement agent, or if the Manager or the agent fail to file the appropriate notice of a change of agent or the agent's address, any Member may designate a replacement agent or file a notice of change of agent or the agent's address.

2.3    **Principal office.**  The principal office of the Company will be located at 201 Seaboard Lane, Suite 100, Franklin, Tennessee 37067, or at any other location as the Manager determines from time to time.

2.4    **Purposes.**  Except as provided by the Act, the Company may pursue any purpose or purposes for which individuals may lawfully associate themselves.

2.5    **Title to Property.**  Title to all property contributed to or otherwise acquired by the Company must be held in the name of the Company.

*Health Care Facilities Partners, LLC*
*Declaration of Operating Agreement*
*October 1, 2014*

2.6    **Term.**  The term of the Company will be perpetual or until its Charter is dissolved with the Ohio Secretary of State according to the Provisions of the Act.

### Section 3
### Financial and Tax Matters

3.1    **Records to be Maintained.**  The Company must maintain the following records at its registered office or at such other location in the State of Ohio as determined by the Manager:

(a)    A current list of the full name and last known business address of the Members and the Manager;

(b)    A copy of the filed Articles and all amendments thereto, if any, together with executed copies of any powers of attorney pursuant to which any documents have been executed; and

(c)    A copy of this Agreement and any amendments thereto then in effect.

3.2    **Tax Returns.**  The Manager shall cause to be prepared and filed all necessary federal and state income tax returns of the Company.  Each Member shall furnish all pertinent information in its possession relating to the Company operations that is necessary to enable the Company's income tax returns to be prepared and filed.  Neither the Company nor any Member may make an election for the Company to be excluded from the application of the provisions of subchapter K of chapter I of subtitle A of the Code or any similar provisions of applicable state law, and no provision of this Agreement shall be construed to sanction or approve such an election.

3.3    **Tax Matters Member.**  As used herein, "Tax Matters Member" shall have the same meaning as "Tax Matters Partner" as used in the Code. Frank T. Sossi shall be the "Tax Matters Member" for the Company, as that term is defined in, and for all purposes of, Section 6231(a) of the Code and all applicable rules and regulations promulgated thereunder.

### Section 4
### Management

4.1    **Appointment of Manager.**  The Managers of the Company will be G. Edward Alexander, John Prater, Andrew Heaner, Jack Diamond and Frank Sossi.  A Manager will cease being a manager of the Company upon his resignation, death, dissolution, adjudication of incompetency, or removal by the Members.  The Members may appoint a new Person to succeed a Manager who ceases being a manager.

4.2    **Management.**  Control of the day-to-day management of the Company is vested in the Manager.  Except as otherwise provided in this Agreement or by the Act, Company business decisions may be made by the Manager acting on behalf of the Company.  The Manager may resign or be removed as Manager by the Members, and will be automatically removed if the

---

*Health Care Facilities Partners, LLC*
*Declaration of Operating Agreement*                    2
*September 3, 2014*

Manager dies, dissolves, or is adjudicated incompetent.  If the Manager resigns or is removed, the Members may appoint a successor Manager.

    **4.3**   <u>**Manager Authority**</u>.  Without limiting the foregoing, the Manager has the authority to do any of the following on behalf of the Company without the approval of the Members:

    (a)   make, execute, or deliver on behalf of the Company any guarantee, indemnity bond, surety bond, or accommodation paper or accommodation endorsement;

    (b)   sell all or substantially all of the Company's property;

    (c)   lease, as lessor or lessee, any property;

    (d)   borrow money and grant a lien upon any of the Company's property;

    (e)   make, execute, or deliver a general assignment for the benefit of creditors;

    (f)   authorize a merger or consolidation of the Company with or into another Entity;

    (g)   commence a bankruptcy or receivership proceeding with respect to the Company; or

    (h)   enter into contracts on behalf of the Company.

    **4.4**   <u>**Compensation and Expense Reimbursement**</u>.  The Manager is entitled to compensation for services rendered to the Company as approved by the Board of Mangers.  Upon substantiation of the amount and purpose thereof, the Manager is entitled to reimbursement for expenses reasonably incurred in connection with the Company's activities.

    **4.5**   <u>**Outside Activities**</u>.  The Members may engage in business or investment activities outside of the Company, whether or not they are competitive with the Company.

    **4.6**   <u>**Officers**</u>.

    (a)   <u>Election</u>.  The Managers may from time to time designate officers for the Company, including, but not limited to a chairman, president, vice-president, secretary and treasurer.  The Managers may designate more than one of each type of officer other than chairman and president, and may appoint assistants to the officers other than chairman and president, who are to fulfill the duties of the officer when he is absent or disabled, and who will have such other duties and powers as the Managers may from time to time prescribe.  Any two or more offices, except the offices of president and vice president, may be held by the same person.

---

*Health Care Facilities Partners, LLC*
*Declaration of Operating Agreement*      3
*September 3, 2014*

(b)    Removal.  An officer may be removed, with or without cause, by the Managers without prejudice to the contract rights of such officer.  The appointment of an officer for a given term does not create any contract rights.  The Managers may fill a vacancy in any office occurring for any reason.

(c)    Authority.  The officers, as between themselves and the Company, have such authority and must perform such duties as is set forth below or otherwise specified from time to time by the Managers:

    (1)    President.  The president is the chief executive officer of the Company and has overall responsibility for the management of the business of the Company and the implementation of all instructions of the Managers.  The president has the authority to execute any documents necessary for the day-to-day operations of the Company or approved by the Managers.

    (2)    Secretary.  The secretary is responsible for maintaining the records referred to in Section 3.1(a) - (c).

    (3)    Treasurer.  The treasurer is responsible for the preparation and maintenance of the financial records, the preparation and delivery of the tax returns and financial statements of the Company, the deposit of monies of the Company, and the payment of the Company's expenses.

(d)    Initial Officers.  The Initial Officers of the Company shall be as follows until new Officers are designated by the Managers.

| | |
|---|---|
| G. Edward Alexander | President |
| John Prater | Treasurer |
| Frank Sossi | Secretary |

**4.7    Liability of The Managers.**  The Managers may be liable in damages to the Company or the Members for any action that the Manager takes or fails to take as a Manager only if it is proved, by clear and convincing evidence, in a court with jurisdiction, that his action or failure to act involved an act or omission undertaken with deliberate intent to cause injury to the Company or undertaken with reckless disregard for the best interests of the Company.

**Section 5**
**Membership**

**5.1    Liability of the Members.**  The Members are not (i) liable as such for the liabilities of the Company or (ii) obligated to restore losses of the Company.  The failure of the Company to observe formalities or requirements relating to the exercise of its powers, or management of its business or affairs, under this Agreement or the Act is not grounds for imposing personal liability on the Members for liabilities of the Company.

---

*Health Care Facilities Partners, LLC*
*Declaration of Operating Agreement*    4
*September 3, 2014*

**5.2** <u>Ownership Schedule.</u> The Managers must record on the Ownership Schedule attached all Capital Contributions, Interest transfers, admissions of new Members, and issuances and cancellations of Interests. The Ownership Schedule must describe any services or property other than cash received as a Capital Contribution and state the agreed value thereof.

**5.3** <u>Admission of a Transferee as a Member.</u> A Member may transfer an Interest to another Person and the transferee will be admitted as a Member and the Managers will reflect the transfer on the Ownership Schedule.

**5.4** <u>Issuance of Interests.</u> The Company may issue an Interest to a Person who makes a Capital Contribution to the Company, and admit the Person as an additional Member by (i) specifying the amount of consideration to be paid by such Person and the number of Interests to be issued in exchange therefor, (ii) obtaining from such Person an executed subscription agreement, and (iii) recording on the Ownership Schedule the issuance of additional Interests. The new Member will be admitted as of the date the Company accepts in writing the subscription agreement signed by the new Member or, if later, the date the Person pays the Company in full the amount of consideration specified in the subscription agreement.

**5.5** <u>Related Party Transactions.</u> No contract, action, or transaction is void or voidable because it is between or affects the Company and one or more of its officers, or because it is between or affects the Company, the Managers, or any other Person in which one or more of its officers are members, managers, directors, trustees, or officers or have a financial or personal interest, or because one or more of its interested officers participate in or vote at the meeting that authorized the contract, action, or transaction, if the material facts as to his or their relationship or interest as to the contract, action, or transaction are disclosed or are known to the Members, and the Members, in good faith reasonably justified by those facts, authorize the contract, action or transaction.

**5.6** <u>Minute Book.</u> The Managers may maintain a minute book recording the Managers' and the Members' actions.

## Section 6
### Contributions, Allocations and Distributions

**6.1** <u>Capital Contributions.</u> The Members must make an initial Capital Contribution in cash or property having a fair market value in the amount set forth on the Ownership Schedule. The Members are not obligated to make additional Capital Contributions to the Company.

**6.2** <u>Allocations.</u> Profits and losses of the Company must be allocated to the Members and other Interest Holders in proportion to Interest allocation.

**6.3** <u>Distributions.</u> Distributions of cash or property by the Company may be made from time to time upon approval by the Members. Any taxes paid by the Company on behalf of an Interest Holder will be treated as a distribution to the Interest Holder.

    **6.4**   <u>Interest Transfers.</u> If an Interest is transferred or issued to a new Member during a Fiscal Year, all allocations or distributions with respect to the transferred Interest on or before the date of transfer must be made to the transferor, and all allocations and distributions after the date of a transfer must be made to the transferee.

**Section 7**
**Indemnification**

    **7.1**   <u>Authorization.</u> The Company must indemnify a Person who has met the Prescribed Standard of Conduct and who was or is a party, or threatened to be made a party, to any Proceeding by reason of the fact that the Person is or was a Member, Manager, or officer of the Company, or who, while a Member, Manager, or officer of the Company, is or was serving at the request of the Company as a member, manager, officer, director, employee or agent of another Entity, against expenses (including attorneys' fees), judgments, settlements, penalties and fines (including excise taxes assessed with respect to employee benefit plans) actually and reasonably incurred in connection with such Proceeding.

    **7.2**   <u>Prescribed Standard of Conduct.</u> A Person seeking indemnification under this Section 7 satisfies the Prescribed Standard of Conduct:

    (a)   If the Person acted in good faith and in a manner reasonably believed by the Person to have been in or not opposed to the best interests of the Company, and, with respect to any criminal Proceeding, the Person had no reasonable cause to believe such conduct was unlawful; or

    (b)   To the extent that the Person has been successful in the defense of any Proceeding on the merits or otherwise, or in the defense of any claim, issue or other matter therein.

    **7.3**   <u>Determinations as to Prescribed Standard of Conduct.</u> The determination of any Proceeding by judgment, order, settlement or conviction, or upon a plea of <u>nolo contendere</u> or its equivalent, will not, of itself, create a presumption that the Person seeking indemnification did not meet the Prescribed Standard of Conduct specified in Section 7.2(a). A determination as to whether the Prescribed Standard of Conduct has been met must be made by:

    (a)   The Members;

    (b)   A written opinion by independent legal counsel other than an attorney, or a firm having associated with it an attorney, who has performed services for the Company or the Person seeking indemnification in the past five (5) years, if so directed by the Members; or

    (c)   By the court in which the Proceeding referred to above is brought.

---

*Health Care Facilities Partners, LLC*
*Declaration of Operating Agreement*       6
*September 3, 2014*

7.4     <u>Advancement of Expenses.</u>   If approved by the Members, expenses incurred in connection with any Proceeding may be paid for or reimbursed by the Company in advance of the final disposition thereof upon receipt from the Person seeking indemnification of a written affirmation that he has met the Prescribed Standard of Conduct and will repay such amount if it is ultimately determined that the Person did not meet the Prescribed Standard of Conduct.

**Section 8**
**Miscellaneous Provisions**

8.1     <u>Rights of Creditors and Third Parties.</u>   This Agreement is not intended for the benefit of any creditor of the Company or any other Person. Except and only to the extent provided by applicable statute, no creditor or third party has any rights under this Agreement or any agreement between the Company, the Managers and the Members with respect to any Capital Contribution or otherwise.

8.2     <u>Number and Gender.</u>   All provisions and references to gender and number is deemed to refer to masculine, feminine or neuter, singular or plural, as the identity of the Person or Persons may require.

8.3     <u>Binding Effect.</u> Except as otherwise provided in this Agreement, every provision of this Agreement is binding upon and inures to the benefit of the Members, the Managers, and their respective heirs, legatees, legal representatives, successors and assigns.

8.4     <u>Ohio Law.</u> The laws of the State of Ohio, excluding those relating to choice or conflicts of laws, govern the validity of this Agreement, and the construction of its terms.

**IN WITNESS WHEREOF**, this Agreement was executed as of the date first above written.

*[SIGNATURES APPEAR ON THE FOLLOWING PAGE]*

---

**Sandra Kurt, Summit County Clerk of Courts**

MEMBERS AND MANAGERS:

_____          _____
G. Edward Alexander (MGR)                 Andrew C. Heaner (MGR)


_____          _____
John T. Prater (MGR)                      Lanson J. Hyde III


_____          _____
John N. Childs                            Jack T. Diamond (MGR)


_____          _____
Heidi Heinle                              Frank T. Sossi (MGR)


_____          _____
Edward E. Bivins                          Jami Jackson


_____
Lisa Hoffpauir

**MEMBERS AND MANAGERS:**

_____
G. Edward Alexander (MGR)

_____
Andrew C. Heaner (MGR)


_____
John T. Prater (MGR)

_____
Lanson J. Hyde III


_____
John N. Childs

_____
Jack T. Diamond (MGR)


_____
Heidi Heinle

_____
Frank T. Sossi (MGR)


_____
Edward E. Bivins

_____
Jami Jackson


_____
Lisa Hoffpauir

_____

_Health Care Facilities Partners, LLC_
_Declaration of Operating Agreement_     8
_September 3, 2014_

MEMBERS AND MANAGERS:

_____          _____
G. Edward Alexander (MGR)            Andrew C. Heaner (MGR)



_____          _____
John T. Prafer (MGR)                 Lanson J. Hyde III



_____          _____
John N. Childs                       Jack T. Diamond (MGR)



_____          _____
Heidi Heinle                         Frank T. Sossi (MGR)



_____          _____
Edward E. Bivins                     Jami Jackson



_____
Lisa Hoffpauir



_____
*Health Care Facilities Partners, LLC*               8
*Declaration of Operating Agreement*
*September 3, 2014*

MEMBERS AND MANAGERS:


_____          _____
G. Edward Alexander (MGR)                 Andrew C. Heaner (MGR)


_____          _____
John T. Prater (MGR)                      Lanson J. Hyde III


_____          _____
John N. Childs                            Jack T. Diamond (MGR)


_____          _____
Heidi Heinle                              Frank T. Sossi (MGR)


_____          _____
Edward E. Bivins                          Jami Jackson


_____
Lisa Hoffpauir

MEMBERS AND MANAGERS:

_____          _____
G. Edward Alexander (MGR)                Andrew C. Heaner (MGR)


_____          _____
John T. Prater (MGR)                     Lanson J. Hyde III


_____          _____
John N. Childs                           Jack T. Diamond (MGR)


_____          _____
Heidi Heinle                             Frank T. Sossi (MGR)


_____          _____
Edward E. Bivins                         Jami Jackson


_____
Lisa Hoffpauir


_____
*Health Care Facilities Partners, LLC*                    8
*Declaration of Operating Agreement*
*September 3, 2014*

MEMBERS AND MANAGERS:

_____          _____
G. Edward Alexander (MGR)                 Andrew C. Heaner (MGR)


_____          _____
John T. Prater (MGR)                      Lanson J. Hyde III


_____          _____
John N. Childs                            Jack T. Diamond (MGR)


_____          _____
Heidi Heinle                             Frank T. Sossi (MGR)


_____          _____
Edward E. Bivins                         Jami Jackson


_____
Lisa Hoffpauir


_____
*Health Care Facilities Partners, LLC*                    8
*Declaration of Operating Agreement*
*September 3, 2014*

SURGICAL DEVELOPMENT PARTNERS
OCTOBER 1, 2014
RESOLUTION BY WRITTEM CONSENT

MEMBERS:

_____          _____
G. Edward Alexander                       Andrew C. Heaner


_____          _____
John T. Prater                            Lanson J. Hyde III


_____          _____
John N. Childs                            Jack T. Diamond


_____          _____
Heidi Heinle                              Frank T. Sossi


_____          _____
Edward E. Bivins                          Jami Jackson


_____
Lisa Hoffpauir

_____

*Surgical Development Partners, LLC*
*Member Resolution*
*October 1, 2014*

4

MEMBERS AND MANAGERS:

_____          _____
G. Edward Alexander (MGR)          Andrew C. Heaner (MGR)


_____          _____
John T. Prater (MGR)               Lanson J. Hyde III


_____          _____
John N. Childs                     Jack T. Diamond (MGR)


_____          _____
Heidi Heinle                       Frank T. Sossi (MGR)


_____          _____
Edward E. Bivins                   Jami Jackson


_____
Lisa Hoffpauir

_____

*Health Care Facilities Partners, LLC*
*Declaration of Operating Agreement*                8
*September 3, 2014*

MEMBERS AND MANAGERS:

_____
G. Edward Alexander (MGR)

_____
Andrew C. Heaner (MGR)

_____
John T. Prater (MGR)

_____
Lanson J. Hyde III

_____
John N. Childs

_____
Jack T. Diamond (MGR)

_____
Heidi Heinle

_____
Frank T. Sossi (MGR)

_____
Edward E. Bivins

_____
Jami Jackson

_____
Lisa Hoffpauir

_____
*Health Care Facilities Partners, LLC*
*Declaration of Operating Agreement*          8
*September 3, 2014*

MEMBERS AND MANAGERS:

_____          _____
G. Edward Alexander (MGR)            Andrew C. Heaner (MGR)


_____          _____
John T. Prater (MGR)                 Lanson J. Hyde III


_____          _____
John N. Childs                       Jack T. Diamond (MGR)


_____          _____
Heidi Heinle                         Frank T. Sossi (MGR)


_____          _____
Edward E. Bivins                     Jami Jackson


_____
Lisa Hoffpauir

*Health Care Facilities Partners, LLC*
*Declaration of Operating Agreement*            8
*September 3, 2014*

## Appendix

      The following capitalized words used in this Agreement, and the singular, plural, and other derivatives thereof have the meanings set forth below:

      "Act" means Chapter 1705 of the Ohio Revised Code, as amended from time to time.

      "Agreement" means this Declaration of Operating Agreement as amended from time to time.

      "Articles" means the Articles of Organization of the Company as properly adopted and amended from time to time by the Members and filed with the Ohio Secretary of State pursuant to the Act.

      "Capital Contribution" means any contribution of cash, property or services to the Company made by or on behalf of the Members pursuant to Section 6.

      "Code" means the Internal Revenue Code of 1986, as amended from time to time, and any corresponding provisions of any succeeding law.

      "Entity" means a limited liability company, corporation, business association, partnership, joint venture, trust, estate, employee benefit plan, or enterprise whether or not for profit.

      "Interest" means a membership interest in the Company.

      "Interest Holder" means a Person who owns an Interest in the Company.

      "Member" means the Person who signed this Agreement as a member, or who is hereafter admitted as a member of the Company pursuant to this Agreement, for so long as the Person continues as a member in accordance with this Agreement.

      "Ownership Schedule" means the schedule attached reflecting the Members' addresses, Capital Contributions, and Interest allocation.

      "Person" means a natural person or an Entity.

      "Prescribed Standard of Conduct" means the standard of conduct described in Section 7.2.

      "Proceeding" means a threatened, pending, or completed action, suit or proceeding whether civil, criminal, administrative or investigative (excluding actions by or in the right of the Company).

      "Section" all underlined references to a Section means a section of the Agreement.

## Ownership Schedule

| MEMBER | Percentage Interest |
|---|---|
| G. Edward Alexander | 14.90% |
| John T. Prater | 12.07% |
| Lanson J. Hyde | 7.50% |
| Andrew C. Heaner | 17.08% |
| Edward Bivins | 3.63% |
| Jack T. Diamond | 21.94% |
| John C. Childs | 5.47% |
| Frank T. Sossi | 11.00% |
| Heidi Heinle | 3.91% |
| Jami Jackson | 1.25% |
| Lisa Hoffpauir | 1.25% |

---

\*    All of the Capital Contribution consists of cash.

*Health care Facilities Partners, LLC*
*Declaration of Operating Agreement*
*September 3, 2014*

**HEALTH CARE FACILITIES PARTNERS
ADMINISTRATION, LLC**

OPERATING AGREEMENT

December 17, 2018



EXHIBIT

B

ALL-STATE LEGAL®

# HEALTH CARE FACILITIES PARTNERS ADMINSTRATION, LLC
## Operating Agreement

Dated as of December 17, 2018

### Table of Contents

Page

Section 1    Definitions...................................................................................................................1

Section 2    Formation ....................................................................................................................1
    2.1    Organization ...........................................................................................................1
    2.2    Agent .......................................................................................................................1
    2.3    Principal office.........................................................................................................1
    2.4    Purposes...................................................................................................................2
    2.5    Title to Property .......................................................................................................2
    2.6    Term .......................................................................................................................2

Section 3    Financial and Tax Matters .........................................................................................2
    3.1    Records to be Maintained.........................................................................................2
    3.2    Tax Returns.............................................................................................................2
    3.3    Tax Matters Member................................................................................................2

Section 4    Management................................................................................................................3
    4.1    Appointment of Managers........................................................................................3
    4.2    Management .............................................................................................................3
    4.3    Managers Authority .................................................................................................3
    4.4    Compensation and Expense Reimbursement.............................................................3
    4.5    Time Commitment ...................................................................................................4
    4.6    Officers....................................................................................................................4
    4.7    Liability of the Managers.........................................................................................5

Section 5    Membership ...............................................................................................................5
    5.1    Liability of the Members..........................................................................................5
    5.2    Ownership Schedule.................................................................................................5
    5.3    Admission of a Transferee as a Member ..................................................................5
    5.4    Issuance of Interests ................................................................................................5
    5.5    Related Party Transactions ......................................................................................6
    5.6    Minute Book.............................................................................................................6

Section 6    Contributions, Allocations and Distributions .............................................................6
    6.1    Capital Contributions ..............................................................................................6

**Sandra Kurt, Summit County Clerk of Courts**

6.2    Allocations ...................................................................................................6
6.3    Distributions ................................................................................................6
6.4    Interest Transfers .........................................................................................6

Section 7    Indemnification ..........................................................................................7
7.1    Authorization ...............................................................................................7
7.2    Prescribed Standard of Conduct ..................................................................7
7.3    Determinations as to Prescribed Standard of Conduct ...............................7
7.4    Advancement of Expenses ...........................................................................7

Section 8    Miscellaneous Provisions ...........................................................................8
8.1    Rights of Creditors and Third Parties ..........................................................8
8.2    Number and Gender .....................................................................................8
8.3    Binding Effect ..............................................................................................8
8.4    Ohio Law ......................................................................................................8

Appendix                    Definitions

Ownership Schedule          Members' Names, Capital Contributions and Interest Ownership

**Sandra Kurt, Summit County Clerk of Courts**

## HEALTH CARE FACILITIES PARTNERS ADMINSTRATION, LLC

### Operating Agreement

This Operating Agreement is made effective as of December 17, 2018, by and between the Initial Members, the Members as listed on the Membership Schedule, and G. Edward Alexander, John Prater, Andrew Heaner, Jack Diamond and Frank Sossi as the Managers ("Managers") of Health Care Facilities Partners Administration, LLC, an Ohio limited liability company ("Company").

### Section 1
### Definitions

Unless the context indicates otherwise, (i) all of the capitalized words in this Agreement have the meanings set forth in the Appendix or other provision of this Agreement and (ii) all noncapitalized words that appear in this Agreement and are defined in the Act and used herein have the meanings set forth in the Act.

### Section 2
### Formation

**2.1    Organization.**  The Members have caused the Company to be formed as an Ohio Limited Liability Company and have caused to be filed Articles and a certificate of acceptance of appointment by the resident agent of the Company with the Ohio Secretary of State.

**2.2    Agent.**  The agent ("Agent") for service of process upon the Company is Frank T. Sossi, whose address in the State of Ohio is 10113 Glen Eagle Lane, Twinsburg, Ohio 44087. The Manager may, from time to time, change the agent, and if the agent ceases to act as such for any reason or moves from Ohio, the Managers must forthwith designate a replacement agent for this purpose. The Manager must forthwith file with the Ohio Secretary of State the documents required by the Act with respect to any change of the agent or the agent's address. If the Managers fail to designate a replacement agent, or if the Managers or the agent fail to file the appropriate notice of a change of agent or the agent's address, any Member may designate a replacement agent or file a notice of change of agent or the agent's address.

**2.3    Principal office.**  The principal office of the Company will be located at 201 Seaboard Lane, Suite 125, Franklin, Tennessee 37067, or at any other location as the Managers determine from time to time.

     **2.4**    <u>Purposes</u>. Except as provided by the Act, the Company may pursue any purpose or purposes for which individuals may lawfully associate themselves.

     **2.5**    <u>Title to Property</u>. Title to all property contributed to or otherwise acquired by the Company must be held in the name of the Company.

     **2.6**    <u>Term</u>. The term of the Company will be perpetual or until its Charter is dissolved with the Ohio Secretary of State according to the Provisions of the Act.

**<u>Section 3</u>**
**<u>Financial and Tax Matters</u>**

     **3.1**    <u>Records to be Maintained</u>. The Company must maintain the following records at its registered office or at such other location in the State of Ohio as determined by the Managers:

     (a)    A current list of the full name and last known business address of the Members and the Managers;

     (b)    A copy of the filed Articles and all amendments thereto, if any, together with executed copies of any powers of attorney pursuant to which any documents have been executed; and

     (c)    A copy of this Agreement and any amendments thereto then in effect.

     **3.2**    <u>Tax Returns</u>. The Managers shall cause to be prepared and filed all necessary federal and state income tax returns of the Company. Each Member shall furnish all pertinent information in its possession relating to the Company operations that is necessary to enable the Company's income tax returns to be prepared and filed. Neither the Company nor any Member may make an election for the Company to be excluded from the application of the provisions of subchapter K of chapter I of subtitle A of the Code or any similar provisions of applicable state law, and no provision of this Agreement shall be construed to sanction or approve such an election.

     **3.3**    <u>Tax Representative.</u> As used herein, "Tax Representative" shall have the same meaning as "Tax Representative" as used in the Code. Frank T. Sossi shall be the "Tax Representative" for the Company, as that term is defined in, and for all purposes of, Section 6231(a) of the Code and all applicable rules and regulations promulgated thereunder.

---

**Sandra Kurt, Summit County Clerk of Courts**

**Section 4**
**Management**

**4.1    Appointment of Managers.**  The Managers of the Company will be G. Edward Alexander, John Prater, Andrew Heaner, Jack Diamond and Frank Sossi.  A Manager will cease being a manager of the Company upon his resignation, death, dissolution, adjudication of incompetency, or removal by the Members.  The Members may appoint a new Person to succeed a Manager who ceases being a manager.

**4.2    Management.**  Control of the day-to-day management of the Company is vested in the Managers.  Except as otherwise provided in this Agreement or by the Act, Company business decisions may be made by the Manager acting on behalf of the Company.  The Managers may resign or be removed as Manager by the Members, and will be automatically removed if the Manager dies, dissolves, or is adjudicated incompetent.  If the Manager resigns or is removed, the Members may appoint a successor Manager.

**4.3    Manager Authority.**  Without limiting the foregoing, the Managers have the authority to do any of the following on behalf of the Company without the approval of the Members:

(a)    make, execute, or deliver on behalf of the Company any guarantee, indemnity bond, surety bond, or accommodation paper or accommodation endorsement;

(b)    sell all or substantially all of the Company's property;

(c)    lease, as lessor or lessee, any property;

(d)    borrow money and grant a lien upon any of the Company's property;

(e)    make, execute, or deliver a general assignment for the benefit of creditors;

(f)    authorize a merger or consolidation of the Company with or into another Entity;

(g)    commence a bankruptcy or receivership proceeding with respect to the Company; or

(h)    enter into contracts on behalf of the Company.

**4.4    Compensation and Expense Reimbursement.**  The Managers are entitled to compensation for services rendered to the Company as approved by the Board of Managers.

**Sandra Kurt, Summit County Clerk of Courts**

Upon substantiation of the amount and purpose thereof, the Managers are entitled to reimbursement for expenses reasonably incurred in connection with the Company's activities.

    **4.5**    <u>Outside Activities</u>. The Members may engage in business or investment activities outside of the Company, whether or not they are competitive with the Company.

    **4.6**    <u>Officers</u>.

(a)    <u>Election</u>. The Managers may from time to time designate officers for the Company, including, but not limited to a chairman, president, vice-president, secretary and treasurer. The Managers may designate more than one of each type of officer other than chairman and president and may appoint assistants to the officers other than chairman and president, who are to fulfill the duties of the officer when he is absent or disabled, and who will have such other duties and powers as the Managers may from time to time prescribe. Any two or more offices, except the offices of president and vice president, may be held by the same person.

(b)    <u>Removal</u>. An officer may be removed, with or without cause, by the Managers without prejudice to the contract rights of such officer. The appointment of an officer for a given term does not create any contract rights. The Managers may fill a vacancy in any office occurring for any reason.

(c)    <u>Authority</u>. The officers, as between themselves and the Company, have such authority and must perform such duties as is set forth below or otherwise specified from time to time by the Managers:

    (1)    <u>President</u>. The president is the chief executive officer of the Company and has overall responsibility for the management of the business of the Company and the implementation of all instructions of the Managers. The president has the authority to execute any documents necessary for the day-to-day operations of the Company or approved by the Managers.

    (2)    <u>Secretary</u>. The secretary is responsible for maintaining the records referred to in <u>Section 3.1(a)</u> - <u>(c)</u>.

    (3)    <u>Treasurer</u>. The treasurer is responsible for the preparation and maintenance of the financial records, the preparation and delivery of the tax returns and financial statements of the Company, the deposit of monies of the Company, and the payment of the Company's expenses.

**Sandra Kurt, Summit County Clerk of Courts**

(d)    Initial Officers. The Initial Officers of the Company shall be as follows until new Officers are designated by the Managers.

G. Edward Alexander        President
John Prater                Treasurer
Frank Sossi                Secretary

**4.7    Liability of The Managers.** The Managers may be liable in damages to the Company or the Members for any action that the Managers take or fail to take as Managers only if it is proved, by clear and convincing evidence, in a court with jurisdiction, that his action or failure to act involved an act or omission undertaken with deliberate intent to cause injury to the Company or undertaken with reckless disregard for the best interests of the Company.

### Section 5
### Membership

**5.1    Liability of the Members.** The Members are not (i) liable as such for the liabilities of the Company or (ii) obligated to restore losses of the Company. The failure of the Company to observe formalities or requirements relating to the exercise of its powers, or management of its business or affairs, under this Agreement or the Act is not grounds for imposing personal liability on the Members for liabilities of the Company.

**5.2    Ownership Schedule.** The Managers must record on the Ownership Schedule attached all Capital Contributions, Interest transfers, admissions of new Members, and issuances and cancellations of Interests. The Ownership Schedule must describe any services or property other than cash received as a Capital Contribution and state the agreed value thereof.

**5.3    Admission of a Transferee as a Member.** A Member may transfer an Interest to another Person and the transferee will be admitted as a Member and the Managers will reflect the transfer on the Ownership Schedule.

**5.4    Issuance of Interests.** The Company may issue an Interest to a Person who makes a Capital Contribution to the Company, either in cash, as a Guaranty of Company obligations or as a Promissory Note to the Company as authorized by the Managers of the Company, and admit the Person as an additional Member by (i) specifying the amount of consideration to be paid by such Person and the number of Interests to be issued in exchange therefor, (ii) obtaining from such Person an executed subscription agreement, and (iii) recording on the Ownership Schedule the issuance of additional Interests. The Company shall have two (2) classes of Interests, (1) the Common Interests, which were the original 100 Interests of the Company issued at $10.00 per Interest and (2) the Preferred Interests of the Company which will have a 12% annual preference

*Health Care Facilities Partners Administration, LLC*
*Operating Agreement*
*December 17, 2018*

**Sandra Kurt, Summit County Clerk of Courts**

return and a preference on redemption such that all Preferred Interests must be redeemed, with any accrued preference, on a last in - first out basis, before any Common Interests are redeemed, priced at $10.00 per Interest and treated pro-rata for purposes of any Company distributions. The Members will be admitted as of the date the Company accepts in writing the subscription agreement signed by the new Member or, if later, the date the Person pays the Company in full the amount of consideration specified in the subscription agreement.

     **5.5**    **Related Party Transactions**.   No contract, action, or transaction is void or voidable because it is between or affects the Company and one or more of its officers, or because it is between or affects the Company, the Managers, or any other Person in which one or more of its officers are members, managers, directors, trustees, or officers or have a financial or personal interest, or because one or more of its interested officers participate in or vote at the meeting that authorized the contract, action, or transaction, if the material facts as to his or their relationship or interest as to the contract, action, or transaction are disclosed or are known to the Members, and the Members, in good faith reasonably justified by those facts, authorize the contract, action or transaction.

     **5.6**    **Minute Book**.  The Managers may maintain a minute book recording the Managers' and the Members' actions.

## Section 6
## Contributions, Allocations and Distributions

     **6.1**    **Capital Contributions**.  The Members must make an initial Capital Contribution in cash or property having a fair market value in the amount set forth on the Ownership Schedule. The Members are not obligated to make additional Capital Contributions to the Company.

     **6.2**    **Allocations**.  Profits and losses of the Company must be allocated to the Members and other Interest Holders in proportion to their Interest allocation.

     **6.3**    **Distributions**.  Distributions of cash or property by the Company may be made from time to time upon approval by the Members. Any taxes paid by the Company on behalf of an Interest Holder will be treated as a distribution to the Interest Holder.

     **6.4**    **Interest Transfers**.  If an Interest is transferred or issued to a new Member during a Fiscal Year, all allocations or distributions with respect to the transferred Interest on or before the date of transfer must be made to the transferor, and all allocations and distributions after the date of a transfer must be made to the transferee.

*Health Care Facilities Partners Administration, LLC*
*Operating Agreement*
*December 17, 2018*

**Sandra Kurt, Summit County Clerk of Courts**

## Section 7
## Indemnification

**7.1** **Authorization.** The Company must indemnify a Person who has met the Prescribed Standard of Conduct and who was or is a party, or threatened to be made a party, to any Proceeding by reason of the fact that the Person is or was a Member, Manager, or officer of the Company, or who, while a Member, Manager, or officer of the Company, is or was serving at the request of the Company as a member, manager, officer, director, employee or agent of another Entity, against expenses (including attorneys' fees), judgments, settlements, penalties and fines (including excise taxes assessed with respect to employee benefit plans) actually and reasonably incurred in connection with such Proceeding.

**7.2** **Prescribed Standard of Conduct.** A Person seeking indemnification under this Section 7 satisfies the Prescribed Standard of Conduct:

(a) If the Person acted in good faith and in a manner reasonably believed by the Person to have been in or not opposed to the best interests of the Company, and, with respect to any criminal Proceeding, the Person had no reasonable cause to believe such conduct was unlawful; or

(b) To the extent that the Person has been successful in the defense of any Proceeding on the merits or otherwise, or in the defense of any claim, issue or other matter therein.

**7.3** **Determinations as to Prescribed Standard of Conduct.** The determination of any Proceeding by judgment, order, settlement or conviction, or upon a plea of nolo contendere or its equivalent, will not, of itself, create a presumption that the Person seeking indemnification did not meet the Prescribed Standard of Conduct specified in Section 7.2(a). A determination as to whether the Prescribed Standard of Conduct has been met must be made by:

(a) The Members;

(b) A written opinion by independent legal counsel other than an attorney, or a firm having associated with it an attorney, who has performed services for the Company or the Person seeking indemnification in the past five (5) years, if so directed by the Members; or

(c) By the court in which the Proceeding referred to above is brought.

**Sandra Kurt, Summit County Clerk of Courts**

**7.4    Advancement of Expenses.**  If approved by the Members, expenses incurred in connection with any Proceeding may be paid for or reimbursed by the Company in advance of the final disposition thereof upon receipt from the Person seeking indemnification of a written affirmation that he has met the Prescribed Standard of Conduct and will repay such amount if it is ultimately determined that the Person did not meet the Prescribed Standard of Conduct.

### Section 8
### Miscellaneous Provisions

**8.1    Rights of Creditors and Third Parties.**  This Agreement is not intended for the benefit of any creditor of the Company or any other Person. Except and only to the extent provided by applicable statute, no creditor or third party has any rights under this Agreement or any agreement between the Company, the Managers and the Members with respect to any Capital Contribution or otherwise.

**8.2    Number and Gender.**  All provisions and references to gender and number is deemed to refer to masculine, feminine or neuter, singular or plural, as the identity of the Person or Persons may require.

**8.3    Binding Effect.**  Except as otherwise provided in this Agreement, every provision of this Agreement is binding upon and inures to the benefit of the Members, the Managers, and their respective heirs, legatees, legal representatives, successors and assigns.

**8.4    Ohio Law.**  The laws of the State of Ohio, excluding those relating to, choice or conflicts of laws, govern the validity of this Agreement, and the construction of its terms.

**IN WITNESS WHEREOF,** this Agreement was executed as of the date first above written.

**INITIAL MEMBERS:**

_____
G. Edward Alexander, Initial Member

_____
Frank T. Sossi, Initial Member

_____

*Health Care Facilities Partners Administration, LLC*
*Operating Agreement*
*December 17, 2018*

## Appendix

The following capitalized words used in this Agreement, and the singular, plural, and other derivatives thereof have the meanings set forth below:

"Act" means Chapter 1705 of the Ohio Revised Code, as amended from time to time.

"Agreement" means this Declaration of Operating Agreement as amended from time to time.

"Articles" means the Articles of Organization of the Company as properly adopted and amended from time to time by the Members and filed with the Ohio Secretary of State pursuant to the Act.

"Capital Contribution" means any contribution of cash, property or services to the Company made by or on behalf of the Members pursuant to Section 6.

"Code" means the Internal Revenue Code of 1986, as amended from time to time, and any corresponding provisions of any succeeding law.

"Entity" means a limited liability company, corporation, business association, partnership, joint venture, trust, estate, employee benefit plan, or enterprise whether or not for profit.

"Initial Member" means G. Edward Alexander and Frank T. Sossi.

"Interest" means a membership interest in the Company.

"Interest Holder" means a Person who owns an Interest in the Company.

"Member" means the Person who signed this Agreement as a member, or who is hereafter admitted as a member of the Company pursuant to this Agreement, for so long as the Person continues as a member in accordance with this Agreement.

"Ownership Schedule" means the schedule attached reflecting the Members' addresses, Capital Contributions, and Interest allocation.

"Person" means a natural person or an Entity.

"Prescribed Standard of Conduct" means the standard of conduct described in Section 7.2.

**Sandra Kurt, Summit County Clerk of Courts**

"Proceeding" means a threatened, pending, or completed action, suit or proceeding whether civil, criminal, administrative or investigative (excluding actions by or in the right of the Company).

"Section" all underlined references to a Section means a section of the Agreement.

**Sandra Kurt, Summit County Clerk of Courts**

## Ownership Schedule

| MEMBER | Allocation Percentage |
|---|---|
|  | **100.00%** |
| Rene Alexander | 17.36% |
| G. Edward Alexander | 0.75% |
| John T. Prater | 14.67% |
| Andrew C. Heaner | 20.76% |
| Jack T. Diamond | 26.66% |
| John C. Childs | 2.46% |
| Frank T. Sossi | 13.37% |
| Heidi Heinle | 1.91% |
| Jami Jackson | 0.50% |
| Lisa Hoffpauir | 1.55% |

**Sandra Kurt, Summit County Clerk of Courts**

CV-2022-07-2215 CROCE, CHRISTINE 09/14/2022 17:03:00 PM MFET Page 1 of 4

COURT OF COMMON PLEAS
SUMMIT COUNTY, OHIO

JACK DIAMOND,         )     CASE NO. CV-2022-07-2215
                          )
        Plaintiff,       )     JUDGE CHRISTINE CROCE
                          )
     v.                     )
                          )     <u>DEFENDANTS' STIPULATED</u>
G. EDWARD ALEXANDER, JR., *et al.*,    )     <u>MOTION FOR EXTENSION OF</u>
                          )     <u>TIME TO RESPOND TO</u>
        Defendants.     )     <u>AMENDED COMPLAINT</u>

Pursuant to Ohio Civil Procedure Rule 6(B) and Summit County Common Pleas Local Rule 7, Defendants G. Edward Alexander, Jr., John T. Prater, Frank Sossi, and HCFP Legacy Holdings, LLC (together, "Defendants") hereby move this Court, with the stipulated agreement of Plaintiff's counsel, for an extension of time through October 14, 2022, for each of Defendants to move, plead, or otherwise respond to the Amended Complaint filed by Plaintiff Jack Diamond in this action.

For grounds, Defendants state that on August 4, 2022, as part of an arrangement to accept service of process on the then unserved out-of-state Defendants and set a single uniform date for all Defendants to respond to the original Complaint, Defendants filed their Stipulated Motion for Extension of Time to Respond to the Complaint in this action. On August 5, 2022, this Court entered its Order granting that Motion and setting September 30, 2022, as the response date for each Defendant.

EXHIBIT
1 - Q

On August 22, 2022, Plaintiff filed his Amended Complaint in this action. Pursuant to the Ohio Rules of Civil Procedure, Defendants' deadline to respond to the Amended Complaint would fall before the court-ordered September 30, 2022 answer date for the original Complaint. Defendants thus hereby request that this Court extend through October 14, 2022, the date by which each of them may move, plead, or otherwise respond the Amended Complaint in this action. This is Defendants' second extension request, but their first request with respect to the recently filed Amended Complaint. The extension is not being sought for mere delay or any other improper purpose, and no prejudice will result to any party from the extension that Defendants hereby seek. Upon consultation, Plaintiff's counsel has indicated their stipulated agreement to this Motion and the extension that it requests.

For these reasons and on these bases, Defendants respectfully request that the Court enter an order extending through October 14, 2022, the time for each of Defendants to respond to the Amended Complaint in this action.

Respectfully submitted,

 /s/ Steven J. Miller
STEVEN J. MILLER (0014293)
SteveMiller@BuckleyKing.com
DAVID A. KUNSELMAN (0073980)
Kunselman@BuckleyKing.com
BUCKLEY KING LPA
600 Superior Avenue East
1400 Fifth Third Center
Cleveland, OH 44114
(216) 363-1400
(216) 579-1020 (fax)

JOHN F. HILL (0039675)
John.Hill@lewisbrisbois.com
LEWIS BRISBOIS BISGAARD & SMITH, LLP
1 GojoPlaza, Suite 310
Akron, OH  44311

(330) 272-0044
(330) 272-0019 (fax)

BARTON W. COX
Texas State Bar No. 24065087
(*pro hac vice* motion to be filed)
beau.cox@nortonrosefulbright.com
VERONICA PORTILLO KENDRICK
(*pro hac vice* motion to be filed)
Texas State Bar No. 24055609
veronica.kendrick@nortonrosefulbright.com
JACQUELINE G. BAKER
(*pro hac vice* motion to be filed)
Texas State Bar No. 24109609
jackie.baker@nortonrosefulbright.com
NORTON ROSE FULBRIGHT US LLP
2200 Ross Avenue, Suite 2800
Dallas, Texas  75201
Telephone:      (214) 855-8000
Facsimile:      (214) 855-8200

*Attorneys for Defendants*

<u>CERTIFICATE OF SERVICE</u>

      I hereby certify that the foregoing was filed electronically on September 14, 2022. Notice of this filing will be sent to all parties and their counsel by operation of the Court's electronic filing system.

*/s/ Steven J. Miller*             
STEVEN J. MILLER (0014293)

10073015.3

## IN THE COURT OF COMMON PLEAS
## SUMMIT COUNTY, OHIO

| | | |
|---|---|---|
| JACK DIAMOND, | ) | CASE NO. CV-2022-07-2215 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTINE CROCE |
| | ) | |
| v. | ) | **ORDER ON DEFENDANTS'** |
| | ) | **STIPULATED MOTION FOR** |
| G. EDWARD ALEXANDER, JR., *et al.*, | ) | **EXTENSION OF TIME TO** |
| | ) | **RESPOND TO AMENDED** |
| Defendants. | ) | **COMPLAINT** |

This matter came before the Court on the stipulated Motion of Defendants G. Edward Alexander, Jr., John T. Prater, Frank Sossi, and HCFP Legacy Holdings, LLC (together, "Defendants") for an extension of time through October 14, 2022, for each of them to move, plead, or otherwise respond to the Amended Complaint filed by Plaintiff Jack Diamond in this action.

Having considered the information set forth in Defendants' Motion, including the stipulated agreement of Plaintiff's counsel, the Court finds that the requested extension is warranted by good grounds.

Accordingly, Defendants' Motion is hereby granted. Each of Defendants shall have through October 14, 2022, to move, plead, or otherwise respond to the Amended Complaint in this action.

IT IS SO ORDERED.

_____

JUDGE CHRISTINE CROCE



EXHIBIT
1 - R