IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| HEALTH CARE FACILITIES PARTNERS, LLC,<br>7110 Crossroads Blvd, Suite 200<br>Brentwood, Tennessee 37027, | ) <br>) <br>) <br>) | CASE NO. CASE NO. 5:21-cv-1070<br><br>JUDGE SARA LIOI |
| | ) <br>) | MAGISTRATE JUDGE KATHLEEN B. |
| HEALTH CARE FACILITIES PARTNERS ADMINISTRATION, LLC,<br>7110 Crossroads Blvd, Suite 200<br>Brentwood, Tennessee 37027, | ) <br>) <br>) <br>) <br>) | BURKE |
| HCFP, LLC<br>7110 Crossroads Blvd, Suite 200<br>Brentwood, Tennessee 37027, | ) <br>) <br>) | PLAINTIFFS' FIRST AMENDED COMPLAINT<br>(JURY DEMAND ENDORSED HEREON) |
| HCFP OF BRAINARD INVESTMENTS, LLC,<br>7110 Crossroads Blvd, Suite 200<br>Brentwood, Tennessee 37027, | ) <br>) <br>) <br>) <br>) | |
| HCFP OF CELEBRATION INVESTMENTS, LLC,<br>7110 Crossroads Blvd, Suite 200<br>Brentwood, Tennessee 37027, | ) <br>) <br>) <br>) <br>) | |
| HCFP OF SIDNEY INVESTMENTS, LLC,<br>7110 Crossroads Blvd, Suite 200<br>Brentwood, Tennessee 37027, | ) <br>) <br>) <br>) | |
| HCFP OF SANDUSKY INVESTMENTS, LLC,<br>7110 Crossroads Blvd, Suite 200<br>Brentwood, Tennessee 37027, | ) <br>) <br>) <br>) <br>) | |
| HCFP OF NORWALK INVESTMENTS, LLC,<br>7110 Crossroads Blvd, Suite 200<br>Brentwood, Tennessee 37027, | ) <br>) <br>) <br>) <br>) | |
| HCFP OF SW OHIO INVESTMENTS, LLC,<br>7110 Crossroads Blvd, Suite 200<br>Brentwood, Tennessee 37027, | ) <br>) <br>) <br>) <br>) | |

**EXHIBIT 3**

HCFP OF DAYTON ENTERPRISES, LLC,           )
7110 Crossroads Blvd, Suite 200 Brentwood, )
Tennessee 37027,                           )
                                           )
SURGICAL DEVELOPMENT PARTNERS              )
OF PA, LLC,                                )
7110 Crossroads Blvd, Suite 200            )
Brentwood, Tennessee 37027,                )
                                           )
HCFP OF BRAINARD ENTERPRISES, LLC,         )
7110 Crossroads Blvd, Suite 200            )
Brentwood, Tennessee 37027,                )
                                           )
HCFP OF CELEBRATION ENTERPRISES,           )
LLC,                                       )
7110 Crossroads Blvd, Suite 200            )
Brentwood, Tennessee 37027,                )
                                           )
HCFP OF SIDNEY ENTERPRISES, LLC,           )
7110 Crossroads Blvd, Suite 200            )
Brentwood, Tennessee 37027,                )
                                           )
HCFP OF SANDUSKY                           )
ENTERPRISES, LLC,                          )
7110 Crossroads Blvd, Suite 200            )
Brentwood, Tennessee 37027,                )
                                           )
HCFP OF NORWALK ENTERPRISES, LLC,          )
7110 Crossroads Blvd, Suite 200            )
Brentwood, Tennessee 37027,                )
                                           )
HCFP OF SW OHIO ENTERPRISES, LLC,          )
7110 Crossroads Blvd, Suite 200            )
Brentwood, Tennessee 37027,                )
                                           )
LRMC OF AUSTIN INVESTMENTS, LLC,           )
7110 Crossroads Blvd, Suite 200            )
Brentwood, Tennessee 37027,                )
                                           )
SDP OF AUSTIN INVESTMENTS, LLC,            )
7110 Crossroads Blvd, Suite 200            )
Brentwood, Tennessee 37027,                )
                                           )
SDP OF AUSTIN ENTERPRISES, LLC,            )
7110 Crossroads Blvd, Suite 200            )
Brentwood, Tennessee 37027,                )
                                           )
                                           )

SDP OF DALLAS HOLDINGS, LLC,                )
7110 Crossroads Blvd, Suite 200             )
Brentwood, Tennessee 37027,                 )
                                            )
HCFP OF LEE COUNTY INVESTMENTS,             )
LLC,                                        )
7110 Crossroads Blvd, Suite 200             )
Brentwood, Tennessee 37027,                 )
                                            )
        and                                 )
                                            )
PARTNERS IN HEALTH                          )
CARE DEVELOPMENT, LLC,                       )
7110 Crossroads Blvd, Suite 200             )
Brentwood, Tennessee 37027,                 )
                                            )
            *Plaintiffs*,                    )
                                            )
        v.                                  )
                                            )
JACK DIAMOND,                               )
181 Ely Road                                )
Akron, Ohio 44313,                          )
                                            )
JOHN CHILDS,                                )
4111 Big Spruce Drive                       )
Akron, Ohio 44333,                          )
                                            )
HEIDI HEINLE,                               )
1035 Poulsen Drive                          )
Akron, Ohio 44313,                          )
                                            )
JOHN DOE DEFENDANTS 1–99                    )
75 East Market Street                       )
Akron, Ohio 44308                           )
                                            )
JANE DOE DEFENDANTS 1–99                    )
75 East Market Street                       )
Akron, Ohio 44308                           )
                                            )
        and                                 )
                                            )
BRENNAN, MANNA & DIAMOND, LLC               )
75 East Market Street                       )
Akron, Ohio 44308                           )
                                            )
            *Defendants*.                    )

3

Plaintiffs Health Care Facilities Partners, LLC, Health Care Facilities Partners Administration, LLC, HCFP, LLC, HCFP of Brainard Investments, LLC, HCFP of Celebration Investments, LLC, HCFP of Sidney Investments, LLC, HCFP of Sandusky Investments, LLC, HCFP of Norwalk Investments, LLC, HCFP of SW Ohio Investments, LLC, HCFP of Dayton Enterprises, LLC, Surgical Development Partners of PA, LLC, HCFP of Brainard Enterprises, LLC, HCFP of Celebration Enterprises, LLC, HCFP of Sidney Enterprises, LLC, HCFP of Sandusky Enterprises, LLC, HCFP of Norwalk Enterprises, LLC, HCFP of SW Ohio Enterprises, LLC, LRMC of Austin Investments, LLC, SDP of Austin Investments, LLC, SDP of Austin Enterprises, LLC, SDP of Dallas Holdings, LLC, HCFP of Lee County Investments, LLC, and Partners in Health Care Development, LLC (collectively, "Plaintiffs"), for their Amended Complaint ("Complaint") against Defendants Jack Diamond ("Diamond"), John Childs ("Childs"), Heidi Heinle ("Heinle"), John Doe Defendants 1-99 and Jane Doe Defendants 1-99 (all together, the "Doe Defendants"), and Brennan, Manna & Diamond, LLC ("BMD")(all Defendants hereinafter referred to collectively as "Defendants"), state and allege as follows:

<u>INTRODUCTION</u>

1.      Plaintiffs are separate, unaffiliated limited liability companies that are engaged in the ownership, development, operation, and/or management of various medical facilities located throughout the United States. These entities were formed over a period of years, on a project-by-project basis, by a group of investors that have, depending upon the time period, operated under either the "Health Care Facilities Partners" or "Surgical Development Partners" brands.[1] Although most of Plaintiffs' names include either the "HCFP" or "SDP" monikers, the constituency of their respective memberships varies materially – both in terms of which

---

[1] Unless otherwise specifically stated, as used herein, the term "HCFP" refers generally to the group of individual investors who from time to time have directly invested in the separate, project-specific healthcare businesses.

individual investors participated in each business and what percentage interest each owned in any particular business.

2.      Defendants Diamond, Childs, and Heinle invested in some, but not all, of the HCFP- and SDP-branded projects. Whereas Childs and Heinle were passive investors, Defendant Diamond was, until recently, an appointed manager of many of the businesses. In that capacity, he was charged with managing the business operations of the companies on behalf of their respective memberships. In addition to managing Plaintiffs' business affairs, Diamond and other attorneys (including the Doe Defendants) working at his law firm, Defendant BMD, also served as Plaintiffs' primary outside counsel on transactional matters.[2] Diamond and other Defendants thus owed Plaintiffs multiple sets of fiduciary duties.

3.      Much of the money used to develop Plaintiffs' projects was borrowed. Diamond, along with other investors, personally guaranteed those loans. As for many other businesses, COVID-19 had a material adverse effect on Plaintiffs' cash flows, as the majority of their respective surgery centers were shut down for weeks or months while the country worked to bring the pandemic under control. Consequently, many of the companies' debt-to-cash ratios ballooned, putting the underlying investors at risk of having the lenders call upon their personal guarantees.

4.      In 2020, seeking to reduce debt and build for the future, Plaintiffs entered into confidential negotiations with a public company that sought to form a joint venture with Plaintiffs to develop and manage additional medical centers (the "Joint Venture"). (The name of the Joint Venture partner is confidential.) In addition to a go-forward stake in the Joint Venture,

---

[2] As alleged below, Plaintiffs have learned that BMD claims an attorney-client relationship with Value Health – an entity with interests adverse to Plaintiffs. Plaintiffs do not presently know the names of the specific BMD attorneys who represent and/or represented Value Health, as Defendants have not provided Plaintiffs with that information. Plaintiffs thus have named them as the Doe Defendants, for now. Defendants will seek leave to further amend upon completion of discovery about the Doe Defendants.

the transaction would have netted Plaintiffs and their members millions of dollars in cash, which Plaintiffs intended to use to pay down the companies' burgeoning loans.

5.      Just as Plaintiffs were finalizing the terms of the Joint Venture, Diamond did the unimaginable: he sabotaged the Joint Venture by surreptitiously purporting to assign his interests in Health Care Facilities Partners, LLC (and, according to Defendants, various unidentified "affiliates") to one of Plaintiffs' competitors, Value Health, LLC ("Value Health") (the "Purported Assignment"). Diamond convinced Childs and Heinle to execute the Purported Assignment as well. As shown below, Diamond executed the Purported Assignment in exchange for (i) a stake in Value Health and/or one of its affiliates, and (ii) Value Health's promise to indemnify Diamond against any claims that might be made under the personal guarantees he had issued to Plaintiffs' lenders. In contravention of Plaintiffs' operating agreements, Diamond disclosed none of these facts about his deal with Value Health prior to executing the Purported Assignment. Nor did Diamond inform Plaintiffs that his law firm, BMD, and lawyers at BMD had also formed an attorney-client relationship with Value Health – an entity that was, at all relevant times, squarely adverse to Plaintiffs.

6.      Despite owing fiduciary duties to Plaintiffs as a manager of the businesses, Diamond also, both before and after the Purported Assignment, funneled Plaintiffs' confidential information and trade secrets to Value Health and actively promoted Value Health in the marketplace by, *e.g.,* taking Value Health's executives on tours through medical facilities that certain Plaintiffs were either already managing or in negotiations to manage. Moreover, attempting to dodge his obligations as a guarantor of Plaintiffs' debts, Diamond stopped communicating with the financial institutions that loaned Plaintiffs the money used to develop their centers, putting Diamond's co-guarantors at even greater risk of having the banks call upon

their respective personal guarantees. All of these self-interested actions constituted egregious breaches of the fiduciary duties that Diamond owed to Plaintiffs.

7.      The adverse consequences of Diamond's various acts of betrayal have already materialized. Indeed, shortly after taking the Purported Assignment, Value Health demanded that Plaintiffs provide it with immense amounts of highly confidential proprietary information about Plaintiffs' ongoing projects. Value Health further expressly stated its intent to leverage the Purported Assignment to obtain a "controlling" stake in Plaintiffs' businesses. Consistent with that plan, Value Health took affirmative steps to interfere with the Joint Venture, including going so far as to contact Plaintiffs' Joint Venture partner directly to inform it that it had purportedly purchased Diamond's interests. Ultimately, as Value Health hoped, Diamond's and Value Health's nefarious dealings caused Plaintiffs' Joint Venture partner to back out of that critical transaction, thereby depriving Plaintiffs of valuable go-forward development opportunities and millions of dollars in transaction proceeds that would have been used to pay down their debts.

8.      Plaintiffs bring this lawsuit to recover damages, for declaratory judgment, and for other appropriate relief from and against Defendants.

<u>PARTIES</u>

9.      Plaintiff Health Care Facilities Partners, LLC, is a limited liability company organized under the laws of the State of Ohio, with its principal place of business in Brentwood, Tennessee.

10.      Plaintiff Health Care Facilities Partners Administration, LLC, is a limited liability company organized under the laws of the State of Ohio, with its principal place of business in Brentwood, Tennessee.

11.      Plaintiff HCFP, LLC, is a limited liability company organized under the laws of the State of Ohio, with its principal place of business in Brentwood, Tennessee.

12.     Plaintiff HCFP of Brainard Investments, LLC is a limited liability company organized under the laws of the State of Ohio, with its principal place of business in Brentwood, Tennessee.

13.     Plaintiff HCFP of Celebration Investments, LLC is a limited liability company organized under the laws of the State of Ohio, with its principal place of business in Brentwood, Tennessee.

14.     Plaintiff HCFP of Sidney Investments, LLC is a limited liability company organized under the laws of the State of Ohio, with its principal place of business in Brentwood, Tennessee.

15.     Plaintiff HCFP of Sandusky Investments, LLC is a limited liability company organized under the laws of the State of Ohio, with its principal place of business in Brentwood, Tennessee.

16.     Plaintiff HCFP of Norwalk Investments, LLC is a limited liability company organized under the laws of the State of Ohio, with its principal place of business in Brentwood, Tennessee.

17.     Plaintiff HCFP of SW Ohio Investments, LLC is a limited liability company organized under the laws of the State of Ohio, with its principal place of business in Brentwood, Tennessee.

18.     Plaintiff HCFP of Dayton Enterprises, LLC is a limited liability company organized under the laws of the State of Ohio, with its principal place of business in Brentwood, Tennessee.

19.     Plaintiff Surgical Development Partners of PA, LLC is a limited liability company organized under the laws of the State of Ohio, with its principal place of business in Brentwood, Tennessee.

20.     Plaintiff HCFP of Brainard Enterprises, LLC is a limited liability company organized under the laws of the State of Ohio, with its principal place of business in Brentwood, Tennessee.

21.     Plaintiff HCFP of Celebration Enterprises, LLC is a limited liability company organized under the laws of the State of Ohio, with its principal place of business in Brentwood, Tennessee.

22.     Plaintiff HCFP of Sidney Enterprises, LLC is a limited liability company organized under the laws of the State of Ohio, with its principal place of business in Brentwood, Tennessee.

23.     Plaintiff HCFP of Sandusky Enterprises, LLC is a limited liability company organized under the laws of the State of Ohio, with its principal place of business in Brentwood, Tennessee.

24.     Plaintiff HCFP of Norwalk Enterprises, LLC is a limited liability company organized under the laws of the State of Ohio, with its principal place of business in Brentwood, Tennessee.

25.     Plaintiff HCFP of SW Ohio Enterprises, LLC is a limited liability company organized under the laws of the State of Ohio, with its principal place of business in Brentwood, Tennessee.

26.     Plaintiff LRMC of Austin Investments, LLC is a limited liability company organized under the laws of the State of Ohio, with its principal place of business in Brentwood, Tennessee.

27.     Plaintiff SDP of Austin Investments, LLC is a limited liability company organized under the laws of the State of Ohio, with its principal place of business in Brentwood, Tennessee.

28.     Plaintiff SDP of Austin Enterprises, LLC is a limited liability company organized under the laws of the State of Ohio, with its principal place of business in Brentwood, Tennessee.

29.     Plaintiff SDP of Dallas Holdings, LLC is a limited liability company organized under the laws of the State of Ohio, with its principal place of business in Brentwood, Tennessee.

30.     Plaintiff HCFP of Lee County Investments, LLC is a limited liability company organized under the laws of the State of Ohio, with its principal place of business in Brentwood, Tennessee.

31.     Plaintiff Partners in Health Care Development, LLC is a limited liability company organized under the laws of the State of Ohio, with its principal place of business in Brentwood, Tennessee.

32.     Defendant Diamond is an individual residing in Ohio.

33.     Defendant Childs is an individual residing in Ohio.

34.     Defendant Heinle is an individual residing in Ohio.

35.     The Doe Defendants are attorneys at the BMD law firm who performed legal services on behalf of Plaintiffs and/or Value Health and whose identities are not presently known.

36.     Defendant Brennan, Manna & Diamond, LLC is a limited liability company organized under the laws of the State of Ohio, with its principal place of business in Akron, Ohio.

<u>JURISDICTION AND VENUE</u>

37.     As set forth below, Plaintiffs bring claims against Diamond under the Federal Defend Trade Secrets Act, 18 U.S.C. § 1836, which specifically provides that "[t]he district courts of the United States shall have jurisdiction of civil actions brought" thereunder. 18 U.S.C. § 1836(c). The Court thus has federal question jurisdiction over the subject matter of this lawsuit

pursuant to 28 U.S.C. § 1331 because this is a civil action arising under the laws of the United States.

38.     The Court has supplemental jurisdiction over Plaintiffs' remaining claims pursuant to 28 U.S.C. § 1367(a) because Plaintiffs' remaining claims against Defendants "are so related to" Plaintiffs' claims within the Court's original jurisdiction "that they form part of the same case or controversy."

39.     The Court has personal jurisdiction over Diamond because Diamond is an individual who resides in and routinely does business in the State of Ohio, including practicing law within the State of Ohio. Moreover, Diamond has served as a member and manager of multiple HCFP- and SDP-branded entities that are organized under the laws of the State of Ohio.

40.     The Court has personal jurisdiction over Childs because Childs is an individual who resides in and routinely does business in the State of Ohio, including practicing law within the State of Ohio. Moreover, Childs has been a member of multiple HCFP- and SDP-branded entities that are organized under the laws of the State of Ohio.

41.     The Court has personal jurisdiction over Heinle because Heinle is an individual who resides in the State of Ohio. Moreover, Heinle has been a member of multiple HCFP- and SDP-branded entities that are organized under the laws of the State of Ohio.

42.     The Court has personal jurisdiction over the Doe Defendants because, on information and belief, the Doe Defendants are individuals residing in and routinely doing business in the State of Ohio, including practicing law within the State of Ohio.

43.     The Court has personal jurisdiction over BMD because BMD is a limited liability company organized under the laws of the State of Ohio, its members are individuals residing in the State of Ohio, BMD routinely conducts business within the State of Ohio (including by

employing attorneys licensed to practice and practicing law in Ohio); and BMD's actions giving rise to this lawsuit occurred, in whole or in part, within the State of Ohio.

44.     Pursuant to 28 U.S.C. § 1391(b)(2), venue is proper in this judicial district because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this judicial district. For example, Diamond provided Value Health with access to, and confidential information regarding, facilities owned and/or managed by one or more Plaintiffs that are located within this district. Moreover, Diamond is the Chief Executive Office of BMD, the law firm through which he and his colleagues, including the Doe Defendants, have provided legal services to Plaintiffs, and BMD maintains multiple offices in Ohio. Further, venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(3) because Diamond, Childs, Heinle, the Doe Defendants, and BMD are subject to personal jurisdiction in this judicial district.

FACTUAL BACKGROUND

Plaintiffs' Relationship with Diamond, Childs, Heinle, and the Doe Defendants

45.     Plaintiffs work with hospitals and physicians in communities throughout the United States to provide professional advisory services, including medical center development services, hospital advisory services, and ambulatory surgery center development and management. In addition to providing these services, Plaintiffs' members and managers often invest – and, here, invested – in the centers they manage through special purpose entities formed for the purpose of holding the project-specific investments.

46.     Whenever a new opportunity emerged, this investor group initially explored the opportunity by directing Health Care Facilities Partners, LLC, Health Care Facilities Partners Administration, LLC, and/or HCFP, LLC (collectively, "HCFP Administration") to execute a non-disclosure agreement. After conducting initial confidential due diligence, the individuals who were interested in participating in that project typically formed one or more new project-

12

specific entities for that specific opportunity. Companies formed to manage any particular center (a "Management Business") generally include the term "Enterprises" in their names. Companies formed to hold equity investments in a particular center (an "Investment Business") generally include the term "Investments" in their names. Once formed, these standalone Management and Investment Businesses contract directly with any third parties to carry out their center-specific business functions.

47.     None of the HCFP Administration entities owns any direct or indirect interests in any of the project-specific Management or Investment Businesses. To the contrary, each project-specific business has its own separate membership comprised of varying groups of individual investors and its own set of managers, who likewise vary project-to-project. Consequently, there is no single "holding" company that owns any direct or indirect interest in each Plaintiff. Nor are all Plaintiffs under the common control of any particular company or set of managers.

48.     Diamond is a health-care transactional attorney with BMD. Since the early 2000s, Diamond and others at his law firm, including the Doe Defendants, advised Plaintiffs and their core group of investors with respect to the formation and operation of numerous health-care businesses. Upon information and belief, Diamond and the Doe Defendants also represented Value Health – a party that was, at all relevant times, adverse to Plaintiffs. As a very "hands on" attorney, Diamond also was intimately involved in the business-side of Plaintiffs' operations. For example, over the years, he served as the official Chairman of the Board of certain SDP- and HCFP-branded businesses and as a manager of many others.

49.     Diamond thus has consistently worn multiple hats: he has sourced some of the deals for Plaintiffs; he has been the largest single investor in many of the companies; he has been a manager of the companies in which he invested; and, he has served as legal counsel to Plaintiffs and their investor groups. Through his role as both an attorney and manager-member,

Diamond has had unfettered access to Plaintiffs' non-public, commercially sensitive, confidential information, as well as to their privileged information. This includes, but is not limited to, information about historic deals and forward-facing projects.

50.     Diamond is a member of each Plaintiff, except: (i) HCFP of Brainard Investments, LLC; (ii) HCFP of Brainard Enterprises, LLC; (iii) HCFP of SW Ohio Investments, LLC; (iv) HCFP of SW Ohio Enterprises, LLC; and (v) HCFP, LLC.

51.     Childs and Heinle are each members of the following Plaintiffs: (i) Health Care Facilities Partners, LLC; (ii) Health Care Facilities Partners Administration, LLC; (iii) HCFP of Dayton Enterprises, LLC; (iv) Partners in Health Care Development, LLC; (v) LRMC of Austin Investments, LLC; (vi) SDP of Austin Investments, LLC; (vii) SDP of Austin Enterprises, LLC; (viii) SDP of Dallas Holdings, LLC; and (ix) Surgical Development Partners of PA, LLC.

<u>Plaintiffs Own and Protect Trade Secrets</u>

52.     As part of their business, Plaintiffs regularly enter into confidential, commercially sensitive business negotiations and transactions with health systems and provider partners across the country, the details of which are non-public. By their very nature, these deals derive economic value from their non-public status, particularly during the negotiations stage, as numerous other healthcare companies compete for these valuable opportunities to develop and/or manage medical facilities. Plaintiffs thus make strong efforts to protect information about their respective businesses.

53.     Throughout 2020, with COVID-19 looming over the industry and the economy as a whole, development of new medical centers was critical to Plaintiffs' chances for continued success. To that end, Plaintiffs spent months working to secure their existing partnerships and to develop new business opportunities.

54.     By mid-2020, Plaintiffs' efforts had begun to pay off, as Plaintiffs had developed a robust pipeline of promising new prospective business ventures through which they were, and in some cases still are, in line to provide facility development and management services (the "Pipeline Deals"). The Pipeline Deals include, but are not limited to, multiple new ambulatory surgery centers and two tax-exempt bond funded medical facilities. The details regarding these opportunities are confidential.

55.     By their very nature, these Pipeline Deals derive economic value from their non-public status, particularly during the negotiation and pre-opening stages, as numerous other healthcare companies compete with Plaintiffs for these valuable opportunities. To protect this valuable information, HCFP Administration and/or a project-specific entity (depending upon the stage of the particular deal) has signed non-disclosure agreements for each Pipeline Deal which, once consummated, will be housed within its own project-specific, special purpose entity.

56.     In addition to information about the Pipeline Deals, Plaintiffs also own trade secrets related to the centers operated and owned by the Management and Investment Businesses. These trade secrets include non-public information related to the contractual terms associated with the centers, the strategic plans for the centers, financial information for the centers, and information related to the physicians who practice at the centers. Plaintiffs protect the confidentiality of this information, including by ensuring that all such information is covered by non-disclosure agreements.

57.     Were the confidential information covered by these non-disclosure agreements disclosed to third parties, other players in the highly competitive healthcare space could swoop in and steal opportunities from those Plaintiffs who had already invested material amounts of time and money in their development or, at a minimum, cause Plaintiffs to have to re-negotiate the terms of their deals to overcome those being offered by the third parties.

58.     In addition, the existence and terms of Plaintiffs' long-planned Joint Venture constituted trade secret information that was protected by non-disclosure agreements. Such information included the very prospect that the Joint Venture partner was willing to combine with Plaintiffs and/or another healthcare company, the financial terms of the planned Joint Venture, the structure of the combined Joint Venture, and information related to the center-specific projects that the Joint Venture planned to operate following the closing of that deal.

Diamond Plots with Value Health<br>to Steal Plaintiffs' Trade Secrets and Business Opportunities

59.     Diamond has received confidential, commercially sensitive information about Plaintiffs' Investment Businesses, Management Businesses, Pipeline Deals, and Joint Venture. The types of confidential, trade secret information known by Diamond related to those businesses and deals includes pro formas, management services agreements, operating agreements, syndication materials, operational checklists, information regarding the economic terms of the deals, information pertaining to physicians, and other types of commercially sensitive information. Such information, when pertaining to an existing center, constitutes trade secrets belonging to the particular project-level Management and/or Investment Business. Such information, when pertaining to an early stage Pipeline Deal, constitutes trade secrets belonging to the HCFP Administration entity used to explore and negotiate the new opportunity prior to the creation of the special purpose entities for that particular project. Diamond has improperly disclosed information of the sort described in this paragraph to Value Health without Plaintiffs' permission.

60.     In addition to disclosing Plaintiffs' trade secrets to Value Health, Diamond has also suggested that Plaintiffs should let Value Health into certain deals. Plaintiffs resisted – for multiple reasons. First, Plaintiffs' understanding of Value Health's reputation (and that of its executives) in the marketplace made it weary of engaging in any transaction that would associate

or entangle them with Value Health. Second, Plaintiffs anticipated that Value Health might attempt to use any foothold it could obtain in their businesses to force Plaintiffs out of the deals altogether. Finally, Plaintiffs rejected Diamond's suggestion to allow Value Health into its businesses and opportunities because they simply did not believe that Value Health would be a good partner.

61.     Despite this, in 2020, Plaintiffs began to receive reports from the marketplace that Diamond was serving as a conduit between Value Health and Plaintiffs' existing and prospective business partners. Diamond went so far as to tour Value Health through facilities that certain Plaintiffs manage or were negotiating to manage – all without Plaintiffs' prior knowledge or consent. This, in turn, caused the other players in existing centers and Pipeline Deals to complain about Diamond's and Value Health's intrusive behaviors. In one instance, owners of a facility in Ohio informed Plaintiffs that Diamond had toured Value Health through the facility in direct violation of an existing exclusivity agreement executed between the owners and an HCFP-branded project-level entity.

62.     Plaintiffs also learned that, after Diamond had introduced Value Health to their provider-partners at a facility in Lyndhurst, Ohio, the provider-partners decided to enter into a letter of intent with Value Health that, if consummated, would allow Value Health to acquire the facility and replace one of the HCFP-branded entities as manager.

<u>Diamond, Childs, and Heinle Execute an Assignment in Favor of Value Health</u>

63.     As Diamond and Value Health were actively misappropriating Plaintiffs' trade secrets related to these project-specific centers and Pipeline Deals, the balance of Plaintiffs' managers were working to finalize and consummate a Joint Venture transaction that would have set Plaintiffs up for future success. Indeed, by late 2020, Plaintiffs had negotiated the economic terms of a Joint Venture that would have partnered them with a well-capitalized public company.

64.     Through that deal, Plaintiffs were scheduled to receive (i) a 49% interest in the go-forward Joint Venture, and (ii) a multi-million dollar lump-sum payment. Plaintiffs and their Joint Venture partner intended to use the deal, once consummated, to develop additional future projects, including many of the Pipeline Deals and other opportunities that the Joint Venture partner was bringing to the table. From Plaintiffs' perspective, the Joint Venture transaction was necessary to help the companies clean up their balance sheets and to provide them with a viable platform for success in the future.

65.     As Plaintiffs were papering the Joint Venture, Diamond – armed with highly confidential information about that transaction – began encouraging Plaintiffs to abandon their long-planned Joint Venture in favor of selling the companies to Value Health. When Plaintiffs' other members refused, Diamond, along with Childs and Heinle, elected to execute the Purported Assignment, which purportedly assigned their "direct or indirect membership interests in Health Care Facilities Partners, LLC . . . along with any direct or indirect ownership interest in any legal entity formed for the purpose of developing, owning, and operating a medical facility developed and/or managed by Health Care Facilities Partners, LLC or any of its affiliates (the 'Company')."

66.     The Purported Assignment – which Plaintiffs have since learned arose out of a secret Purchase and Sale Agreement entered into by Diamond and Value Health – is invalid and void or voidable. To start, Health Care Facilities Partners, LLC's Operating Agreement (and those of the other Plaintiffs) prohibits, and has always prohibited, managers from secretly engaging in related-party transactions like the one consummated between Diamond and Value Health. Indeed, such related-party transactions are permissible only when the intended assignor has disclosed all material facts to the company's members, who then, in turn, have by majority vote authorized the transaction. In direct contravention of this requirement, Defendants failed to disclose any – much less all – material information about the Purchase and Sale Agreement out

of which the Purported Assignment arose. They also failed to obtain authorization from Plaintiffs' membership. The Purchase and Sale Agreement and Purported Assignment are thus invalid and void or voidable.

67.     Moreover, Diamond, Childs, and Heinle executed the Purported Assignment on or around November 23, 2020 – which was after Plaintiffs had approved certain defensive amendments to their Operating Agreements that protected against the dangers posed by Diamond's and Value Health's growing closeness. Pursuant to these amendments, any transfer of any interest (regardless of the related nature of the transaction) required approval from the managers before the transferee would be admitted as a member. Plaintiffs' managers have not voted to admit Value Health – the purported transferee – as a member.

Value Health Attempts to Use Its Purported Stake to<br>Take Over HCFP and Derail the Joint Venture

68.     In November 2020, Value Health's Vice Chairman, Dan Tasset, sent Plaintiffs an e-mail claiming to own all of Diamond's interests in "HCFP and associated affiliates." He provided no further information regarding which specific companies or interests he claimed Value Health had purchased. Yet, in that first correspondence, Tasset expressly stated that Value Health intended to use its claimed ownership position to take "a controlling interest in HCFP."

69.     Consistent with Value Health's take-over plan, Value Health also professed to invoke its rights as a purported member of "HCFP and its affiliates" to demand copies of confidential business and financial records, including: (i) tax returns and financial statements for the last three years; (ii) organizational documents, including cap tables and operating agreements, for all of HCFP's medical facilities projects; (iii) a map of all medical facility project locations and a list of projects with location address; (iv) financial statements, balance sheets, management agreements, or development agreements for each medical facility project;

(v) copies of all HCFP board and/or member minutes; and (vi) all management reports for each medical facility project for 2019 and 2020.

70. Plaintiffs refused to comply with that information demand because, among other reasons, as of that date, neither Value Health nor any of the other Defendants had provided Plaintiffs with any information about their secret transaction. In response, Value Health immediately began threatening to sue in order to bully Plaintiffs into handing over control and ownership of their businesses. It was not until ten days later that Value Health finally provided Plaintiffs with a copy of the Purported Assignment, which Plaintiffs evaluated and found to be invalid under the terms of their Operating Agreements.

71. At around the same time, in addition to attempting to use the Purported Assignment to leverage a hostile takeover of HCFP, Diamond and Value Health also took steps to interfere with and derail Plaintiffs' long-planned Joint Venture. Specifically, Tasset personally called Plaintiffs' partner in the Joint Venture transaction and boasted about Value Health's claimed interest in "HCFP." This was a transparent attempt to cause the Joint Venture partner to back out of that deal so that Value Health could carry out its plan to take control over Plaintiffs' businesses.

72. Defendants' and Value Health's plan worked. In May 2021, Plaintiffs' Joint Venture partner informed Plaintiffs that it could not close the transaction with Value Health claiming to own an interest in one or more of Plaintiffs' businesses.

<u>Discovery Has Revealed that Diamond, BMD, and the Doe Defendants Were Representing Value Health and Plaintiffs While Value Health Was Actively Threatening To Sue Plaintiffs as Part of Its Scheme To Take Over Plaintiffs' Businesses</u>

73. During discovery in this case, Plaintiffs sent a subpoena to BMD to obtain all communications between BMD and Value Health related to the above-described transactions and conduct. BMD refused to produce any BMD-Value Health communications, claiming that such

communications were shielded from production by the attorney-client privilege. BMD's claim of privilege over all BMD-Value Health communications revealed that BMD and the Doe Defendants have been actively representing Value Health, despite that its interests are plainly adverse to Plaintiffs.

74.     BMD, Diamond, and the Doe Defendants knew that the interests of Value Health were adverse to Plaintiffs. The firm's Chief Executive Officer, Diamond, personally facilitated the transaction that allowed Value Health to pursue its hostile takeover of Plaintiffs' businesses. He was further aware that – as a direct result of the transaction he engineered – Value Health and Plaintiffs began exchanging threats of litigation as soon as Diamond's transaction with Value Health was revealed to Plaintiffs. Despite placing these competitors into this adverse relationship, Diamond and others at BMD, including the Doe Defendants, continued to represent Value Health, notwithstanding its representation of Plaintiffs. And, now, Diamond's firm, BMD, is using its representation of Value Health to try to shield from disclosure in discovery the evidence of Diamond's malfeasance – specifically, it is using its attorney-client relationship with Value Health to try to prevent Plaintiffs from obtaining the very communications via which Diamond carried out his nefarious scheme with Value Health. The conduct of Diamond and the Doe Defendants in representing Value Health while representing Plaintiffs proximately caused damages that Plaintiffs have suffered as a result of Value Health's attempted takeover of Plaintiffs and the resulting failure of the Joint Venture.

<u>Plaintiffs Have Suffered Millions of Dollars in Damages as a<br>Direct and Proximate Result of Defendants' Conduct</u>

75.     As a direct and proximate result of Diamond's, Childs', and Heinle's Purported Assignment to Value Health, and Value Health's actions thereafter, Plaintiffs' deal partner in the Joint Venture terminated its efforts and willingness to close that transaction. Plaintiffs thus lost both the cash consideration that they would have received through the Joint Venture and the

value of the go-forward opportunities that the Joint Venture presented. Defendants' conduct, as set forth herein, is the foreseeable, but-for, and proximate cause of these damages.

76.     Moreover, dealing with the problems created by Diamond, the Doe Defendants, BMD, and Value Health have cost Plaintiffs hundreds of hours of time and hundreds of thousands of dollars in legal fees and additional interest on their loans – none of which would have been incurred but-for the execution of the Purported Assignment by Defendants to Value Health.

77.     Plaintiffs have also lost the value of the trade secrets that Diamond provided to Value Health and that Value Health has since misused for its own purposes.

<u>CAUSES OF ACTION</u>

Count I:
(Declaratory Judgment as to Invalidity of the Purported Assignment)

78.     Plaintiffs re-allege and incorporate the foregoing paragraphs as if fully set forth herein.

79.     The Declaratory Judgment Act, codified in 28 U.S.C. § 2201, provides in relevant part:

> (a)     In a case of an actual controversy within its jurisdiction  . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

80.     An actual case and controversy exists related to the validity and effectiveness of the Purported Assignment and with respect to the ownership of the interests in Plaintiffs that were the subject of that Purported Assignment.

81.     As discussed above, Health Care Facilities Partners, LLC's Operating Agreement, both in its original form and as amended, requires that any "Related Party Transaction" in which

a manager has a financial or personal interest is void or voidable unless such manager first provides all material facts as to his relationship or interest in the transaction, and the remaining members authorize such transaction. In addition, the Amended Operating Agreement, effective November 13, 2020, provides that in the event a member transfers his interest to another, the transferee will be admitted as a member of the company only upon prior written consent of its managers. The Operating Agreements for each project-level Management and Investment Business also contain these or similar provisions.

82.     Plaintiffs seek a declaration from this Court pursuant to 28 U.S.C. § 2201 that the putative transfer of Diamond's, Childs', and Heinle's membership interests in Health Care Facilities Partners, LLC, to Value Health is invalid and void because (i) it constitutes a Related Party Transaction that was consummated without full disclosure to, or the approval of, the remaining company members, as required by Section 5.5 of the Operating Agreement (both in its original form and as amended); and/or (ii) it was consummated after November 13, 2020, when Health Care Facilities Partners, LLC, amended its Operating Agreement to require that, in the event a member transfers his interest, the transferee will be admitted as a member only upon prior written consent of the managers.

83.     In the alternative, if the Court determines that the Purported Assignment is not entirely invalid, void, or voidable, then Plaintiffs seek a declaration from this Court that the Purported Assignment transferred only Diamond's, Childs', and Heinle's interests in Health Care Facilities Partners, LLC, and not any of their interests in any other Plaintiff-entity because (i) the Purported Assignment does not specifically name any such Plaintiffs; and (ii) any such Plaintiffs are not, as a matter of Ohio law, "affiliates" of Health Care Facilities Partners, LLC, which itself own no direct or indirect interest in any other Plaintiff.

84.     In the second alternative, if the Court determines that the Purported Assignment did convey some interest in any Plaintiff-entity to Value Health, then Plaintiffs request a declaration from this Court as to what person or entity currently owns each interest historically owned by Diamond, Childs, and Heinle in each Plaintiff and a declaration as to whether or not that person or entity is a member of any particular Plaintiff or the holder of a mere economic interest.

Count II:
(Violation of the Defend Trade Secrets Act – 18 U.S.C. § 1836, *et seq.*)
(Against Diamond Only)

85.     Plaintiffs re-allege and incorporate the foregoing paragraphs as if fully set forth herein.

86.     As described above, Plaintiffs have developed and maintained significant non-public, confidential, and proprietary information and trade secrets, including (without limitation) information relating to their existing Management and Investment Businesses, the Pipeline Deals, and the Joint Venture.

87.     Such information is confidential and proprietary, and Plaintiffs protect such confidential and proprietary information, including by entering into non-disclosure agreements with their existing and prospective business partners.

88.     Plaintiffs derive a competitive advantage and independent economic value from these trade secrets because they are not generally known to the public or to others who can obtain economic value from their disclosure or use.

89.     As counsel to, and a member-manager of, most HCFP-branded entities, Diamond has had access to Plaintiffs' trade secrets.

90.     Diamond misappropriated those trade secrets by providing them to Value Health to advance Diamond's own personal interests.

24

91.     Value Health, in turn, misappropriated Plaintiffs' trade secrets, including by using information related thereto to attempt to steal Pipeline Deals and to sabotage the planned Joint Venture so as to better position itself to assert a controlling interest in Plaintiffs' businesses.

92.     Diamond's conduct constitutes violations of 18 U.S.C. § 1836, *et seq*.

93.     Diamond's misappropriations of Plaintiffs' trade secrets have harmed Plaintiffs by resulting in the evaporation of one or more Pipeline Deals and by causing HCFP's future Joint Venture partner to terminate the Joint Venture.

94.     Plaintiffs are entitled to entry of injunctive relief in their favor as authorized by, and as set forth in, 18 U.S.C. § 1836(b)(3), *et seq.,* and are entitled to an award of their damages for actual loss caused by these Defendants' misappropriations of Plaintiffs' trade secrets.

Count III:
(Tortious Interference with Business Relationships)
(Against Diamond Only)

95.     Plaintiffs re-allege and incorporate the foregoing paragraphs as if fully set forth herein.

96.     Plaintiffs have business relationships with their existing partners for the centers that they have developed and/or manage, and with their anticipated future partners in the Pipeline Deals and Joint Venture.

97.     Diamond had knowledge of the confidential details related to the Pipeline Deals and Joint Venture.

98.     Diamond provided that confidential information to Value Health, which itself was aware of the Pipeline Deals and Joint Venture as a result of improper disclosures from Diamond.

99.     Armed with such confidential information, Diamond and Value Health actively undertook affirmative steps to interfere with Plaintiffs' business relationships.

100.    For example, Diamond toured Value Health through facilities that Plaintiffs manage and/or were in negotiations to manage.

101.    Diamond also has suggested to the owners of certain medical centers that Value Health could potentially replace certain HCFP-branded, project-level companies as manager of the centers.

102.    Furthermore, in an effort to obtain a controlling stake in Plaintiffs' businesses, Value Health induced Diamond, Childs, and Heinle to provide it with the Purported Assignment.

103.    Finally, Value Health improperly learned the identity of the Joint Venture partner and took affirmative steps to reach out to that partner in order to sabotage Plaintiffs' relationship with that partner so that Value Health could, as it announced, obtain a controlling stake in Plaintiffs' businesses.

104.    None of this conduct was privileged.

105.    Plaintiffs have suffered millions of dollars in damages as a direct and proximate result of this conduct.

Count IV:<br>(Breach of Fiduciary Duty)<br>(Against Diamond Only)

106.    Plaintiffs re-allege and incorporate the foregoing paragraphs as if fully set forth herein.

107.    Ohio Revised Code § 1705.281, a provision of the Ohio Limited Liability Company Act, defines the fiduciary duties that limited liability company ("LLC") members owe to the LLC and to other LLC members.

108.    As a member and manager of most Plaintiffs, Diamond owed a duty of loyalty and a duty of care to Plaintiffs, at least with respect to those he owned and managed.

26

109.    Diamond breached his fiduciary duties to Plaintiffs by, among other things, (i) disclosing Plaintiffs' confidential business information to Value Health; (ii) promoting Value Health's interests above those of Plaintiffs'; (iii) misappropriating corporate opportunities belonging to Plaintiffs; (iv) executing the Purported Assignment; and (v) refusing to communicate with Plaintiffs' lenders under circumstances where Diamond promised to be a personal guarantor of those loans.

110.    Plaintiffs have suffered millions of dollars of damages as a result of Diamond's breaches of the duty of loyalty and the duty of care.

Count V:
(Breach of Contract)
(Against Diamond Only)

111.    Plaintiffs re-allege and incorporate the foregoing paragraphs as if fully set forth herein.

112.    As alleged above, Health Care Facilities Partners, LLC's Operating Agreement, both in its original form and as amended, requires that any "Related Party Transaction" in which a manager has a financial or personal interest is void or voidable unless such manager first provides all material facts as to his relationship or interest in the transaction, and the remaining members authorize such transaction. In addition, the Amended Operating Agreement, effective November 13, 2020, provides that in the event a member transfers his interest to another, the transferee will be admitted as a member of the company only upon prior written consent of its managers. The Operating Agreements for each project-level Management and Investment Business also contain these or similar provisions.

113.    Diamond was, at the time of the Purported Assignment, a member-manager of each Plaintiff, except: (i) HCFP of Brainard Investments, LLC; (ii) HCFP of Brainard Enterprises, LLC; (iii) HCFP of SW Ohio Investments, LLC; (iv) HCFP of SW Ohio

27

Enterprises, LLC; and (v) HCFP, LLC. Diamond signed and/or is otherwise subject to the Operating Agreements of each Plaintiff except for those listed above.

114.    Upon information and belief, Diamond executed the Purported Assignment in exchange for (i) a stake in Value Health and/or one of its affiliates, and (ii) Value Health's promise to indemnify Diamond against any claims that might be made under the personal guarantees he had issued to Plaintiffs' lenders. Furthermore, before the Putative Assignment, Diamond established a personal, financial, and/or business relationship with Value Health, and his transaction with Value Health was thus a Related Party Transaction.

115.    In contravention of the Plaintiffs' Operating Agreements, Diamond failed to disclose the material facts about his transaction to Plaintiffs prior to executing the Purported Assignment.

116.    As such, Diamond breached Health Care Facilities Partners, LLC's Operating Agreement, as well as the Operating Agreements of each Plaintiff in which Diamond was a member and manager and with respect to which Defendants contend Diamond's interests were transferred pursuant to the Purported Assignment.

117.    As a direct result of Diamond's breach, Plaintiffs have suffered millions of dollars of damages.

118.    Plaintiffs performed their obligations under the Operating Agreements.

Count VI:
(Legal Malpractice)
(Against Diamond Only)

119.    Plaintiffs re-allege and incorporate the foregoing paragraphs as if fully set forth herein.

120.    An attorney-client relationship existed between Diamond and Plaintiffs.

121.    A professional duty arose from Diamond's attorney-client relationship with Plaintiffs such that Diamond was required to act in compliance with the professional standard of care and conduct Plaintiffs' business in good faith, solely for the benefit of Plaintiffs, and free of competing, conflicting, or compromising influences and loyalties. This duty arose separate and apart from the duties Diamond owed to Plaintiffs in his capacity as a manager of their separate businesses.

122.    Diamond breached his professional duties to Plaintiffs.

123.    Among other things, Diamond engaged in business transactions adverse to Plaintiffs by (i) secretly aligning himself with Value Health, a competitor; (ii) seeking to inject Value Health into Plaintiffs' existing and prospective business relationships, including the Pipeline Deals; and (iii) attempting and purporting to assign his interests in Plaintiffs' businesses to Value Health.

124.    In addition, Diamond breached his professional duties by disclosing Plaintiffs' non-public, confidential, and trade secret information regarding the Investment Business, Management Business, Pipeline Deals, and Joint Venture to Value Health, and on information and belief other third parties.

125.    Diamond's breaches of his professional duties have proximately caused damages to Plaintiffs in an amount to be proven at trial.

Count VII:
(Legal Malpractice)
(Against the Doe Defendants)

126.    Plaintiffs re-allege and incorporate the foregoing paragraphs as if fully set forth herein.

127.    An attorney-client relationship existed between the individual Doe Defendants and Plaintiffs.

128.    Professional duties arose from Doe Defendants' attorney-client relationships with Plaintiffs such that Doe Defendants were required to act in compliance with the professional standard of care and conduct Plaintiffs' business in good faith, solely for the benefit of Plaintiffs, and free of competing, conflicting, or compromising influences and loyalties.

129.    Doe Defendants breached their professional duties to Plaintiffs.

130.    Among other things, Doe Defendants initiated an attorney-client relationship with Value Health, a party with interests directly and materially adverse to Plaintiffs, despite that at all times relevant Plaintiffs have been current and/or former clients of the Doe Defendants.

131.    Doe Defendants' breaches of their professional duties have proximately caused damages to Plaintiffs in an amount to be proven at trial.

Count VIII:
(Legal Malpractice – Vicarious Liability/Respondeat Superior)
(Against BMD)

132.    Plaintiffs re-allege and incorporate the foregoing paragraphs as if fully set forth herein.

133.    At all times relevant, Diamond and the Doe Defendants are and were employees and/or agents of BMD.

134.    As the employer and/or principal of Diamond and the Doe Defendants at all times relevant, BMD is vicariously liable for tortious and negligent conduct committed by Diamond and the Doe Defendants in the scope of their respective employment.

135.    Attorney-client relationships existed between Diamond and Plaintiffs, and Doe Defendants and Plaintiffs.

136.    A professional duty arose from Diamond's and the Doe Defendants' attorney-client relationships with Plaintiffs such that Diamond and the Doe Defendants were required to act in compliance with the professional standard of care and conduct Plaintiffs' business in good

faith, solely for the benefit of Plaintiffs, and free of competing, conflicting, or compromising influences and loyalties.

137.    Diamond and the Doe Defendants breached their professional duties to Plaintiffs.

138.    Among other things, Diamond engaged in business transactions adverse to Plaintiffs by (i) secretly aligning himself with Value Health, a competitor; (ii) seeking to inject Value Health into Plaintiffs' existing and prospective business relationships, including the Pipeline Deals; and (iii) attempting and purporting to assign his interests in Plaintiffs' businesses to Value Health.

139.    In addition, Diamond breached his professional duties by disclosing Plaintiffs' non-public, confidential, and trade secret information regarding the Investment Business, Management Business, Pipeline Deals, and Joint Venture to Value Health, and on information and belief other third parties.

140.    Moreover, the Doe Defendants breached their professional duties to Plaintiffs by, among other things, initiating an attorney-client relationship with Value Health, a party with interests directly and materially adverse to Plaintiffs, despite that at all times relevant Plaintiffs have been current and/or former clients of the Doe Defendants.

141.    Diamond's and the Doe Defendants' breaches of their professional duties have proximately caused damages to Plaintiffs in an amount to be proven at trial.

142.    As the employer and/or principal of Diamond and the Doe Defendants at all times relevant, BMD is vicariously liable for the legal malpractice committed by Diamond and the Doe Defendants.

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in their favor on all Counts in their Complaint and grant them the following relief:

(A)     A judgment entry declaring: (1) that Diamond's, Childs', and Heinle's purported assignment of ownership interests to Value Health is invalid, void, and voidable; or, in the alternative (2) describing the nature and type of the ownership interest that Value Health received via the Purported Assignment;

(B)     A judgment entry granting Plaintiffs the injunctive relief authorized by, and as set forth in, 18 U.S.C. § 1836(b)(3), *et seq.*;

(C)     An award of Plaintiffs' compensatory damages for all damages sustained as a result of the conduct described herein, including but not limited to as authorized by, and as set forth in, 18 U.S.C. § 1836(b)(3), *et seq.*;

(D)     An award of Plaintiffs' exemplary and punitive damages;

(E)     An award to Plaintiffs of their reasonable attorneys' fees and costs;

(F)     An award to Plaintiffs of all pre-judgment and post-judgment interest allowed by law; and

(G)     A grant to Plaintiffs of such other and further relief, at law or in equity, as the Court deems just and proper.

<u>JURY DEMAND</u>

Plaintiffs hereby demand a trial by jury on all issues so triable.

Respectfully submitted,


 */s/ Steven J. Miller*
STEVEN J. MILLER (0014293)
SteveMiller@BuckleyKing.com
DAVID A. KUNSELMAN (0073980)
Kunselman@BuckleyKing.com
BUCKLEY KING LLP
1400 Fifth Third Center
600 Superior Avenue East
Cleveland, OH 44114-2652
Telephone:  (216) 363-1400
Facsimile:   (216) 579-1020

BARTON W. COX
Texas State Bar No. 24065087
(admitted *pro hac vice*)
beau.cox@nortonrosefulbright.com

VERONICA PORTILLO KENDRICK
(admitted *pro hac vice*)
Texas State Bar No. 24055609
veronica.kendrick@nortonrosefulbright.com
JACQUELINE G. BAKER
(admitted *pro hac vice*)
Texas State Bar No. 24109609
jackie.baker@nortonrosefulbright.com
NORTON ROSE FULBRIGHT US LLP
2200 Ross Avenue, Suite 2800
Dallas, Texas  75201
Telephone:  (214) 855-8000
Facsimile:   (214) 855-8200

*Attorneys for Plaintiffs*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 12, 2021, the foregoing document was filed electronically. Notice of this filing will be sent to all existing parties by operation of the Court's electronic filing system and may access this filing through the Court's system. Newly named defendants will be served with a copy of this filing.

*/s/ Steven J. Miller*
STEVEN J. MILLER (0014293)

2536138